

ZACHARY W. CARTER
*Corporation Counsel*

JEFFREY LOPERFIDO
*Senior Counsel*
Phone: (212) 356-2384
Fax: (212) 356-3509
jloperfido@law.nyc.gov

November 17, 2015

<u>BY ECF</u>
Honorable Carol Bagley Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   <u>Derrick Hamilton v. City of New York, et al.</u>, 15 CV 04574 (CBA) (VMS)

Your Honor:

We represent former NYPD Detective Frank DeLouisa, former Kings County DA ("KCDA") Investigator Joseph Ponzi, and the City of New York (collectively the "City Defendants").[1]  In accordance with Your Honor's Individual Rule 3.A, City Defendants submit this letter to request a pre-motion conference for a partial motion to dismiss the complaint.

By way of background, Plaintiff Derrick Hamilton alleges, *inter alia*, false imprisonment, malicious prosecution and falsification of evidence in connection with his arrest and conviction in the shooting death of Nathaniel Cash in Brooklyn on January 4, 1991.  Jewel Smith, the sole eye-witness in the Cash murder trial, testified at the grand jury and at trial that she saw Hamilton shoot and kill Cash.  Hamilton insisted he was out of town at the time of the incident, so he sought to challenge Smith's story and establish his alibi.  George Sheinberg, Esq., Hamilton's criminal defense attorney,[2] conducted a thorough cross-examination of Smith to attack her credibility, addressing her extensive history of theft, that she routinely used aliases with police to avoid violating parole, that she was dating Cash at the time of the shooting, that shortly after Hamilton's arrest (but before trial) she gave a written recanting statement to

---

[1] Former NYPD Detective Louis Scarcella, also a named defendant, is represented by his own counsel. *See* Dkt. 13.

[2] Sheinberg also represented Hamilton in a 1983 shooting case, which resulted in a murder conviction.  The conviction was overturned on appeal, see *People v. Hamilton*, 127 A.D.2d 691 (N.Y. App. Div. 2d Dep't 1987), and Hamilton ultimately took a manslaughter plea.  That case, like this one, involved a recanting witness and allegations of police coercion and witness tampering by Hamilton.

Sheinberg claiming Hamilton was not present at the shooting, that she knew Hamilton since she was a child, and that she visited and exchanged love letters with Hamilton while he was in prison awaiting trial. And though the defense noticed three alibi witnesses at the outset of trial, none were called. Sheinberg noted on the record that one witness was ill and the other was afraid to testify. He did not explain the absence of the third witness, Derrick's brother James. Consequently, the defense rested without calling a witness. Both sides closed, and the jury returned a guilty verdict.

Over the following 20 years, Hamilton tried to overturn his conviction in both state and federal court. *See generally* Compl. ¶¶ 54-68, 80-82. United States District Judge John Gleeson's opinion denying Hamilton's petition for habeas corpus relief recounts the many fact and legal issues raised by Hamilton. *Hamilton v. Herbert*, 2004 U.S. Dist. LEXIS 590 (E.D.N.Y. Jan. 16, 2004); *see also People v. Hamilton*, No. 142/91, 2008 N.Y. Misc. LEXIS 10410 (Sup. Ct. Kings Cty. Sept. 16, 2008). In short, every theory of innocence offered by Hamilton was found to be incredible by the reviewing courts. *See, e.g.*, *Hamilton*, 2004 U.S. Dist. LEXIS 590, at *5 ("find[ing] that all the evidence and facts surrounding and supporting the recantation by Jewel Smith to be suspect and unreliable"); *11 ("[T]he testimony [of Taseem Douglas] is filled with many inconsistencies and is contradictory to all the reliable evidence"); *18 ("There was no *Rosario* violation since the People furnished the defendant with a copy of the notebook well before the [required] time."); *21 (finding "the testimony of Darren Breeden was incredible" and "the testimony of Kim Freeman and James Hamilton is not new evidence"). Hamilton filed his final 440 motion in 2009. The motion went before the Second Department who ruled, as an issue of first impression, that a "freestanding" claim of actual innocence is cognizable in New York. *See People v. Hamilton*, 115 A.D.3d 12 (N.Y. App. Div. 2d Dep't 2014). The court then found the necessary prima facie showing and ordered an evidentiary hearing. *Id.* at 27. Thereafter, the KCDA agreed to reinvestigate the case, and, on January 9, 2015, recommended that Hamilton's conviction be vacated because the sole eye-witness, Jewel Smith, was "as a whole, unreliable, incredible and for the most part untruthful." Compl. ¶ 82.

Hamilton now seeks money damages in this civil action brought pursuant to 42 U.S.C. § 1983 and New York state law because he contends that the City and City employees violated his constitutional rights by, *inter alia*, fabricating and withholding evidence, coercing witness testimony, and failing to investigate. We wish to move to dismiss the complaint pursuant to Rule 12(b)(6) on the following grounds:

*Municipal Liability under 42 U.S.C. § 1983* (Count II, ¶¶ 95-116). Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), municipalities are not subject to liability under a theory of *respondeat superior*, but rather on the basis that their policies or customs "inflict[ed] the injury upon the plaintiff." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). The complaint appears to allege two types of *Monell* claims—one based on the isolated actions of former NYPD Detective Louis Scarcella, and the other based on a department-wide failure to provide adequate training and supervision. In order to impose liability on a municipality for a subordinate's conduct, a plaintiff must show that policymakers were aware of the subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Liability under *Monell* may also be established where a municipality's failure to provide adequate training, discipline, or

supervision rises to the level of deliberate indifference. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Both of these theories require plaintiffs to plead facts demonstrating that the municipality was on notice of the alleged unconstitutional conduct. *Connick v. Thompson*, 563 U.S. 51, 59-63 (2011); *Amnesty*, 361 F.3d at 128; *see also Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992), *cert. denied*, 507 U.S. 961 (1993) ("[w]here the proper response . . . is obvious to all without training or supervision," a plaintiff must demonstrate a pattern of similar violations in order to support an inference of deliberate indifference on the part of municipal policymakers).

With regard to Scarcella, there are no facts supporting the contention that Scarcella's superiors knew of the alleged unconstitutional actions attributed to him and ignored them. Hamilton relies on (i) newspaper reports made 20 years after the fact, Compl. ¶¶ 101-102, 107; (ii) recent statements by state court judges with the benefit of hindsight and decades of additional, alleged fact finding, *id*. ¶¶108-109; (iii) out of context "admissions" by Scarcella, who is not a policymaker for purposes of municipal liability, *id*. ¶¶ 103, 105; (iv) and a failure to adhere to police paperwork guidelines, which does not amount to a constitutional violation, *id*. ¶ 106. The only timely and arguably relevant allegation—the statement of Judge Francis X. Egitto, *id*. ¶ 102—must be read in the context of the news article it appeared in, which stated that when the judge "instructed the jury on what to consider during deliberations, he mentioned none of his concerns [about Scarcella]." Finally, that Scarcella was a "high-profile" detective or a "hero" in the department changes nothing, because there are no plausible allegations that he reached such status through rampant violations of constitutional rights. *Id*. ¶¶ 103, 105. These allegations do not serve as a basis for municipal liability.

In support of his claim that the City failed to train, discipline, and/or supervise its employees so as to prevent them from fabricating false identifications and evidence, perjuring themselves, relying on witnesses known to be untruthful, and failing to investigate and/or disclose exculpatory evidence, Hamilton primarily relies on 18 cases where constitutional violations are alleged to have occurred. *Id.* ¶ 113(a)-(r). None of these cases involve the alleged non-disclosure of exculpatory evidence, only three of which concern allegations that police personnel rather than prosecutors withheld exculpatory evidence. The other nine cases involve testimony found to be inaccurate or incredible; but in only six of those cases, courts found that an employee of the NYPD had given such testimony. And only one of those six cases involves an allegation that is even marginally similar to the allegations against the defendants in this case; the remaining five cases involve officers' personal observations and the propriety of subsequent searches of plaintiffs or their property. This handful of cases is not enough to support an inference that the City was on notice of a widespread practice of any of the alleged constitutional violations enumerated above.

*Negligence* (Count VII, ¶¶ 138-141). This claim should be dismissed because, under New York law, a plaintiff may not assert a claim of general negligence in connection with an arrest and criminal prosecution. *See Boose v. City of Rochester*, 71 A.D.2d 59, 62 (N.Y. App. Div. 4th Dep't 1979).

For the foregoing reasons, we request that the Court schedule a pre-motion conference on the City Defendants' partial motion to dismiss.

Respectfully submitted,

/s/
Jeffrey Loperfido
Angharad Wilson
Assistants Corporation Counsel

cc:    All counsel of record via ECF