UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DERRICK HAMILTON,                    *     Case No. 15-CV-4574(CBA)
                                *
          Plaintiff,       *     Brooklyn, New York
                                *     December 16, 2015
    v.                     *
                                *
CITY OF NEW YORK, et al.,     *
                                *
          Defendants.      *
                                *

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JONATHAN ISIDOR EDELSTEIN, ESQ.
                              ROBERT GROSSMAN, ESQ.
                              Edelstein and Grossman
                              271 Madison Avenue
                              New York, NY  10016

                              ILYA NOVOFASTOVSKY, ESQ.
                              Novo Law Firm
                              299 Broadway
                              New York, NY  10007

For the Defendant,         ARTHUR G. LARKIN, ESQ.
 New York City Police Dept.:  JEFFREY LOPERFIDO, ESQ.
                              ANGHARAD K. WILSON, ESQ.
                              New York City Law Department
                              Special Federal Litigation
                               Division
                              100 Church Street
                              Room 3-197
                              New York, NY  10007

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES:  (Cont'd.)

For the Defendant,             RICHARD ERNEST SIGNORELLI, ESQ.
 Det. Louis Scarcella:         Law Office of Richard E.
                                  Signorelli
                               799 Broadway, Suite 539
                               New York, NY  10003


For the Defendant,             SCOTT MICHAEL KARSTEN, ESQ.
 Police Officer Billy White:   Karsten & Tallberg, LLC
                               500 Enterprise Drive, Suite 4B
                               Rocky Hill, CT  06067

1          (Proceedings commenced at 10:10 a.m.)

2          THE COURT:    (Delay in start of audio)--

3     appearing by telephone.

4          Okay.  So we've got a lot of folks in the courtroom.

5     What we're going to do is call the case, get your appearances

6     and we only have four microphones, but as you're speaking, if

7     you could get as close to a microphone as you can, part so

8     that I can hear you and part so Mr. Signorelli to hear you,

9     and also because we'll record today's proceedings and it would

10    be helpful in terms of getting a good recording, so that if

11    anybody wants a transcript you can --

12         All right.  So the case is Hamilton vs. City of New

13    York 15-CV-4574.  For plaintiffs.

14         MR. EDELSTEIN: Jonathan Edelstein, Edelstein and

15    Grossman.

16         THE COURT:  Okay.

17         INAUDIBLE IDENTIFICATION:  (Inaudible)

18         THE COURT:  Hang on one second.

19         So I saw your names on some of the other paperwork

20    but --

21         UNIDENTIFIED:  I could not hear that second

22    attorney, Your Honor.

23         THE COURT:  Neither could I.  So is the microphone

24    on?  You need the green light to be glowing.

25         MR. NOVOFASTOVSKY:  Ilya Novofastovsky,  Novo Law

1     Firm and Scott Brad Schneider.

2     THE COURT: All right. Can you spell you name for

3 me?

4     MR. NOVOSTOVSKY: Ilya is I-L-Y-A. Last name is N-

5 O-V-O-F-A-S-T-O-V-S-K-Y.

6     THE COURT: All right. Thanks. So you're not

7 appearing on the docket. It's still Mr. Edlelstein. So if

8 you could file a notice of appearance.

9     MR. NOVOSTOVSKY: Just notifying us through Mr.

10 Edelstein is fine, but I'll let you know.

11     THE COURT: Okay. So it's not okay with me. If

12 you're going to participate, you need to file a notice of

13 appearance. If you're not, then you're not going to be

14 counsel of record.

15     Okay. I'm sorry. And then second --

16     MR. SCHNEIDER: Scott Brad Schneider.

17     THE COURT: S-C-H-N-E-I-D-E-R.

18     MR. SCHNEIDER: You have it.

19     THE COURT: Okay.

20     MR. GROSSMAN: And Robert Grossman.

21     THE COURT: Same thing. You should file a notice of

22 appearance.

23     Okay. And --

24     MR. HAMILTON: Derrick Hamilton, the plaintiff.

25     THE COURT: And Mr. Hamilton.

1          All right.  For defendants.

2          MR. LARKIN:   Your Honor, good morning.  For the

3    City of New York, for Mr. DeLouisa and for Mr. Ponzi, Arthur

4    Larkin, L-A-R-K-I-N, New York City Law Department.

5          THE COURT:  Okay.  So DeLouisa and Ponzi, you said.

6          MR. LARKIN:  Yes, Your Honor.

7          THE COURT:  Okay.  So you are not on the docket as

8    representing them.  We have Ms. Wilson and Mr. Loperfido.  I'm

9    sorry. Is the City still in this, which I thought you were,

10   but it says on the docket terminated.

11         MR. LARKIN:  The City was terminated?

12         THE COURT:  I don't think so, but that's what the

13   docket says.  Is there any reason -- did I miss --

14         MR. NOVOFASTOVSKY:  It was a cause of action against

15   the City that was dismissed, Your Honor.

16         THE COURT:  All right. That was the negligence

17   claim.

18         MR. LARKIN:  That was a negligence claim.

19         THE COURT:  All right.  You should follow up because

20   that's taking you off the docket in general, but I will also

21   tell the clerk's office to fix that.

22         THE COURT:  So you're listed as terminated from the

23   City of New York, but you're not down with DeLouisa and Ponzi.

24   So you should correct that.

25         MR. LARKIN:  So I will file an updated notice of

1    appearance then, Your Honor.  Certainly.

2                    THE COURT:  Okay.  Next.

3                    MR. LOPERFIDO:  Good morning, Your Honor.  I am

4    Jeffrey Loperfido from the New York City Law Department on

5    behalf of the City of New York, Mr. DeLouisa and Mr. Ponzi.

6                    MS. WILSON:  And Angharad Wilson, also from the New

7    York City Law Department, also representing the City, Mr.

8    DeLouisa and Mr. Ponzi.

9                    THE COURT:  All right.  Mr. Signorelli, you're

10   representing Mr. Scarcella --

11                   MR. SIGNORELLLI:  Detective Scarcella.  I have filed

12   a notice of appearance.

13                   THE COURT:  Okay.  You're on the docket.  And for

14   the New Haven parties.

15                   MR. KARSTEN:  For the City of New Haven, good

16   morning, Your Honor.  Scott Karsten and Tallberg from Rocky

17   Hill, Connecticut representing the City of New Haven,

18   Detective White.

19                   THE COURT:  I'm sorry.  Is that on?

20                   MR. KARSTEN:   Yes. I'll try to get closer.

21                   It's Karsten, K-A-R-S-T-E-N, representing the City

22   of New Haven, William White and John Doe's and Jane Doe's 11

23   through 20.  And I apologize for being late this morning, Your

24   Honor.

25                   THE COURT:  All right.  That's all right.

1          All right.  So we're going to talk about a couple of

2    things.

3          Are you having settlement discussions?  Let's just

4    go right to the question. I mean, this is the kind of case

5    that's been talked about in the newspaper.  What's happening?

6          MR. LARKIN:  We haven't gotten a demand at this

7    point.

8          THE COURT:  Okay.  The bouncing ball goes back to

9    the plaintiff's counsel.

10          You don't have to give me a demand right now, but I

11    mean, this case is going to be a very big record, a lot of

12    work and it's not coming out of nowhere.  There's obviously --

13    there's some other cases that, at least in part, similar

14    allegations are made.

15          So I don't know if there's an across the board

16    approach to this from the government authorities or not, but I

17    guess it would start with a demand.  So I mean, you're talking

18    about having one in February in your proposed schedule.  Is

19    there a reason to wait till then?

20          MR. EDELSTEIN:  Your Honor, the proposed scheduling

21    order does indicate a date for the plaintiff to make a demand,

22    and certainly that's something that we will discuss with our

23    client after we've received certain discovery materials that

24    we're waiting for, particularly from the district attorney's

25    office, and we will try and get a demand to the defendant's

1      counsel well in advance of that day.

2                THE COURT:  All right.  So for that to move forward

3      at all, obviously, we've got to start there.

4                Okay.  Is there a court of claims case with this?

5                MR. EDELSTEIN:  There is a court of claims case

6      pending.

7                THE COURT:  Okay.  What's the status of that?

8                MR. EDELSTEIN:  The status of that is that the state

9      has answered.  Mr. Hamilton's deposition is scheduled for

10     January.  We are hoping that after that we might be able to

11     discuss a settlement or failing that get a trial date.

12                THE COURT:  Do you have any sense of what the

13     schedule will be there?

14                MR. EDELSTEIN:  Well, I know we're back in front of

15     Judge Soto on January 25th and we would be asking for as early

16     a trial date as possible, both to facilitate settlement and

17     also if settlement fails, we would like to get in front of the

18     court.

19                MR. NOVOFASTOVSKY:  We have Mr. Hamilton's

20     deposition coming up in January and we've invited all the

21     parties here to participate in that, which we thought would

22     really move this and so far they've refused.

23                MR. LARKIN:  Well, Your Honor, we are not in a

24     position right now to depose Mr. Hamilton for the civil rights

25     case on January 8th.

1          It's just -- the schedule just doesn't coincide. It

2     just doesn't match up.  So that isn't going to be workable, at

3     least from our standpoint.

4          I'm not sure if Mr. Karsten has a similar view or a

5     different view.

6          THE COURT:  Well, let me interrupt for one second.

7          MR. KARSTEN:  January 9th, 10th --

8          THE COURT:  When you say that you invited the

9     defendants in this case to attend the court of claims

10    deposition, are you saying and they would be waiving their

11    right to continue or have their own deposition in this case?

12    Or are you saying in general as a settlement tactic, or

13    consideration, it would be helpful to see Mr. Hamilton

14    testify.  You'll both get a sense of him as a witness.  You'll

15    get a better handle on the various damages, you know, multiple

16    other considerations.

17         MR. NOVOTASOVSKY:  Your Honor, nothing's in stone

18    with regard to the January 8th date.  I mean, certainly, we

19    want to expedite this and we want to have all parties

20    participate in this deposition, because we want to move it

21    along because Mr. Hamilton already was exonerated a year ago

22    and certainly, I think he's entitled to moving forward with

23    his case.

24         And we found that the state at this point is moving

25    very slowly.  And if we could consolidate this and make this

1    one, certainly, nothing's in stone.  But the other side can't

2    say never.

3         THE COURT:  All right.  It's totally unrealistic to

4    think that a case that we filed in the last six months for

5    which you're having this discussion right now, that they're

6    going to be ready to do the plaintiff's deposition.

7         If what you're saying is they're welcome to attend,

8    and as I said, I could see reasons why that would be helpful

9    for an informative, both in potentially cutting to the

10   settlement discussion part of this case, then that seems

11   reasonable.  I don't think it's reasonable to expect the

12   defendants to be able to participate in the deposition, given

13   the very early stage of this case.

14        So if they want to attend, they can attend.  You

15   should just make sure when you're working out the date and

16   facilities -- I don't know where you're doing it -- I'm

17   guessing at the State AG -- that there's enough room for

18   everybody.

19        All right.  So that's the court of claims schedule.

20   What other -- I don't have a sense of the discovery that would

21   go on in the court of claims action and how that is similar or

22   -- I don't know. Maybe it's more streamline than --

23        MR. NOVOTASOVSKY: It's more streamlined.

24        MR. EDELSTEIN:   It's considerably more streamlined,

25   Your Honor, because the state action is a no-fault action.

1    There's no requirement of proving a constitutional violation

2    on anybody's part.

3              THE COURT:  Just actual --

4              MR. NOVOTASOVSKY:  It's really going to turn on the

5    question of actual innocence.  And at the moment what we are

6    waiting on and what's critical in the state case is to receive

7    documents from the Kings County District Attorney's Office.

8              And actually the Kings County's DA's deadline to

9    produce those documents is triggered according to a

10   stipulation that has been filed in the state case.

11             It's triggered by the entry of a protective order

12   which has been submitted to Your Honor.  And for that reason I

13   would certainly -- or we would all respectfully appreciate if

14   the court could expedite the entry of that protective order.

15   It's been agreed to by all parties and submitted to the court.

16             THE COURT:  All right.  So I don't need to add this

17   as text, but this should be obvious.

18             You have a lot of protections in here, but what

19   happens at trial would be up to the trial just, even on the

20   summary judgment motion, how much remains confidential.  But

21   this is -- there's no objection to this order? Anybody here

22   changed their mind?  No.  All right.  It will be entered.

23             MR. EDELSTEIN:  Thank you, Your Honor.

24             THE COURT:  Okay.

25             MR. EDELSTEIN:  And we've agreed also that upon

1      receipt of these documents from the district attorney's office

2      we will produce them right away to the defense counsel in this

3      case.

4              THE COURT:  Okay.

5              MR. EDELSTEIN:  And I have also given defense

6      counsel, along with a Rule 26(a) sheet, a thumb drive which

7      contains everything we have right now.

8              THE COURT:  Okay.

9              MR. EDELSTEIN:  And I will provide the same to Mr.

10     Signorelli in the mail.

11             THE COURT:  I'm going to say everything -- what is

12     basically the criminal court file that was in the plaintiff's

13     possessions or --

14            MR. EDELSTEIN:  The criminal court file we also have

15     a large volume of records from the Department of Correctional

16     Services.  We have various affidavits and witness statements

17     which we have put together on a thumb drive and given to

18     defense counsel.

19            THE COURT:  Okay.  All right.  And then you want to

20     bifurcate *Monell* discovery.  Why?

21            MR. LARKIN:  Your Honor, I can speak to that.

22            The City requested a pre-motion conference with the

23     district court to move to dismiss the Monell claim.

24     And the district court scheduled a conference.

25            We then spoke with Mr. Edelstein and discussed a

1  possible way to avoid the motion and it was agreed to, Your

2  Honor, that we would bifurcate *Monell* discovery and focus on

3  the claims against the individual defendants first, because if

4  those claims -- once those claims are resolved there may not

5  be -- I say may not.  There may not be any need to go forward

6  with burdensome and extensive *Monell* discovery, which we think

7  -- and I don't expect plaintiff to agree, naturally, but which

8  we think would not be warranted in this case.

9         But in order to avoid having that fight at all,

10  we've agreed to bifurcate the discovery for now.

11         THE COURT:  Well, what's that going to do the trial

12  schedule here?

13         I mean, is the case that you're talking about

14  needing to move ahead because on the one hand, as I noted

15  earlier and the plaintiff not being -- well, not the

16  plaintiff, but the defendant's counsel will be expected to be

17  prepared to depose Mr. Hamilton right away.

18         On the other hand, this is against the backdrop of

19  years of incarceration.  So there is -- I can understand the

20  desire the move this ahead quickly.

21         So if you have the schedule that you're proposing,

22  which is that you would have dispositive motion practice in

23  October and then a joint pretrial order in November, you know,

24  sort of depending on how those two things fit together, what

25  would happen at a trial if you haven't done the *Monell*

1  discovery?

2  MR. LARKIN:  You would try the individual underlying

3  claims.  And if there is a finding of liability, then either

4  the City -- one or more of the defendants would pay the

5  judgement and it would be up to the plaintiff at that point if

6  he -- if there was a finding of liability.

7  If there's a finding of no liability at some

8  juncture, whether it's summary judgment or trial, there's no

9  need to do the *Monell* claim.  Because if there's no underlying

10  violation, then there's no *Monell* claim, right?

11  If there is a finding of liability, however, the

12  defendant -- one or more of the defendants, it seems to me,

13  the municipal defendants, would likely be paying the judgment,

14  in which case I guess in theory plaintiff could pursue a

15  *Monell* claim at that point, but there'd be no additional

16  damages to be recovered.

17  So the reason we decided on bifurcation is that it

18  seems that there wouldn't be any prejudice to any party if we

19  went forward with discovery and full litigation and resolution

20  of the claims against the underlying defendants.

21  THE COURT:  Wouldn't there be at a minimum nominal

22  damages available.  For the *Monell* violation there'd be

23  attorney's fees.

24  MR. LARKIN:  No.

25  THE COURT:  Why?  Well, then why would they

1    bifurcate it? I mean, it's up to them what they want to do.

2              MR. LARKIN:  Because -- bifurcate it because you

3    wind up doing additional discovery for a claim that doesn't

4    add anything to the case.

5              THE COURT:  Then you would say that about most

6    *Monell* claims that were tied to the damages claims.

7              MR. LARKIN:  I would.  I would.  And Judge Cogan

8    recently in a case we just -- we're in the midst of

9    litigating, another wrongful conviction case, the *Lopez* case

10   took that approach.  We're litigating the underlying claims

11   and we've done no discovery on the *Monell* claim in that case.

12   Now that was by order.  That was not by stipulation.

13             But the rationale was exactly the one I just

14   articulated.

15             MR. EDELSTEIN:  Your Honor, also, I can speak to our

16   reasons for agreeing to this, is that first of all, obviously,

17   we disagree with the City's counsel about the viability of the

18   12(b)(6) motion. I believe that our claim, our *Monell* claim

19   clears *Ashcroft* and *Iqbal* with plenty of room to spare.

20             However, we wanted first of all to avoid the delay

21   that a dispositive motion on the pleadings would cause and

22   second of all, *Monell* discovery in a case like this one, which

23   involves a prosecutor's office and a big city police

24   department going back to the '90's would be extremely

25   voluminous and time consuming.  I mean, we would be talking

1  about huge volumes of *Monell* discovery, that as counsel says,

2  may end up not being necessary because --

3          THE COURT:  Necessary because of the damages?

4          MR. EDELSTEIN:  Because of the damages.  Certainly

5  because -- I mean, certainly if we were to obtain a verdict

6  against one of the individual defendants and then the City

7  were to indemnify, I can't imagine that we would want to spend

8  another a couple of years litigating a *Monell* claim for an

9  addition -- you know, nominal damages on top of that.

10          THE COURT:  There would be attorney's fees and a

11  public vetting of this.

12          MR. LARKIN:  There would be no attorney's fees with

13  an award of nominal damages, in my view.

14          THE COURT:  I'm not going to weigh in on it, but I'm

15  not sure that's a settled --

16          MR. LARKIN:  I think it's pretty settled.

17          THE COURT:  Well, I'm going to disagree with you

18  about that.

19          MR. LARKIN:  Okay.

20          THE COURT:  So you're going to make the practical

21  choice on your side that you want to bifurcate.  Is that where

22  we're at right now?

23          MR. EDELSTEIN:  Yes, I believe it will streamline

24  things considerably, would get us to a trial ready posture

25  against the individual defendants much sooner and would

1    certainly get us to a point where there is liability

2    determination one way or another against the individual

3    defendants and a decision regarding indemnity so that we would

4    then be able to decide whether or not we want to go forward

5    with the *Monell* and it seems to all of us like the best way to

6    avoid both the delay of a 12(b)(6) motion and the delays that

7    would be caused by voluminous *Monell* discovery on top of the

8    discovery relating to the specific claims.

9        THE COURT:  All right.  So just looking at the

10   schedule it's fine.

11       Let me just ask you a couple of questions.  The

12   additional parties, are those the John and Jane Doe's for the

13   New Haven part of this case, or is there anybody else?  We

14   have Officer White from New Haven, right?

15       MR. EDELSTEIN:   Well, we also named John and Jane

16   Doe numbers one through ten being unknown employees of the

17   City.

18       THE COURT:  Okay.

19       MR. EDELSTEIN: I believe that this point we have a

20   pretty good idea of who the players are on the City of New

21   York side.

22       THE COURT:  I mean, it reads that way, but I don't

23   know.

24       MR. EDELSTEIN:  But you never know what discovery

25   might reveal.  We we're leaving some room there to add

1  parties, if necessary.

2  THE COURT:  For New Haven do you think that it's

3  just Officer White or --

4  MR. EDELSTEIN:  It may just be Officer White. It may

5  be more than Officer White.  We certainly have had less

6  opportunity to explore the players on the New Haven side of

7  the street.

8  So it may be that after we've obtained discovery

9  from New Haven there will be additional parties there. I mean,

10  if you ask me for my gut feeling, I would say probably not.

11  THE COURT:  Okay.

12  MR. EDELSTEIN:  But it's certainly -- you know, I've

13  been wrong about these things before, so we're some room in

14  the pleadings.

15  THE COURT:  All right.  Look.  My general preference

16  is to get everybody who needs to be here as soon as possible,

17  but reading the complaint it does seem like the New York part

18  of it is fairly well developed, whereas, there didn't seem to

19  be as much information on the New Haven side.

20  So I was wondering whether that tax day date is

21  realistic.  If it's good for you, it's fine with me.

22  All right.  The experts.  What kinds of experts are

23  you thinking about?

24  MR. EDELSTEIN:   We would -- we're mainly thinking

25  in terms of damages experts at this point.  The psychologist,

1     possibly an economist.

2              THE COURT:  Is it a treating psychologist or

3     somebody you're retaining for this case?

4              MR. EDELSTEIN:  It is somebody who Mr. Hamilton has

5     been treating with and I believe intends to continue treating

6     with.

7              THE COURT:  All right.  So then --

8              MR. EDELSTEIN:  Although for the sake of disclosure,

9     we did refer him to that person.

10             THE COURT:  All right.  If it's the treating

11    physician, or psychologist or any of those kinds of people,

12    then you should deal with them in the fact discovery period.

13    And the kind of report you would be required to produce could

14    be different from what you would have to do for a non-treater.

15             MR. EDELSTEIN:  At the moment a report is in

16    progress.  We do intend to produce that in the near future

17    and, of course, we would also give releases.

18             THE COURT:  All right.

19             MR. LARKIN:  May I just -- for clarification sake.

20    Is that psych report or an economist's report.

21             MR. EDELSTEIN:  A psych report.

22             THE COURT:  That was the psych right?

23             MR. LARKIN:  Fair enough. Thank you.

24             MR. EDELSTEIN: We have not yet consulted with an

25    economist.  We're in the process of deciding that.

1          THE COURT:  All right.  So in terms of the

2     disclosure of your experts, it should happen before the end of

3     fact discovery.  So let's say May 31st, a month earlier, or

4     six weeks earlier than what you were including in here.  On

5     the schedule it's number 7A.

6          MR. LARKIN:  Is that for the plaintiff or both

7     sides?  I assume we're going to get their experts and then

8     figure out --

9          THE COURT:  I should have asked, I guess.  Are you

10     going to have your own report, or are you just going to do

11     rebuttals?

12          MR. LARKIN:  I think we're going to do -- in a case

13     like this typically we would do rebuttals, Your Honor.

14          So if I get a psych report a lost income, lost

15     earnings report, we would do rebuttals.

16          THE COURT:  Okay.  So this would just be for the

17     plaintiff, but if you decide you're going to have somebody,

18     then -- for you as well, the initial disclosure should be by

19     May 31st.

20          MR. LARKIN:  Okay.

21          THE COURT:  All right.  So then what about the

22     timing of these reports then why on your economist and -- the

23     psych I guess is up in the air, how you're going to classify

24     that person.

25          MR. LARKIN:  Also --

1          THE COURT:  Why -- I'm sorry. Go ahead.

2          MR. LARKIN:  Sorry, Your Honor, to interrupt.

3          I've been advised by co-counsel we may also be

4    consulting a vocational expert, along with the economist.

5          THE COURT:  Okay.  All right.  So why -- it seems

6    like the subject matter of each of those reports is not really

7    dependent on much of the discovery that you're getting from

8    anyone else.  Those are matters that are within your and Mr.

9    Hamilton's control.  So why wait until August 15th?

10         Because what concerns me is there's a very small gap

11   between when you're producing your report and when you're

12   expecting rebuttal reports.  And the rest of the schedule's

13   obviously tied to expert discovery being completed.

14         MR. NOVOTASOVSKY:  May I ask if the City's

15   anticipating deposing those kinds of folks?

16         MR. LARKIN:  I have no idea.  I'd have to see the

17   reports.

18         THE COURT:  All right.  Well, I want to build in

19   time for them to do that.  So why would you need to wait till

20   8/15?  It would seem --

21         MR. EDELSTEIN:   We can do an earlier date, Your

22   Honor.

23         THE COURT:  All right.

24         MR. EDELSTEIN:  If the disclosure deadline is 5/31,

25   we could have reports by 6/30.

1          THE COURT:  Okay.

2          MR. EDELSTEIN:  And as I said before, we intend to

3     have the psych report --

4          THE COURT:  Ready soon.

5          MR. EDELSTEIN:  Pretty soon.  Yes.

6          THE COURT:  All right.

7          And then on defendant's side how much time -- I

8     mean, the -- basically, I'm fine with expert discovery

9     finishing by 9/16, but you know, you either produce the report

10    later, but there's a small window for doing depositions or you

11    produce a report earlier and you have more time on that.  What

12    would you like?

13         MR. LARKIN:  For the City -- for the New York

14    defendants, Your Honor, I guess just -- I mean, 7/30 for the

15    rebuttal reports. I find that in August -- trying to get a

16    hold of experts in August in generally very difficult.  Making

17    it July 30th might make more sense. I would defer to Mr.

18    Karsten as to his view on the New Haven defendants.  Is that

19    reasonable?

20         MR. KARSTEN:  I agree.  7/30.

21         THE COURT:  Okay.  So on this form 7C is going to be

22    7/30.  All right.  We'll leave the other dates. They're all

23    fine.

24         Let me just give you a date for a status phone call.

25    How is March 31st at 2:30?

1          MR. EDELSTEIN:  That's a phone conference, Your

2     Honor?

3          THE COURT:  Yes.  Yes.

4          MR. EDELSTEIN:  That date is fine.

5          MR. LARKIN:  March 30th, Your Honor?

6          THE COURT:  How about somebody tell me if it's a

7     problem, since there's so many of you.

8          MR. EDELSTEIN:  I heard 31st.

9          MR. KARSTEN:  31st.

10         THE COURT:  March 31st at 2:30.

11         Mr. Signorelli?

12         MR. SIGNORELLI:  Yes, Your Honor.  That's fine.

13    Thank you.

14         THE COURT:  All right.  Anybody else?

15         MR. LARKIN:  2:30, Your Honor?

16         THE COURT:  Yes, 2:30, just to make sure this is all

17    moving.

18         I'd like the status letter the week before.  That's

19    3/24.  I was looking at this schedule -- the pretrial

20    conference date will be set later on.

21         All right.  Is there any discovery that you think if

22    it were taken earlier, or provided earlier in this case, it

23    would help you assess the lay of the land, either as to areas

24    that you would like to explore on either side or for your

25    settlement discussions.  It was mentioned for the plaintiff,

1  of the district attorney's file that's coming via the court of

2  claims action, I understand.

3       MR. EDELSTEIN:  And we would certainly also be

4  asking for the NYPD files and the New Haven PD files from

5  these defendants, subject to the protective order.

6       THE COURT:  When you say files, what are you talking

7  about?  Is that a big catch all phrase, or is there something

8  in particular you have mind?

9       MR. EDELSTEIN:  Well, certainly we would be looking

10  for the NYPD files regarding the homicide of Nathaniel Cash.

11  We would look for the files regarding Mr. Hamilton.

12       Also there was a shooter who was identified by

13  another witness named Money Will Dawson, who was killed

14  himself not long after the Nathaniel Cash murder.

15       And we would certainly want the NYPD file regarding

16  the Money Will Dawson homocide to see if there's anything in

17  there that might indicate that it was retribution for

18  Nathaniel Cash, for instance.

19       Those are what we're -- or certainly key among the

20  things that we're intending to demand.

21       THE COURT:  All right.  But is there anything of

22  that list that if you received it earlier it would be

23  particularly helpful?  From either side.  Obviously, the psych

24  report seems to be coming early.

25       MR. EDELSTEIN:  The DA's documents will be coming as

1    soon as we get them.

2          THE COURT:  Right.  All right.  Nobody has any

3    thoughts on ways to move this along more expeditiously.  All

4    right.  It's up to you all then to see what it is that you

5    need and ask for it and see how they exchange goes.

6          So I'd encourage you to talk about settlement.  If

7    this court of claims deposition happens and it leads to

8    settlement negotiations there, it might make sense to

9    coordinate this. It might make sense for you all to have a

10   mediator.

11         We could do -- this might be quite an extensive

12   negotiation.  The court has a mediation panel.  So we could

13   give you the referral to that and there's very experienced

14   mediators on that panel.

15         If you have issues as you go along, let me know.  A

16   joint letter is how I'd prefer to hear about it so I can get

17   both -- or the multiple respective positions about whatever

18   the dispute is and we can try to resolve it hopefully quickly.

19         MR. EDELSTEIN:  I believe a mediator does make sense

20   to us, Your Honor.

21         THE COURT:  I'm guessing they need a demand before

22   they could even begin to think about whether that's a process

23   in which the defendants would like to participate.

24         MR. EDELSTEIN:  Yes, that's something --

25         MR. LARKIN:  I think that's right.

1          THE COURT:  All right.  So on the plaintiff's side,

2     if you work on that -- I mean, you've all done this or similar

3     work before.  But it helps in this kind of case where I

4     imagine the demand is going to be quite significant, that you

5     provide support for the numbers.  That tends to move the

6     discussion forward.

7          All right.  Anything else we should talk about

8     today?

9          MR. LARKIN:  Not from the New York defendants, Your

10    Honor.

11         MR. KARSTEN:  I've got a couple of matters to speak

12    with Mr. Edelstein about, but I don't think I need to involve

13    the court in that process.

14         THE COURT:  Okay.  So try to have these conferences

15    by phone. It's sometimes hard when there's so many people, but

16    if -- we can try.  But with you coming down from Connecticut,

17    we may schedule it in person.  You can remind me that you're

18    from Connecticut and we'll see if it makes sense for you to

19    just to it by phone.

20         MR. KARSTEN:  I appreciate that very much, Your

21    Honor.

22         THE COURT:  And the same thing with you, Mr.

23    Signorelli.

24         All right.  So anything else?

25         MR. EDELSTEIN:  Not from the plaintiff's side, Your

1    Honor.

2              THE COURT:  We're good.

3              MR. KARSTEN:  Not from New Haven.

4              THE COURT:  All right.

5              MR. LARKIN:  We're good, Your Honor.

6              THE COURT:  All right.  Thanks. I would normally

7    tell you there's a conference room next door where you could

8    all talk, but it looks like there's a deposition still going

9    on.  So I think the best we can offer you is our cafeteria.

10   But if it would help, you're welcome to use the courthouse.

11             MR. LARKIN:  Thank you, Your Honor.

12             THE COURT:  Take care.  Nice to meet you, Mr.

13   Hamilton.

14        (Proceedings concluded at 10:44 a.m.)

15        I, CHRISTINE FIORE, court-approved transcriber and

16   certified electronic reporter and transcriber, certify that

17   the foregoing is a correct transcript from the official

18   electronic sound recording of the proceedings in the above-

19   entitled matter.

20

21        *Christine Fiore*

22   _____        February 4, 2016

23        Christine Fiore, CERT

24

25