# EDELSTEIN & GROSSMAN
Attorneys at Law
501 Fifth Avenue, Suite 514
New York, NY 10017
Tel: (212) 871-0571
Fax: (212) 922-2906
jonathan.edelstein.2@gmail.com
_____

October 16, 2017

**VIA ELECTRONIC CASE FILING**
Hon. Sanket J. Bulsara, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: Hamilton v. City of New York et. al., 15-CV-4574 (CBA) (SJB)**

Your Honor:

I respectfully submit this joint status report pursuant to this Court's directive of September 14, 2017. This letter has been circulated to all parties prior to filing.

### Fact Discovery

One item of fact discovery remains in dispute: the extent of information required to be produced regarding the plaintiff's post-release business expenses at the Novo Law Firm where he is a paralegal.

The undersigned, on behalf of the plaintiff, represents as follows: The plaintiff, who was released from prison in 2011 after 20 years of wrongful incarceration, began working as a paralegal for the Novo Law Firm in 2014. The defendants requested, and plaintiff produced, the 1099 forms issued by the Novo firm for 2014, 2015 and 2016. These forms showed payments of $61,090.00 in 2014, $171,487.00 in 2015, and $180,400.90 in 2016.

When asked about his earnings at his deposition, the plaintiff stated that these amounts included business expenses that he incurred while investigating cases, which he paid from his own pocket and which were reimbursed by the Novo firm. The defendants demanded records of these business expenses. Plaintiff agreed to produce them and production was subsequently so-ordered.

It proved much more difficult than anticipated to collect the relevant information.

According to Ilya Novofastovsky, Esq., the principal of the Novo Law Firm, the expenses were not all kept in one file and had to be collated from many case files. Many of the expenses were incurred while investigating cases that the Novo firm ultimately did not take and for which client files were therefore never started. The expenses also needed to be compared against credit card statements to determine that they were in fact incurred by plaintiff and not some other employee. This process required an inordinate amount of time to be spent by Mr. Novofastovsky, the plaintiff, and others, and resulted in extensive delays.

During the past few weeks, the undersigned counsel was in almost daily (and sometimes twice-daily or more) contact with Mr. Novofastovsky regarding the delays in production and how they might be expedited. During the course of these discussions, I learned that as Mr. Novofastovsky found each expense, he entered it into a spreadsheet. I asked him to send me a copy of the spreadsheet and saw that it contained more than 2000 lines documenting more than $150,000 in expenses between September 5, 2014 and August 31, 2017. Each line contains (a) the date of the expense; (b) the payee – usually involving transportation, meals, and/or lodging; and (c) the amount. I then immediately produced the spreadsheet to defense counsel and stated that, to the extent that Mr. Novofastovsky and the plaintiff were able to isolate more expenses, I would produce updated versions. I also stated that the plaintiff would stipulate to the admissibility of the spreadsheet at trial.

The plaintiff now takes the position that the spreadsheet fully complies with this Court's directive to produce documentation of his business expenses and that further production would not be warranted in light of the collateral nature of the issue, the difficulties that have arisen, and privacy concerns. It is plaintiff's position that the information provided to the defendants – including the date, amount, and nature of each expense – is sufficient for them to cross-examine plaintiff on this issue if they wish to do so. Plaintiff further submits that, in light of the fact that these expenses were incurred during post-release employment more than 20 years after the central events of the case and that (as detailed in the report of his economist Kristin Kucsma) he is not claiming future lost earnings and/or lost earnings for the period of his employment at the Novo firm, the relevance of these expenses is slight, and a full-fledged fishing expedition into the plaintiff's day-to-day activities at the Novo firm is unwarranted. Further, as stated above, many of these expenses are documented on credit card statements which contain personal financial information and would be highly burdensome to redact, and moreover, the credit card statements will reveal details (such as the location where the expenses were incurred) which are not only irrelevant but might reveal which cases Mr. Hamilton was investigating, the witnesses he talked to, the places he visited, and/or other confidential information of the Novo firm.

Therefore, the plaintiff requests that this Court deem the spreadsheet to be sufficient production on this subject. Alternatively, in light of (a) the great difficulties incurred in obtaining the information, (b) the lack of a presently scheduled trial date, and (c) the fact that this information bears no conceivable relevance to any dispositive motion and is therefore not necessary to defendants' preparation for such motion practice, plaintiff requests an extension of at least sixty (60) days to produce additional records and that such further production be limited to redacted credit card statements.

Defendants take the position that the spreadsheet is not sufficient and that the delays in

the plaintiff's production are unacceptable. The attorney-created spreadsheet does not include all of the expenses for which plaintiff Derrick Hamilton claimed he was reimbursed while working for the Novo Law Firm. At deposition, he testified in substance that approximately $200,000 worth of expenses were, supposedly, "reimbursed" by the Firm, but the spreadsheet only shows approximately $151,000 in expenses including $108,069.40 for 2015 and 2016, which the defendants contend to be the only relevant years.

If plaintiff's counsel was somehow able to create a spreadsheet from primary source documents, then those primary source documents should be available for production. We submit that these documents should have been produced months ago. Plaintiff's counsel represented that he would produce these records at a court conference *seven months ago* (3/24 Conf. Tr. at pp. 4-5), and the Court *ordered* production in its docket entry of Sept. 14, 2017, which states:

> Defendants filed a motion to compel seeking *certain financial and tax records* from the Plaintiff. On July 18, 2017, Plaintiff responded to the motion by stating he does not object to an order compelling production of *these records*, and should the requested records not exist, to providing an affidavit attesting to their non-existence. Plaintiff's response also requested 30 days to produce the documents or affidavit. As such, the Defendants' motion to compel is granted.

(Dkt. 9/14/2017 (emphasis added – no document attached)

If, as plaintiff's counsel represents, the documents track and match what appears on the spreadsheet, then it should not have been difficult to produce the documents. Plaintiff's counsel's self-serving suggestion that he would "stipulate" to the admissibility of the spreadsheet that his co-counsel created should be rejected.

Defendants submit that the obvious reason plaintiff does not wish to produce the documents is that they will not substantiate his claim that he was paid $200,000 in "expenses" by the Novo Law Firm. If plaintiff claims that these payments were "reimbursements" when, in fact, the payments were ordinary income, then he can be cross-examined at trial about this claim which defendants believe may be false, including the actual basis for the receipt of an unusually significant amount of undisclosed income for the position of paralegal. Because plaintiff has not complied with the Court's prior orders directing him to produce the documents that back up his claimed "reimbursements," we submit that an adverse inference and/or an order precluding plaintiff from disputing the inference that he has falsely claimed as "reimbursements" hundreds of thousands of dollars in ordinary income, would be appropriate at this time. *See generally* Fed. R. Civ. P. 37(b) (setting forth available sanctions when party fails to comply with court order). We can brief this matter more fully should the Court require us to do so.

If this Court deems a telephone or in-person conference necessary, the undersigned counsel is unavailable on October 17, October 25, and November 1, but is otherwise available at any date and time during those weeks. Counsel for defendant Scarcella is unavailable on October 19, 24, and almost the entire week of October 30. Additionally, if this Court directs, Mr. Novofastovsky can be present at any conference to explain the difficulties he has encountered in collecting the information in question.

3

## Expert Discovery

The plaintiff has submitted to an IME and the parties have exchanged expert reports, with the reports of defense experts, psychologist Dr. Mary Tramontin and economist Dr. Andrew Kidd, exchanged on October 2, 2017. The plaintiff has demanded, with respect to Dr. Tramontin, (a) all notes, drafts, publications, memos, correspondence, textbooks, articles, studies, questionnaires, recordings, checklists/protocols generated and/or consulted in connection with the report; and (b) all materials furnished to and/or referred to by Dr. Tramontin that have not previously been exchanged. The City has taken this demand under advisement.

The plaintiff is currently considering whether to depose Dr. Tramontin, and is consulting with his own psychological expert, Dr. Sanford Drob, to determine whether such deposition is necessary and, if so, what topics to focus on. Given that the current date for close of discovery is October 27, 2017 and the City's counsel have advised that they will both be on trial for two to three days beginning October 20, plaintiff requests that the close of discovery be extended to November 30. Plaintiff submits that such extension is appropriate in light of the trial schedule of the City's counsel; the need to consult further with Dr. Drob; the need to obtain and review Dr. Tramontin's notes, test results, and other paperwork prior to any deposition; and the fact that the City sought and obtained a lengthy extension for production of its own expert reports.

The defendants do not object to the extension and join the request in order to give the parties additional time to determine whether to take expert depositions before trial.

## Settlement Discussions

The parties are in active discussion toward a settlement of this matter, and it is the plaintiff's understanding that counsel for the City of New York has met with the Comptroller's office and will set forth the City's position shortly.

The Court's consideration in this matter is appreciated.

Respectfully submitted,

/s/

Jonathan I. Edelstein

cc: All Counsel (Via ECF)

4