

THE CITY OF NEW YORK

# LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

ZACHARY W. CARTER
*Corporation Counsel*

ANGHARAD K. WILSON
*Senior Counsel*
Phone: (212) 356-2572
Fax: (212) 356-3509
awilson@law.nyc.gov

January 2, 2018

**VIA ECF**
Hon. Carol B. Amon
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    <u>Derrick Hamilton v. City of New York, et al.</u>, 15-CV-4888 (PAC)

We write in accordance with the Court's individual rules in order to request a pre-motion conference on the City's anticipated motion for summary judgment pursuant to Fed. R. Civ P. 56. Discovery closed on November 30, 2017, pursuant to the Honorable Sanket Bulsara's October 23, 2017 order, and we now write to Your Honor thirty (30) days thereafter as required by Fed. R. Civ. P. 56(b).

*Factual Background*: Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated in connection with his prosecution for the murder of Nathaniel Cash on January 4, 1991. Cash was shot in front of the building where he was living with his sister at approximately 11:00 a.m. by a group of four individuals. Cash's girlfriend, Jewel Smith, who was on the scene of the murder when investigating officers first arrived initially told Detective DeLouisa that she had spent the prior night with Cash, but that she was at a corner store at the time of the murder. Later, she told Detective Scarcella that she had witnessed the murder and identified Derrick Hamilton as Cash's killer, along with some of the other individuals who were with the killer. Jewel Smith now claims that her identification of Derrick Hamilton was the result of coercion on the part of the investigating detectives. Further, both Jewel Smith and plaintiff have testified that Ms. Smith told plaintiff that the police detectives had coerced her within a few days of the murder. Detectives also spoke to a witness whose identity has been kept secret by the KCDA who told them that Cash had said that he believed that plaintiff wanted to murder him, and that he had tried to get Cash to get into a car with him and a number of other individuals.

Ms. Smith testified in the grand jury, allegedly after being coerced by employees of the Kings County District Attorney's Office, including Investigator Joseph Ponzi to identify Hamilton as the shooter. After her grand jury testimony, Ms. Smith was relocated to North

Carolina by the KCDA because she told them that she had been threatened. Approximately ten days after the shooting, an off-the-books Pepsi delivery driver named Jerry Douglas stated to investigators that he had witnessed the Cash killing and identified plaintiff as the shooter. After plaintiff was arrested in New Haven, Connecticut on March 20, 1991, Ms. Smith appeared in the office of plaintiff's attorney, George Sheinberg, and gave a signed statement to Sheinberg alleging that she saw the shooting, and that the perpetrator was not Derrick Hamilton.

The sole eyewitness who testified at plaintiff's criminal trial was Jewel Smith.   Jerry Douglas was murdered in Brooklyn a few weeks prior to the start of the trial.

At the trial, Jewel Smith again identified plaintiff as Cash's killer. Smith was cross-examined extensively about her prior recantation to plaintiff's criminal defense counsel, as well as the fact that she and plaintiff had had extensive correspondence during the months leading up to plaintiff's trial and that she wrote plaintiff a number of love letters, which she testified at the trial she wrote out of fear of plaintiff. Plaintiff was convicted.

Plaintiff brought a number of post-conviction motions, including one pursuant to CPL 330.30 and several pursuant to CPL 440. At the hearing on the CPL 330 motion, Jewel Smith testified for the first time that the police investigators and employees of the KCDA had coerced her into identifying plaintiff. At that hearing, as well as in connection with a number of other motions, a variety of new witnesses appeared to testify upon plaintiff's behalf.  Plaintiff was released on parole on December 7, 2011. On January 9, 2015, plaintiff's conviction was vacated after a review by the KCDA Conviction Review Unit concluded that Jewel Smith was an unreliable witness and that her account of Cash's murder did not match the forensic evidence.

*False Arrest Under State Law and §1983*. Defendants will also move to dismiss Plaintiff's claims of false arrest, pursuant to both state law and § 1983. "The statute of limitations for a § 1983 claim arising in New York is three years . . . ." *Lawson*, 446 Fed. Appx. at 328. False arrest claims accrue at the time of arraignment. *See Wallace v. Kato*, 549 U.S. 384, 391 (2007). Here, plaintiff was arrested on or about March 20, 1991.  He was arraigned within a few days of his arrest. His §1983 false arrest claim, brought on August, 5, 2015, must thus be dismissed on statute of limitations grounds. *See Allen*, 2014 U.S. Dist. LEXIS 79031 (Mar. 13, 2014). In addition, this claim is barred by the one-year statute of limitations governing state law false arrest claims. *See George v. CSX Transportation, Inc.*, 13-CV-2317, 2014 U.S. Dist. LEXIS 10324, at *15 (E.D.N.Y. Jan. 28, 2014). The statute begins to run when a plaintiff's detention occasioned by the arrest ceases. *See Tirelli v. O'Connell*, 1:12-CV-1066, 2013 U.S. Dist. LEXIS 19053 (N.D.N.Y. Feb. 13, 2013) (statute began to run when plaintiff was released from custody after posting bail). Plaintiff was released from prison on December 7, 2011, meaning that his state law false arrest claim is also untimely.

*Malicious Prosecution.* Plaintiff's malicious prosecution claim fails because there was probable cause for the proceeding against him.  Probable cause is a complete defense to an allegation of malicious prosecution.  *See Manganiello*, 612 F.3d at 161-62; *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). As described above, there was probable cause to prosecute plaintiff for the murder of Nathaniel Cash. Even if Jewel Smith's identification of plaintiff is

excluded, there was an additional eyewitness identification of plaintiff, as well as the victim's statements implicating plaintiff in the murder.

_Violation of Right to Fair Trial under §1983_. Plaintiff alleges that his right to a fair trial was violated by the defendants in four principal ways: (1) the defendants fabricated Jewel Smith's identification of plaintiff and coerced her subsequent testimony; (2) the defendants fabricated evidence and presented perjurious testimony regarding Taseem Douglas; (3) the defendants failed to investigate the alleged presence of "Money" Will Dawson and Taseem Douglas at the crime scene, as well as alleged threats by Dawson to Smith; and (4) the defendants suppressed allegedly exculpatory evidence.

A civil rights plaintiff may bring an action under Section 1983 for denial of a fair trial resulting from fabrication of evidence.  In order to establish this claim, a plaintiff must plead facts supporting the inference that "(1) an investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  _Jovanovic v. City of New York_, 486 Fed. Appx. 149, 152 (2d Cir. 2012) (citing _Jocks v. Tavernier_, 316 F.3d 128, 138 (2d Cir. 2003); _Ricciuti v. New York City Transit Auth._, 124 F.3d 123, 129-30 (2d Cir. 1997)).  Based on plaintiff's complaint, it is unclear what evidence was fabricated regarding Taseem Douglas, as he did not testify at plaintiff's criminal trial, and thus, could not have influenced a jury. As for the allegedly coerced testimony from Jewel Smith, plaintiff and Jewel Smith both testified that plaintiff was aware of the alleged coercion on the part of the detectives well in advance of the trial. However, plaintiff's counsel did not cross-examine Ms. Smith at all on those claims; thus, the allegedly fabricated testimony did not proximately cause plaintiff's conviction.

A plaintiff may not bring a claim for a failure to adequately investigate a case under the guise of a deprivation of due process.  _Blake v. Race_, 487 F. Supp.2d 187, 212 n.18 (E.D.N.Y. 2007).  Plaintiff has alleged that his rights were violated by the failure to investigate a number of allegations; however, this is not a proper claim.

Finally, plaintiff alleges that ballistics evidence and the fact that Jewel Smith and Karen Smith were the same person were suppressed by the defendants. In order to prove a _Brady_ violation, Plaintiff must show that "evidence material to guilt" was suppressed, and that suppression "deprive[d] the defendant of a fair trial."  _United States v. Ritt-Weger_, 524 F.3d 171, 180 (2d Cir. 2008). It is undisputed that the pages of Det. DeLouisa's memobook concerning Jewel Smith and the ballistics report were turned over to plaintiff's counsel in time for these items to be used at trial. Plaintiff's counsel indisputably could have cross-examined witnesses with these documents at the time of the trial, but did not do so. Thus, the information was not suppressed.

Respectfully submitted,

/s/
Angharad K. Wilson
Senior Counsel

cc: All Counsel (via ECF)