UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DERRICK HAMILTON,                                                    15 CV 4574 (CBA) (SJB)

                          Plaintiff,

          -against-

THE CITY OF NEW YORK, et al.,

                          Defendants.
------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT DETECTIVE LOUIS
SCARCELLA'S MOTION FOR SUMMARY JUDGMENT**

LAW OFFICE OF
RICHARD E. SIGNORELLI
52 Duane Street, 7th Floor
New York, NY 10007
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠

Attorneys for Defendant
Detective Louis Scarcella (Ret.)

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..........................…...................................................1

ARGUMENT..................................…….….................................................4

POINT I

THE FAIR TRIAL CLAIM MUST BE
DISMISSED AS AGAINST DET. SCARCELLA.............................................4

    A.    The Allegations That Det. Scarcella Threatened And Coerced
        Smith To Make False Statements At The Precinct Are Not
        Supported By Any Evidence Sufficient To Create A Genuine
        Issue Of Material Fact...........................................................5

    B.    The Allegations That Det. Scarcella Threatened And Coerced
        Smith's Testimony Before The Grand Jury Are Not Supported
        By Any Evidence Sufficient To Create A Genuine Issue Of
        Material Fact...................................................................7

    C.    The Allegations That Det. Scarcella Threatened And Coerced
        Smith's Testimony At Trial Are Not Supported By Any
        Evidence Sufficient To Create A Genuine Issue Of Material
        Fact.......................……………………………………….......................10

    D.    There Is No Evidence That Det. Scarcella Importuned Officer
        White To Intimidate And Threaten Any Potential Defense
        Witness In Connecticut..........................................................11

    E.    Det. Scarcella Cannot Be Held Responsible For Failing To
        Disclose The Exculpatory Evidence At Issue..........................................12

POINT II

THE MALICIOUS PROSECUTION CLAIM MUST
BE DISMISSED AS AGAINST DET. SCARCELLA.......................................14

    A.    There Was Probable Cause To Commence Criminal
        Proceedings Against Hamilton Based On Smith's Statements
        And Evidence Independent Of Smith's Statements...............................14

B.      The Failure To Investigate Allegations Provide No Support
        For The Malicious Prosecution Claim.................................................................18

POINT III

DET. SCARCELLA IS ENTITLED TO
ABSOLUTE IMMUNITY FOR HIS
TESTIMONY IN JUDICIAL PROCEEDINGS.................................................................19

POINT IV

THE CONSPIRACY CLAIMS UNDER
28 U.S.C. §§ 1985(2) and (3) MUST BE
DISMISSED AS AGAINST DET. SCARCELLA...........……...............................................19

POINT V

HAMILTON'S ARGUMENTS ON HIS MONELL CLAIMS
SHOULD BE STRICKEN AND/OR DISREGARDED AS
THOSE ISSUES ARE NOT BEFORE THE COURT...........……......................................21

POINT VI

JOINDER IN CO-DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT...........……................................................…......21

CONCLUSION...............……….........................................…..............................................................22

ii

## PRELIMINARY STATEMENT

Defendant Detective Louis Scarcella (Ret.) ("Det. Scarcella") respectfully submits this reply memorandum of law in further support of his motion for an order: (1) granting summary judgment in favor of Det. Scarcella and dismissing the first cause of action, the fourth cause of action, and the sixth cause of action in the complaint in their entirety as against Det. Scarcella pursuant to  Fed. R. Civ. P. 56; (2) dismissing this action in its entirety as against Det. Scarcella; and (3) granting such other and further relief as the Court may deem just and proper.[1]

Plaintiff Derrick Hamilton's ("Hamilton") opposition papers are rife with references to other cases involving Det. Scarcella that are completely unrelated to this case. Hamilton repeatedly cites those cases to make baseless assertions and engage in rank speculation about the facts in this case.  See, e.g., Plaintiff's Local Civil Rule 56.1 Counterstatement ("Pl. Rule 56.1 Counterstmt.") ¶ 27 p. 48 (citing decision in John Bunn case and speculating that a statement from an anonymous caller implicating Hamilton in the shooting "was more likely fabricated by Scarcella"); ¶ 21 p. 45 (citing decision in Roseann Hargrave case and speculating that "it is highly likely that the individual defendants unduly influenced [Jerry] Douglas to" implicate Hamilton in the shooting).

The allegations and findings in those other cases are not relevant or material to any issue presented here.  It is apparent that Hamilton's intention in drawing the Court's attention to them at every turn is to inflame the Court to pre-judge Det. Scarcella and the allegations

---

[1] The transcript of Det. Scarcella's deposition testimony in this action and the exhibits thereto were marked and deemed confidential pursuant to the Stipulation of Confidentiality and Protective Order entered on or about December 10, 2015.  Det. Scarcella does not, however, object to the public filing of the portions of this transcript that are attached as exhibits to the parties' summary judgment motion papers.  All other portions of the transcript shall remain confidential, and Det. Scarcella reserves all of his rights in that regard.

against him in this case.  This case, like any other case before this Court, must be reviewed on its own merits and decided based on its own facts.

It bears noting in this regard that the Kings County District Attorney's Office's ("DA's Office") Conviction Review Unit ("CRU") is in the process of reviewing over 70 cases that Det. Scarcella had worked on as a detective.  While CRU has recommended vacating the convictions in some of those cases, it found nothing wrong or improper in the vast majority of the cases and has stood firmly by the convictions in all those cases.  The fact that Det. Scarcella was involved in a case is thus not an automatic get-out-of-jail-free card with a surefire multi-million dollar civil lawsuit to follow, to say the least.

As the Court is aware, one of Hamilton's attorneys of record in this case, Scott Brettschneider ("Brettschneider"), was recently indicted for making false statements and conspiring to make false statements to the Bureau of Prisons.  <u>United States v. Scott Brettschneider, et al.</u>, U.S. Dist. Ct., EDNY, Crim. Dkt. No. 18-cr-123 (CBA).  During the investigation Brettschneider was caught on a court-authorized wiretap discussing a scheme to bribe a murder witness to falsely recant his testimony and falsely accuse the police of coercing him to lie by threatening to lock him up; have the convicted killer released based on this false recantation and fabricated police misconduct; and then file a bogus wrongful conviction lawsuit on behalf of the released killer which Brettschneider anticipated would net him and his co-conspirator a third of $22,000,000.  According to Brettschneider, the case would be a "slam dunk" and a "home run."  He even suggested using a particular investigator to take the false statement because this investigator had "done thousands of these wrongful conviction cases as an investigator, he knows exactly what he needs you to know for the guy to say."  (Exhibit RR at

2

10-12.  Exh. RR is attached to the Reply Declaration of Bryan Ha submitted herewith).

This brazen scheme – which bears disturbing resemblances to this case (e.g., a murder witness recants her trial testimony and accuses the police of coercing her to lie by threatening to lock her up) – is described in detail in the government's pre-trial detention letter. (Id. at 10-12).  As detailed in the letter, Brettschneider and his co-conspirator actually proceeded to carry out this scheme in late 2014 and early 2015 – around the same time that Brettschneider and his then co-counsel were filing wrongful conviction claims on behalf of Hamilton against the City of New York and against the State of New York seeking $100,000,000 in damages (Hamilton's Notice of Claim was filed with the City on January 20, 2015, and his Verified Claim for Damages against the State was filed with the Court of Claims in March 2015). According to the government, Brettschneider's co-conspirator orchestrated numerous other similar schemes to bribe and intimidate witnesses "to thwart prosecution and obtain post-conviction relief" (which would of course then be followed by the filing of "slam dunk" multi-million dollar wrongful conviction lawsuits).  (Exh. RR at 6-10).  He "worked with multiple attorneys [including Brettschneider] to obtain statements from individuals purporting to be witnesses, dissuading witnesses (including victims) from testifying, and bribing or intimidating witnesses into offering recantations in sworn affidavits." (Id. at 8).[2]

---

[2] All this information came to light after the close of discovery in this case.  If the instant motion is denied and before this case proceeds to trial, Det. Scarcella respectfully submits that there is good cause to re-open discovery to allow the parties to take limited but essential discovery concerning Brettschneider's involvement in these witness bribery/false recantation schemes and any links to this case.

3

**ARGUMENT**

Initially, Hamilton makes two patently false assertions in his papers. <u>First</u>, he asserts that CRU and the "New York State Appellate Division" have concluded "that the officers engaged in egregious misconduct in this and other similar cases." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment ("Pl. Opp. Mem.") at 1). That is not true. There has been no finding by CRU or the Appellate Division (or any other court) that Det. Scarcella or any other officer did anything illegal or improper in connection with the investigation of the Nathaninel Cash ("Cash") homicide.

<u>Second</u>, Hamilton asserts that CRU has "investigated and rejected defendants' arguments" in this case. (Pl. Opp. Mem. 11). That is also not true. CRU has not considered and certainly has not rejected any of the arguments presented by the defendants in this action.

For the reasons set forth below and in the main moving papers, Det. Scarcella respectfully submits that the Court should grant summary judgment in his favor and dismiss this action in its entirety as against him.

**POINT I**

**THE FAIR TRIAL CLAIM MUST BE**
**<u>DISMISSED AS AGAINST DET. SCARCELLA</u>**

Hamilton's opposition relies heavily on the fact that CRU found Smith's eyewitness testimony about how the shooting transpired to be inconsistent with the crime scene evidence and the medical evidence and, therefore, unreliable. (<u>E.g.</u>, Pl. Opp. Mem. at 12; Pl. Rule 56.1 Counterstmt. at 44). However, the material issue for purposes of this motion is not

4

whether that testimony was unreliable per se.  The issue, rather, is whether Det. Scarcella threatened and coerced her to give that testimony.

Importantly, there was no finding by CRU that Det. Scarcella threatened or coerced Smith or did anything illegal or improper to procure her testimony.  As discussed below and in the main moving papers, the allegations that Det. Scarcella threatened and coerced Smith to falsely implicate Hamilton in the shooting are not supported by any evidence sufficient to create a genuine issue of material fact.

A.   **The Allegations That Det. Scarcella Threatened And Coerced Smith To Make False Statements At The Precinct Are Not Supported By Any Evidence Sufficient To Create A Genuine Issue Of Material Fact**

Hamilton does not dispute that the allegations that Det. Scarcella threatened and coerced Smith to make false statements at the precinct implicating him in the shooting rest entirely on Smith's own testimony. However, her testimony about being threatened and coerced by Det. Scarcella is utterly fanciful, implausible, and contradictory.

It is well-established that testimony that "is so contradictory and fanciful that it cannot be believed by a reasonable person" may not be relied upon to create an issue of fact to defeat summary judgment.  Jeffreys v. Rossi, 275 F.Supp.2d 463, 476-77 (S.D.N.Y. 2003), affirmed, Jeffreys v City of New York, 426 F.3d 549 (2nd Cir. 2005).

Hamilton contends that the Jeffreys rule applies only to the testimony of a party and does not apply to the testimony of a non-party witness.  (Pl. Opp. Mem. at 13).  This contention is meritless.  Courts have applied this rule to the testimony of non–party witnesses. As Judge Scheindlin has explained:

*Jeffreys* involved a court declining to credit the unreliable testimony of a *party* to the lawsuit, as opposed to a *witness*. Nevertheless, the holding in *Jeffreys* can be extended to a witness' testimony if it is so unreliable that it cannot create an issue of fact because no rational jury could believe it.

Bouche v. City of Mount Vernon, 2013 U.S. Dist. LEXIS 11424, at *24-25 & n.79 (S.D.N.Y. Jan. 28, 2013) (affidavits from non-party witnesses recanting their prior statements inculpating plaintiff and alleging that they were coerced by the police into giving those statements not sufficient to create genuine issue of fact). See, .e.g., Bank of Illinois v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1169 (7th Cir. 1996) (because "the same policy considerations would be served," the rule against allowing issues of fact to be created by statements that contradict prior testimony has been "extended . . . beyond the parties to include statements made by witnesses that contradict their prior deposition testimony"); Adelman-Tremblay v. Jewel Cos., Inc., 859 F.2d 517, 521 (7th Cir. 1988) ("[t]he purpose of summary judgment motions . . . is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict is own prior testimony").

Notably, Hamilton fails to offer any response to the extensive analysis in the main moving papers showing that Smith's testimony about being threatened and coerced at the precinct is utterly fanciful, implausible, and contradictory. He makes no attempt to refute any aspect of the analysis.

Instead, Hamilton just baldly asserts that, "in light of the Scarcella revelations, [Smith's testimony] is highly plausible." (Pl. Opp. Mem. at 14). Essentially, Hamilton is asking the Court to credit Smith's testimony in light of "revelations" about Det. Scarcella in newspaper and magazine articles and in other cases that have nothing to do with this case. This proposition

6

should be rejected outright.  Smith's testimony must be evaluated in light of the facts and evidence in this case.  This case must be reviewed on its own merits and decided based on its own facts.

Hamilton also frivolously disputes basic facts that are plainly established by the record evidence.  For example, Hamilton flatly denies that Smith was ever interviewed by Det. DeLouisa at the precinct on the day of the shooting.  (Pl. Rule 56.1 Counterstmt. ¶ 16 p. 43 ("There was no interview")).  But this interview was memorialized in an official DD-5 police report.  (Exh. K).  At her deposition Smith gave wildly conflicting testimony about this interview but acknowledged making the statements that were memorialized in the DD-5 report (and claimed that she was coerced to make those statements).[3]  Det. DeLouisa also testified about this interview at his deposition.  (Exh. F at 109).  Hamilton's claim that this interview never happened is utterly frivolous.

In sum, for all the reasons set forth above and in the main moving papers, the allegations that Det. Scarcella threatened and coerced Smith to make false statements at the precinct are not supported by any evidence sufficient to create a genuine issue of material fact as can defeat summary judgment.

**B.    The Allegations That Det. Scarcella Threatened And Coerced Smith's Testimony Before The Grand Jury Are Not Supported By Any Evidence Sufficient To Create A Genuine Issue Of Material Fact**

As discussed in the main moving papers, Smith was effectively "handed over" to the DA's Office after January 6, 1991.  From that point on the DA's Office (and not Det.

---

[3] This is discussed at length in the main moving papers.  See Memorandum of Law in Support of Defendant Detective Louis Scarcella's Motion for Summary Judgment at 24.

Scarcella) was responsible for dealing with her in connection with her grand jury testimony.

Pertinently, while denying that he threatened Smith, Hamilton does not dispute that Smith spoke

to Dan Saunders (Deputy Bureau Chief of Homicide) at the D.A.'s Office prior to her grand jury

testimony.  (Pl. Rule 56.1 Counterstmt. ¶ 32 pp. 53-54).  Smith also met with Inv. Ponzi at the

DA's Office right before she went to testify in front of the grand jury.  (Exh. W at 15-16, 18, 20;

Exh. X at 99).  While Hamilton asserts that "[t]his meeting never took place", he fails to (and

cannot) cite any evidence to support this assertion.  (Pl. Rule 56.1 Counterstmt. ¶ 35 p. 55).  Det.

Scarcella was not present at the meeting.[4]  (Exh. V at 87-88).

       Smith told Inv. Ponzi at their meeting that she was afraid of Hamilton and that

"she was afraid to testify, that she was concerned about the welfare – her own welfare and the

welfare of her family."[5]  (Exh. W at 16; Exh. X at 99).  Hamilton purports to dispute this and,

---

[4] Hamilton purports to dispute this fact, but does not actually assert that Det. Scarcella was not at the meeting. He only asserts that "[a]ny meetings that occurred were for the purposes of threatening and coercing Smith into providing false testimony."  (Pl. Rule 56.1 Counterstmt. ¶ 36 p. 55-56).

[5] Hamilton frivolously denies authoring the autobiographical account in the book he co-wrote with his sister describing his life as a violent street criminal and drug dealer.  (Pl. Rule 56.1 Counterstmt. ¶ 30 p. 52).  However, he is credited as a co-author of the book and it is explicitly stated in the book that he wrote the account himself.  The account, notably, is written in the first person from Hamilton's perspective.  As his sister wrote, "When I told my brother that I wanted to write about him in my book, he wanted to write his story in his own words, to help impress upon teens how to make the right choices to keep from ending up where he is today. Here is Derrick's story."  (Exh. V at 17).  The undersigned counsel did not become aware of the book, and Hamilton's autobiographical account in the book, until late September or early October 2017, more than six months after Hamilton's deposition in this case, through the expert witness report of Dr. Mary Tramontin, who discussed the book in her report.  Hamilton, who was obviously aware of the book all along, never disclosed it during discovery.  Under these circumstances there is no basis for precluding defendants from offering the book here or into evidence at trial should this case proceed to trial.  If the instant motion is denied and the Court allows limited discovery to be conducted before this case proceeds to trial, Det. Scarcella will seek additional discovery from Hamilton and other discovery as appropriate regarding his

taking her testimony out of context, claims that "ADA Gutmann herself testified under oath in 1993 that Smith was never reluctant to testify[.]" (Pl. Rule 56.1 Counterstmt. ¶ 35 p. 55).  This is a gross misrepresentation of ADA Gutmann's testimony.  Contrary to what Hamilton claims, ADA Gutmann actually testified that she knew that Smith "was very frightened" about testifying in front of the grand jury.  (Exh. Y at 92).  She further testified that Smith was reluctant to testify at trial:

> Q:  Now, when it came time to the trial, did she come in voluntarily?
>
> A:  We had a material witness order signed by the Judge and detectives went down to North Carolina to bring her to New York.
>
> Q:  Would it be fair and accurate to say she did not want to testify?
>
> A:  Yes.

(Exh. Y at 93).

Significantly, Hamilton admits that Smith previously testified at the N.Y.C.P.L. § 330.30 hearing that she was threatened and pressured to testify before the grand jury by ADA Gutmann and Inv. Ponzi.  (Pl. Rule 56.1 Counterstmt. ¶ 78 p. 34).  She did not claim in her testimony that she was threatened or pressured by Det. Scarcella.  (Exh. II at 58-60, 64-66).

In sum, for all the reasons set forth above and in the main moving papers, the allegations that Det. Scarcella threatened and coerced Smith's testimony before the grand jury are

---

statements in the book.

not supported by any evidence sufficient to create a genuine issue of material fact as can defeat summary judgment.

**C.     The Allegations That Det. Scarcella Threatened And Coerced Smith's Testimony At Trial Are Not Supported By Any Evidence Sufficient To Create A Genuine Issue Of Material Fact**

As discussed in the main moving papers, the DA's Office was responsible for procuring Smith's appearance and presenting her testimony at trial.  Det. Scarcella was not involved in that in any way.  Hamilton does not contend otherwise.  (Pl.'s Rule 56.1 Counterstmt. ¶¶ 43-47 pp. 58-60).  Further, Hamilton does not dispute that Smith met with Inv. Ponzi at the DA's Office before she testified at trial (he claims, though, that Inv. Ponzi threatened her at this meeting).  (Id. ¶ 45 at p. 59).

Hamilton also does not dispute that Smith repeatedly testified at trial about her fear of him.  He asserts, however, that all that testimony was fabricated and coerced by Det. Scarcella.  As support for this assertion Hamilton cites Smith's deposition testimony in which she claimed that Det. Scarcella fabricated and coerced all her trial testimony about her fear of him.  (Pl. Rule 56.1 Counterstmt. ¶¶ 48-54 pp. 60-62).

Hamilton's reliance on Smith's deposition testimony is unavailing.  As discussed at length in the main moving papers, all of Smith's testimony concerning the alleged fabrication and coercion of her trial testimony by Det. Scarcella is demonstrably false and utterly preposterous.  Hamilton offers no response to the extensive analysis in the main moving papers showing that this testimony is fanciful, implausible, and contradictory.  He makes no attempt to refute any aspect of the analysis.

10

Notably, Hamilton admits that Smith did not tell the police or the DA's Office at any time prior to the trial that she had signed the recanting statement at George Sheinberg's office.  (Pl. Rule 56.1 Counterstmt. ¶ 61 pp. 64-65).  He also admits that the recanting statement was introduced for the first time at trial during her cross-examination by Sheinberg.  (Id.).  Obviously, Det. Scarcella could not have fabricated and coerced Smith to give testimony at trial about a recanting statement that he knew nothing about prior to the trial.

In sum, for all the reasons set forth above and in the main moving papers, the allegations that Det. Scarcella threatened and coerced Smith's testimony at Hamilton's trial are not supported by any evidence sufficient to create a genuine issue of material fact as can defeat summary judgment.

**D.    There Is No Evidence That Det. Scarcella Importuned Officer White To Intimidate And Threaten Any Potential Defense Witness In Connecticut**

Hamilton does not dispute that there is no evidence that Det. Scarcella contacted defendant former Police Officer Billy White ("Officer White) about talking to any potential defense witness in Connecticut other than Taseem Douglas.  (Pl. Rule 56.1 Counterstmt. ¶¶ 69, 71 pp. 67-69).  However, Hamilton does not claim that Taseem Douglas was one of the potential defense witnesses who Det. Scarcella allegedly importuned Officer White to intimidate and threaten.  He admits that Det. Scarcella only "contacted [Officer] White . . . so the two of them could talk to Taseem Douglas[.]" (Id. ¶ 69 p. 67).  There is no evidence that Det. Scarcella ever asked Officer White to intimidate and threaten Taseem Douglas.

There is also no evidence that Det. Scarcella ever asked Officer White to intimidate and threaten Alphonso Dixon ("Dixon") or any other potential defense witness in

11

Connecticut.  Hamilton admits that Mattie Dixon did not state at her deposition or in her affidavit that Det. Scarcella was involved in any way with the alleged actions of Officer White in threatening and intimidating Dixon and Kim Freeman to deter them from testifying at Hamilton's trial.  (Pl. Rule 56.1 Counterstmt. ¶ 70 p. 69).  While claiming that Officer White threatened Kim Freeman, Hamilton does not claim that Det. Scarcella importuned him to do so or otherwise had any involvement in his doing so.  (Id. ¶¶ 73-75 on p. 70).  The evidence that Hamilton cites, i.e., Mattie Dixon's affidavit, does not indicate that Det. Scarcella had any involvement in Officer White's alleged actions.[6]  (Id.; Exh. KK).

In sum, for all the reasons set forth above and in the main moving papers, there is no evidence to support the claim that Det. Scarcella importuned Officer White to intimidate and threaten Dixon and other potential defense witnesses in Connecticut.

**E.    Det. Scarcella Cannot Be Held Responsible For Failing To Disclose The Exculpatory Evidence At Issue**

There is no basis for any claim against Det. Scarcella for failing to disclose the fact that Smith told Det. DeLouisa in their initial interview in the apartment that her name was "Karen Smith" and that she was at the store when the shooting occurred.  As discussed in the main moving papers, Det. Scarcella was not aware of this allegedly exculpatory information.  Det. DeLouisa never told Det. Scarcella what Smith said to him in this initial interview.  (Exh. D at 119).  Det. Scarcella did not know what Smith said in this interview.  (Exh. G at 135).

---

[6] In fact, Mattie Dixon's affidavit does not even support Hamilton's claim that Officer White threatened Kim Freeman.  Mattie Dixon did not state in her affidavit that Officer White threatened Kim Freeman.  She only stated that Officer White instructed Dixon to advise Kim Freeman to not testify for Hamilton.  (Exh. KK at ¶ 20).

While Hamilton purports to dispute this, the evidence he cites does not show that Det. DeLouisa told Det. Scarcella or that Det. Scarcella otherwise knew what Smith said in this initial interview. (Pl. Rule 56.1 Counterstmt. ¶¶ 6-7 on p. 39).[7]  Det. Scarcella cannot be held liable for failing to disclose information that he did not possess.

Hamilton also contends that the "defendant officers" failed to disclose: (1) "unexplored and suppressed leads related to Taseem Douglas and the actual perpetrators, Dawson and Johnson"; (2) "inconsistencies between the crime scene and forensic evidence, which rendered Smith's account impossible"; and (3) "the degree to which the forensic evidence corroborated the account of Taseem Douglas". (Pl. Opp. Mem. at 21).  This is simply a re-labeling and re-wording of Hamilton's failure to investigate allegations.[8]  As discussed in the main moving papers, these allegations of failure to investigate "do not create an independent due process claim[.]" Blake v. Race, 487 F.Supp.2d 187, 212 n.18 (E.D.N.Y. 2007).  Rather, these allegations "are covered by the Fourth Amendment" and  are properly considered as part of Hamilton's malicious prosecution claim. Id.

_____

[7] Hamilton frivolously asserts that Det. Scarcella violated Local Rule 56. 1 in claiming that these facts are undisputed.  (Pl. Opp. Mem. at 10). They are in fact undisputed and may be deemed admitted in light of Hamilton's failure to cite any evidence to controvert them.  See Local Civil Rule 56.1(c), (d).  Further, it is Hamilton who has violated Local Rule 56.1 by including numerous arguments and immaterial facts in his responses to Det. Scarcella's statement of material facts.  (See Defendant Detective Louis Scarcella's Reply to Plaintiff's Rule 56.1 Counterstatement submitted herewith).

[8] In his complaint, Hamilton alleges that Det. DeLouisa, Det. Scarcella, and Inv. Ponzi failed to investigate: (1) ballistics evidence from the crime scene, which allegedly did not match Smith's account of the shooting; (2) the fact that an individual named Taseem Douglas allegedly saw someone else shoot Cash; and (3) the fact that an individual named "Money Will" Dawson, one of the alleged actual shooters, visited and threatened Smith shortly after the shooting.  (Exh. FF at ¶¶ 49, 86(g)).

13

Finally, Hamilton contends that he is entitled to the exculpatory evidence "that by intimidating and threatening Alphonso Dixon through Billy White, the individual defendants were inhibiting the New Haven witnesses from testifying in plaintiff's trial." (Pl. Opp. Mem. at 21). As against Det. Scarcella, this is simply a re-labeling and re-wording of Hamilton's claim that Det. Scarcella importuned Officer White to intimidate and threaten Dixon and other potential defense witnesses in Connecticut. As discussed above and in the main moving papers, there is no evidence that supports this claim.

In sum, for all the reasons set forth above and in the main moving papers, the fair trial claim (first cause of action) against Det. Scarcella is not supported by any evidence sufficient to create any genuine issue of material act. The Court should grant summary judgment dismissing the claim as against Det. Scarcella.

## POINT II

### THE MALICIOUS PROSECUTION CLAIM MUST<br>BE DISMISSED AS AGAINST DET. SCARCELLA

As discussed below and in the main moving papers: (a) there was probable cause to commence criminal proceedings against Hamilton based on Smith's statements and evidence independent of Smith's statements; and (b) the failure to investigate allegations in the complaint provide no support for the malicious prosecution claim.

**A.      There Was Probable Cause To Commence Criminal<br>         Proceedings Against Hamilton Based On Smith's Statements<br>         And Evidence Independent Of Smith's Statements**

Hamilton contends that there was no probable cause to prosecute him because Smith's statements at the precinct were "unreliable and illegitimate" and "fabricated." (Pl. Opp.

Mem. at 32).  This contention is meritless.  As this Court has held, where it is alleged that police officers fabricated evidence to establish probable cause, "the question of whether the defendant fabricated evidence becomes synonymous with the question of whether genuine probable cause existed, and accordingly a plaintiff's malicious prosecution and fair trial claims would rise or fall together."  Morse v. Spitzer, 2012 WL 3202963, at *5-6 (E.D.N.Y. Aug. 3, 2012).  Here, for the reasons set forth above and in the main moving papers, the allegations that Det. Scarcella threatened and coerced Smith to make false statements at the precinct are not supported by any evidence sufficient to create a genuine issue of material fact.  Thus there is no genuine issue that there was probable cause for commencing the criminal proceedings against Hamilton based on Smith's statements.

But even if it is assumed, arguendo, that there is a genuine issue as to whether Smith's statements at the precinct were coerced, the malicious prosecution claim should still be dismissed because there was also probable cause independent of Smith's statements.  See Morse, 2012 WL 3202963 at *5 ("the existence of probable cause independent of the allegedly falsified evidence" is a complete defense to the malicious prosecution claim even if there is a question of fact as to whether the evidence was falsified).  This independent probable cause is based on the following evidence: (1) the statements of Jerry Douglas, an eyewitness present at the scene who positively identified Hamilton from a photo array as the shooter; (2) the statements of a witness interviewed by Det. DeLousia and Det. Scarcella; and (3) the statements made to Detective C.R. Duffy ("Det. Duffy) at the 79th Precinct by an anonymous caller.

Hamilton contends that all this evidence establishing independent probable cause is inadmissible hearsay and thus may not be used to support summary judgment.  (Pl. Rule 56.1

Counterstmt. ¶¶ 22-24, 26-27 pp. 45-48).  This contention is meritless.  First, these statements are not being offered for the truth of the matters asserted.  Rather, they are being offered to show other information that the police had for establishing probable cause independent of Smith's statements.  As such, these statements are not hearsay.  See Tuccio v. Papstein, 2009 U.S. App. LEXIS 1116, at *2 (2nd Cir. Jan. 22, 2009) ("[T[he challenged paragraphs are not hearsay because [the police detective] is not offering them for the truth of the matters asserted.  The statements are instead offered to show the information he had when he applied for the arrest warrant[.]") (citation omitted); Makinen v. City of New York, 167 F.Supp.3d 472, 493 (S.D.N.Y. 2016) (statements not hearsay because they "were offered to show that the statements were made to Stassi in the course of his investigation" and were not offered for the truth of the matters asserted).

Second, these statements were memorialized in official DD-5 reports.  (Exh. N; Exh. O; Exh. R; Exh. S).  Thus, even if they are hearsay (which they are not), they are admissible pursuant to the business records exception under Fed.R.Evid. 803(6) and/or the public records exception under Fed.R.Evid. 803(8).  See Garcia v. Portuondo, 459 F.Supp.2d 267, 281-82 & 283 n.84 (S.D.N.Y. 2006) (noting "the welter of official reports constantly created by New York and federal officers and agents" such as "DD-5's" and finding "that such reporting is inherent in the law enforcement function" and that such reports may be admissible pursuant to the public record exception or the business records exception to the hearsay rule).

In short, the evidence establishing probable cause independent of Smith's statements is not inadmissible hearsay and may be relied upon to support summary judgment here.

16

As part of his blame-everything-on-Scarcella strategy, Hamilton also suggests, without any basis whatsoever, that all the evidence establishing independent probable cause was fabricated by Det. Scarcella.  With regard to the anonymous caller, he suggests that the "anonymous tip was more likely fabricated by Scarcella."  (Pl. Rule 56.1 Counterstmt. ¶ 27 p. 48).  This is totally unhinged speculation not supported by a shred of evidence.  The indisputable evidence shows that the statements were made in a phone call to Det. Duffy and were memorialized in a DD-5 report by Det. Duffy.  (Exh. S).  Det. Scarcella had nothing to do with it.

Hamilton also suggests that the statements made by the witness interviewed by Det. DeLouisa and Det. Scarcella were also "more likely fabricated by Scarcella."  (Pl. Rule 56.1 Counterstmt. ¶ 26 p. 48).  This is yet more unhinged speculation not supported by a shred of evidence.  The interview in question was conducted by Det. DeLouisa and Det. Scarcella in the presence of another person.  It was memorialized in a DD-5 report, which has been redacted by the police to keep the identity of the witness and the identity of the other person who was present at the interview confidential.  (Exh. R).  There is no evidence of any impropriety with respect to this interview.

Finally, continuing to speculate recklessly, Hamilton suggests that Jerry Douglas's statements were "likely procured by police misconduct" and that "it is highly likely that the individual defendants unduly influenced [Jerry] Douglas to make the statements at issue[.]"  (Pl. Rule 56.1 Counterstmt. ¶ 22 p. 46; ¶ 21 p. 45).  None of that is true.  Jerry Douglas's statements were made in an interview with two assistant district attorneys from the DA's Office that was recorded on audio tape.  (Exh. M; Exh. P).  He also made these statements in an interview with Det. DeLouisa that was memorialized in a DD-5 report.  (Exh. N).  His identification of

Hamilton from a photo array as the person that he saw pass the gun was also memorialized in a DD-5 report. (Exh. O). There is no evidence of any "police misconduct" or any "undue influence" exerted on him by Det. Scarcella or any of the other defendants in this case. As a matter of fact, there is no evidence that Det. Scarcella ever even spoke to Jerry Douglas or had any contact with him. Hamilton's suggestion of improper conduct by Det. Scarcella with respect to Jerry Douglas is outrageous and absurd.

**B.      The Failure To Investigate Allegations Provides No Support
             For The Malicious Prosecution Claim**

Hamilton asserts that any probable cause that may have existed at the outset "was vitiated by powerful later evidence" that Smith's statements were not consistent with "the crime scene and forensic and ballistic evidence" and "knowledge that the two actual perpetrators, Dawson and Johnson, had not been investigated." (Pl. Opp. Mem. Law at 33). According to Hamilton, "any reasonable detective would have thoroughly investigated the Dawson lead, among others, and spoken to Taseem Douglas." (Id. at 37).

These assertions are essentially the same as the failure to investigate allegations in the complaint. (Exh. FF at ¶¶ 49, 86(g)). For all the reasons discussed in the main moving papers these allegations provide no support for the malicious prosecution claim here.

In sum, for all the reasons set forth above and in the main moving papers, there was probable cause for commencing the criminal proceedings against Hamilton based on Smith's statements and evidence independent of those statements. Accordingly, the Court should grant summary judgment dismissing the malicious prosecution claim under § 1983 (first cause of action) and under state law (sixth cause of action) against Det. Scarcella.

## POINT III

### DET. SCARCELLA IS ENTITLED TO
### ABSOLUTE IMMUNITY FOR HIS
### TESTIMONY IN JUDICIAL PROCEEDINGS

Hamilton does not dispute that Det. Scarcella is entitled to absolute immunity

from liability on any claim against him based on testimony that he gave in judicial proceedings.

Hamilton represents, however, that he is not asserting any such claim against Det. Scarcella in

this action.  (Pl. Opp. Mem. Law at 57).

Insofar as Hamilton is not asserting any claim against Det. Scarcella based on

testimony he gave in judicial proceedings, there is no need for the Court to address this issue.  To

the extent that any such claim is asserted in the complaint, they should be deemed withdrawn and

dismissed in light of Hamilton's representation that he is not asserting any such claim.

## POINT IV

### THE CONSPIRACY CLAIMS UNDER
### 28 U.S.C. §§ 1985(2) AND (3) MUST BE
### DISMISSED AS AGAINST DET. SCARCELLA

Hamilton's complaint asserts conspiracy claims against Det. Scarcella and Officer

White under 42 U.S.C. §§ 1985(2) and (3).  (Exh. FF at ¶¶ 129-33).  These claims should be

dismissed for the reasons discussed in Det. Scarcella's and Officer White's main moving papers.

Significantly, Hamilton does not dispute that a plaintiff asserting a conspiracy

claim under § 1985(3) must show that the conspiracy was "motivated by some racial or perhaps

otherwise class-based, invidious discriminatory animus behind the conspirators' action."  Mian v.

Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2nd Cir. 1993).  He also does not

dispute that a plaintiff asserting a claim for conspiracy to interfere with a state court proceeding

19

under § 1985(2), as Hamilton is doing here, must also show that the conspirators' actions were motivated by some discriminatory "racial, ethnic, or class-based animus[.]"[9] <u>Zemsky v. City of New York</u>, 821 F.2d 148, 151 (2nd Cir. 1987).

 As discussed in the main moving papers, Hamilton does not even alleged in his complaint that the alleged conspiracy was motivated by any racial or other class-based discriminatory animus.  There is no evidence in the record of any such discriminatory animus. Hamilton does not contend otherwise.

 Accordingly, for all the reasons set forth above and in the main moving papers, the Court should grant summary judgment dismissing the conspiracy claims under § 1985(2) and § 1985(3) (fourth cause of action) as against Det. Scarcella.[10]

---

 [9] There are two clauses in § 1985(2).  The first clause, "which prohibits conspiracy to interfere with federal court proceedings, does not require a showing of class-based discrimination."   <u>Zemsky v. City of New York</u>, 821 F.2d 148, 151 n.4 (2nd Cir. 1987).  The second clause, which prohibits conspiracy to interfere with state court proceedings, requires such a showing.  <u>See</u> <u>id.</u> at 151.  The second clause is applicable here because Hamilton is alleging a conspiracy between Det. Scarcella and Officer White to intimidate and prevent potential defense witnesses from testifying at his trial in state court.  (Exh. FF at ¶¶ 129-33).

 [10]  In his papers Hamilton cites cases involving conspiracies under § 1983, apparently in an attempt to pass off his claims as § 1983 conspiracy claims because he knows that his claims under §§ 1985(2) and (3) cannot survive.  (Pl. Opp. Mem. at 53-56).  Hamilton, however, did not assert a conspiracy claim under § 1983 against Det. Scarcella in his complaint.  He cannot simply graft a § 1983 conspiracy claim into this action now by insinuating it in his motion papers.

## POINT V

## HAMILTON'S ARGUMENTS ON HIS <u>MONELL</u> CLAIMS SHOULD BE STRICKEN AND/OR DISREGARDED AS THOSE ISSUES ARE NOT BEFORE THE COURT

None of the defendants are moving for summary judgment on Hamilton's <u>Monell</u> claims.  Hamilton knows this.  (Pl. Opp. Mem. at 39 (noting "that defendants are not moving for summary judgment on plaintiff's *Monell* claims").  He also knows that <u>Monell</u> liability issues cannot properly be raised on summary judgment at this stage because no discovery on those issues has been conducted in this case.  Pursuant to the Initial Scheduling Order entered on December 6, 2015, all <u>Monell</u>-related discovery has been deferred pending the determination of the individual defendants' liability.  (ECF Doc. No. 28).

Despite that, Hamilton presents extensive arguments and a melange of alleged facts concerning <u>Monell</u> liability issues in his papers and asserts that his <u>Monell</u> claims "are established as a matter of law".  (Pl. Opp. Mem. Law at 39-52).  Because these issues are not properly before the Court and are not ripe for adjudication, the arguments and alleged facts in Hamilton's papers concerning these issues should be stricken and/or disregarded in their entirety.

## POINT VI

## JOINDER IN CO-DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Det. Scarcella adopts by reference any arguments made in the motions for summary judgment filed by his co-defendants in this action, including any arguments made in reply papers filed in further support of the motions, to the extent such arguments are applicable to him.

21

## CONCLUSION

For the foregoing reasons and all the reasons set forth in the main moving papers, the Court should grant the instant motion and issue an order: (1) granting summary judgment in favor of Det. Scarcella and dismissing the first cause of action, the fourth cause of action, and the sixth cause of action in the complaint in their entirety as against Det. Scarcella pursuant to Fed. R. Civ. P. 56; (2) dismissing this action in its entirety as against Det. Scarcella; and (3) granting such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
             June 18, 2018

Respectfully submitted,

LAW OFFICE OF
RICHARD E. SIGNORELLI

By:    /s/ Richard E. Signorelli
        /s/ Bryan Ha
       _____
       Richard E. Signorelli
       Bryan Ha
       52 Duane Street, 7th Floor
       New York, NY 10007
       Telephone:    212 254 4218
       Facsimile:     212 254 1396
       rsignorelli@nycLITIGATOR.com[SM]
       www.nycLITIGATOR.com[SM]

       Attorneys for Defendant
       Detective Louis Scarcella (Ret.)