UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X
DERRICK HAMILTON,

                                PLAINTIFF,


              -against-           Case No.:
                                 15-CV-4574


THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, DET. LOUIS SCARCELLA,
individually and in his capacity as a New
York City police officer, DET. FRANK
DELOUISA, individually and in his capacity
as a New York City police officer, INV.
JOSEPH PONZI, individually and in his
capacity as an investigator for the Kings
County District Attorny's office, JOHN/JANE
DOE NOS. 1 through 10, being unknown
employees of the City of New York, THE CITY
OF NEW HAVEN, POLICE OFFICER BILLY WHITE,
individually and in his capacity as a New
Haven police officer and JOHN/JANE DOE
NOS. 11 through 20, being unknown employees
of the City of New Haven,

                                DEFENDANTS.
-------------------------------------------X



                    DATE:  January 26, 2017

                    TIME:  10:43 A.M.




    (DEPOSITION OF DETECTIVE FRANK DELOUISA)

DET. F. DELOUISA

A.    Your question again, Counselor?

Q.    Sure.  Do you remember approximately what time you arrived at 215 Monroe Street?

A.    This does not indicate the time of my arrival.

MS. WILSON:  Let's take a five minute break.

(Whereupon, a brief recess was taken.)

Q.    Detective, how much do you actually remember about this case?

A.    Not total recollection.

Q.    If you had to tell me about the case without me asking you any questions, just, say, tell me what you remember, what would your answer be?

MS. WILSON:  Objection.  You can answer.

A.    My recollection is more focused at the crime scene.

Q.    What do you remember about the crime scene?

A.    Upon my arrival, I remember

DET. F. DELOUISA

seeing a body on the sidewalk.

Q.   Do you recall what time of day it was?

A.   It was daylight.

Q.   Was it morning or afternoon?

A.   I'm not certain.  I don't recall the time.

Q.   And what else do you remember; do you remember where the body was?

A.   On the sidewalk.  I think it was in front of 215 Monroe.

Q.   Do you remember what 215 Monroe looked like?

A.   From what I recall, there was a brickface building.

Q.   Was it an apartment house?

A.   It was multiple apartments in that building.

Q.   Do you remember how someone would enter into that apartment building?

A.   Front door entrance.

Q.   Were there steps?

A.   I don't remember.

Q.   What else do you remember

DET. F. DELOUISA

the apartment?

MS. WILSON:  Objection.  You can answer.

A.    No.

Q.    And other than yourself, who from law enforcement was in the apartment?

MS. WILSON:  Objection.  You can answer.

A.    I recall at least one detective that I responded with.  I don't remember if there was any uniform officers there or any other law enforcement.

Q.    Other than in your spiral notebook, would you have kept a record of who you were with that day in that apartment?

A.    The only other place I can think of is on a DD5.

Q.    When reviewing DD5s in this case, did you see that information anywhere?

A.    I don't recall seeing that.

Q.    So when you got into the apartment, did you ask for a specific

DET. F. DELOUISA

MR. BRETTSCHNEIDER:  I'll withdraw the question.

Q.    Did she tell you that her name wasn't Karen Smith?

MS. WILSON:  Objection.

A.    Her exact words, I don't recall.  But she first identified herself as Karen Smith to me and then Jewel Smith.

Q.    Did you get any other information at that time about her background?

A.    That, I don't recall, no.

Q.    But am I clear that during this initial interview she denied being a witness to Nathaniel Cash's murder?

MS. WILSON:  Objection.

MR. HA:  Objection.

A.    At this time when I was taking the statement she said she went to the store.

Q.    Did she give you specific times as to when she left to go to the store?

A.    Her response was "I went to the store, it was going on 11 o'clock."

DET. F. DELOUISA

Q. Did she also indicate what she saw when she returned from the store?

A. Upon her return, according to these notes, she states she was here to stay the night, went to the store on the corner, came back, he was on the floor, two people were by him, they said get an ambulance.

Q. Now, during this conversation that you had with her, did you ask her if she had a criminal record at this juncture?

A. No.

Q. Did you ask her if she was either on probation or parole?

A. No.

Q. To the best of your recollection, do you remember what she looked like?

A. A female black. If I saw her again, maybe I'd be able to identify her.

Q. Do you recall how old she was back on January 4, 1991, approximately?

A. I don't recall her age.

Q. Do you recall her height?

DET. F. DELOUISA

Q.    Do you see any names that refresh your recollection in the spiral notebook as the two sisters?

A.    I can't recall if the name I see here is one of the sisters.

Q.    And what is that name?

A.    It's an "also known as" Rose Kelly.  I'm not sure if that's one of the sisters or not.

Q.    So is there any other entry in there in which you list a female, the names of two females?

A.    I'll look.

Q.    Sure.

A.    From the copy you gave me to look at, I can't tell if there was the names of the sisters listed in here.

Q.    Is there a name "William Johnson" in there?

A.    I'm looking.

There's the name "Will Johnson".

Q.    Did you write down anything with respect to William Johnson?

DET. F. DELOUISA

A.    Reading from the copy of that notebook is "DOB," and that's blacked out, and it says "Cousin of Nathaniel present in the house, 215 Monroe."

Q.    Did you ask William Johnson if he was a witness to Mr. Cash's murder?

MS. WILSON:  Objection.

A.    Yes.

Q.    What did he tell you?

A.    He said no, that's his cousin.

Q.    Is there anywhere in the spiral notebook in which you indicated that you asked him whether he was a witness to the murder?

MS. WILSON:  Objection.

A.    I'll look again, but I did note that he was present in the house with Jill when the conversation took place.

That question is not in the book.

Q.    Now, you just called Ms. Smith Jill, did you also learn that the person who told you her name was Karen Smith and then Jewel Smith also was known as Jill

DET. F. DELOUISA

A.    I did not know that.

Q.    Did anyone call him "Money"?

A.    I did not hear anybody call him "Money".

Q.    Did you, at any point in time, either that day or in the future learn that William Johnson was Money Will?

MS. WILSON:  Objection.

A.    From what I recall, I think at the Grand Jury it was told that Money Will is Will Johnson.

Q.    Did you also learn that, at that time, he had been convicted of murder and was out on parole?

MS. WILSON:  Objection.

A.    No, I did not learn that.

Q.    Did you ever learn that?

A.    Just preparing for this case.

Q.    Did an assistant district attorney by the name of Adam Charge ever inform you in either 1999 or 2000, in preparation for a 440 Hearing, that Money Will was William Johnson, and that he was a convicted murderer on January 4, 1991?

DET. F. DELOUISA

A.    From what I recall, the sisters or sister stated you were with my brother, you know what happened, you better tell the police the truth and then from what I recall the sister launched at Karen or Jewel.

Q.    And do you remember the name of that sister?

A.    No.

Q.    Did you report in your spiral notebook anything about this physical altercation?

A.    I'm going to review again.

Q.    Sure.

MS. WILSON:  Off the record.

(Whereupon, an off-the-record discussion was held.)

A.    I don't see the fight noted.

Q.    And when you reviewed your DD5s, you didn't notice anything in the DD5s that indicated there was a fight in this apartment?

A.    I don't remember.

Q.    Now, did you fill out a DD5

DET. F. DELOUISA

with respect to the information that Karen

Smith a/k/a Jewel Smith gave you as to her

whereabouts at the time Nathaniel Cash was

murdered during this interview in this

apartment?

MR. HA:  Objection.

A.    I don't recall that.

Q.    You don't recall seeing a DD5?

A.    Correct.

MS. WILSON:  I'm sorry, can you

repeat that question.

MR. BRETTSCHNEIDER:  Sure.

Q.    Was a DD5 ever prepared

regarding this interview of Jill Smith in

the apartment?

MS. WILSON:  Objection.  You

can answer.

A.    Yes.

Q.    There was a DD5 prepared?

A.    I think there was, I don't

recall, but could you rephrase that again.

Say that again.

Q.    Sure.  Do you recall a DD5 that

you prepared with regard to this interview

50

DET. F. DELOUISA

of Jewel Smith in the apartment?

A.    I don't recall.

Q.    Do you recall seeing one while you were reviewing your testimony before you testified here today?

A.    I don't recall.

Q.    Isn't it a fact that no DD5 exists of this interview?

MS. WILSON:  Objection.

A.    I don't know that.

Q.    Do you have a copy of the DD5s?

A.    No.

Q.    Would you prepare a DD5 of this interview?

MR. HA:  Objection.

MS. WILSON:  Objection.

Q.    Would one prepare a DD5 in which an individual who claimed that they were not a witness be prepared?

MS. WILSON:  Objection.

MR. HA:  Objection.

A.    In this case, I recorded that in a notebook.  If it's on a DD5, I don't recall.