UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DERRICK HAMILTON,                                                    15 CV 4574 (CBA) (SJB)

                          Plaintiff,

             -against-

THE CITY OF NEW YORK, et al.,

                          Defendants.
----------------------------------------------------------------x




**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT DETECTIVE LOUIS
SCARCELLA'S MOTION IN LIMINE**

LAW OFFICE OF
RICHARD E. SIGNORELLI
52 Duane Street, 7th Floor
New York, NY 10007
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠

Attorneys for Defendant
Detective Louis Scarcella (Ret.)

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................…......................................................1

RELEVANT BACKGROUND ...................................…......................................................1

ARGUMENT...................................………........................................................................3

POINT I

HAMILTON SHOULD BE PRECLUDED FROM
INTRODUCING ANY EVIDENCE OF OTHER BAD ACTS
AGAINST DET. SCARCELLA UNDER FED. R. EVID. 404(b)............................................3

A.     The Other Bad Acts Evidence Is Not Relevant To Any Issue In This
       Case And Is Being Used For An Improper Purpose......................................................5

B.     The Other Bad Acts Evidence Is Not Admissible To Establish Any
       Pattern Of Conduct By Det. Scarcella...........................................................................6

       1.     OSI Investigation Evidence..........................................................................7

       2.     Unrelated Criminal Cases Evidence..............................................................7

       3.     Disciplinary Records...................................................................................12

C.     Any Probative Value That The Other Bad Acts Evidence Can Possibly
       Have Is Substantially Outweighed By The Risks Of Unfair Prejudice
       And Other Harms.........................................................................................................12

       1.     The Other Bad Acts Evidence Has No Probative Value.............................13

       2.     The Risks Of Unfair Prejudice And Other Harms Substantially
              Outweigh Any Probative Value That The Other Bad Acts Evidence
              Can Possibly Have.......................................................................................17

POINT II

HAMILTON SHOULD BE PRECLUDED FROM CALLING
ANY WITNESS ON HIS IMPEACHMENT WITNESS LIST
AND USING ANY OTHER EXTRINSIC EVIDENCE FOR
IMPEACHMENT PURPOSES UNDER FED. R. EVID. 608(b)..........................................20

POINT III

HAMILTON SHOULD BE PRECLUDED FROM
INTRODUCING ANY EVIDENCE THAT WAS
NOT PREVIOUSLY PRODUCED IN DISCOVERY...........................................................21

POINT IV

HAMILTON SHOULD BE PRECLUDED FROM
INTRODUCING EVIDENCE OR MENTIONING THAT
DET. SCARCELLA MAY BE INDEMNIFIED BY THE CITY............……........................23

POINT V

JOINDER IN CO-DEFENDANTS' MOTIONS IN LIMINE...............................................24

CONCLUSION.................………....................................................................................................24

## PRELIMINARY STATEMENT

Defendant Detective Louis Scarcella (Ret.) ("Det. Scarcella") respectfully submits this memorandum of law in support of his motion in limine for an order:

(1) precluding plaintiff Derrick Hamilton ("Hamilton") from:

(a) introducing at trial any evidence of other bad acts against Det. Scarcella under Fed. R. Evid. 404(b);

(b) calling any witness on his impeachment witness list to testify at trial and introducing at trial any other extrinsic evidence of other bad acts for impeachment purposes under Fed. R. Evid. 608(b);

(c) introducing at trial any evidence that was not previously produced in discovery; and

(d) introducing evidence or mentioning at trial that Det. Scarcella may be indemnified by the City of New York ("City") for any potential liability he may have in this case; and

(2) granting such other and further relief as the Court deems just and proper.[1]

## RELEVANT BACKGROUND

Hamilton's claims in this case arise out of his prosecution and conviction for the murder of Nathaniel Cash on January 4, 1991. Hamilton alleges, inter alia, that Det. Scarcella, Detective Frank DeLouisa, Investigator Joseph Ponzi, and Assistant District Attorney Ann Gutman threatened and coerced a witness named Jewel Smith ("Smith") to falsely implicate him in the shooting.

---

[1] Det. Scarcella also adopts by reference and joins in any other motions in limine filed by his co-defendants in this action to the extent such motions are applicable to him.

Hamilton's repeated efforts during the years of his incarceration to directly and collaterally attack his conviction failed in both the state and federal courts. E.g., Hamilton v. Herbert, 2004 U.S. Dist. LEXIS 590 (E.D.N.Y. Jan. 16, 2004).

In or around early 2014, the Kings County District Attorney's ("KCDA") Conviction Review Unit ("CRU") began reviewing Hamilton's conviction. CRU ultimately found that Smith's testimony concerning how the shooting transpired was inconsistent with the crime scene evidence and the medical evidence. In light of its findings, CRU determined that Smith's testimony concerning the shooting was not reliable and that Hamilton's conviction should be vacated since it was based on that testimony.

Significantly, CRU did not find that Det. Scarcella or anyone else had threatened Smith or coerced her testimony. There was no finding that Det. Scarcella did anything illegal or improper in connection with the Cash homicide investigation.

Notably, all the crime scene evidence and medical evidence were available to Hamilton at the time of his trial. At trial, Sergeant Liam Ahern, an officer from the New York City Police Department's ("NYPD") Crime Scene Unit, testified at length about the ballistics evidence in the case. All the ballistics evidence was admitted into evidence. Detective Thomas Natale from the NYPD Ballistics Section also testified at trial as a ballistics expert concerning the ballistics evidence in the case. Hamilton thus could have argued and probed on cross-examination of these witnesses the theory that the ballistics evidence was inconsistent with Smith's account of the shooting.[2]

_____

[2] Hamilton's trial counsel in fact asked Det. Natale on cross-examination: "Based upon your examination, could there have been more than two firearms used?" Det. Natale responded, "It's a possibility."

Det. Scarcella was not involved in and had no responsibility for gathering and examining the ballistics evidence and did not testify about the ballistics evidence at trial. He acted properly and legally at all times during the course of the Hamilton case.

## ARGUMENT

For the reasons discussed below, Hamilton should be precluded from: (1) introducing at trial any evidence of other bad acts against Det. Scarcella under Fed. R. Evid. 404(b); (2) calling any witness on his impeachment witness list to testify at trial and introducing at trial any other extrinsic evidence of other bad acts for impeachment purposes under Fed. R. Evid. 608(b); (3) introducing at trial any evidence that was not previously produced in discovery; and (4) introducing evidence or mentioning at trial that Det. Scarcella may be indemnified by the City for any potential liability he may have in this case.

## POINT I

### HAMILTON SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE OF OTHER BAD ACTS AGAINST DET. SCARCELLA UNDER FED. R. EVID. 404(b)

Hamilton should be precluded from introducing evidence of any other bad acts against Det. Scarcella at trial.

Hamilton seeks to introduce a host of evidence concerning alleged misconduct by Det. Scarcella in numerous other completely unrelated matters. Specifically, Hamilton seeks to introduce the following bad acts evidence against Det. Scarcella:

(1) Evidence concerning alleged improprieties by Det. Scarcella in connection with an investigation by the Department of Education Office of Special Investigations ("OSI") of alleged tampering with the Regents exam at Cobble Hill

3

High School ("OSI Investigation Evidence"). Det. Scarcella, who worked as an OSI investigator after he retired from the NYPD, was involved in the investigation from approximately April 2004 to May 2005.

(2) Evidence concerning alleged misconduct by Det. Scarcella in connection with numerous unrelated criminal cases, including the cases of Sundhe Moses, David Ranta, John Bunn, Rosean Hargrove, Shabaka Shakur, Nelson Cruz, James Jenkins, Jabbar Washington, Shawn Williams, Linwood Wright, Robert Hill, Alvena Jenette, Darryl Austin, Robert Logan, and Vanessa Gathers ("Unrelated Criminal Cases Evidence").

(3) Det. Scarcella's personnel and disciplinary records ("Disciplinary Records"). (The OSI Investigation Evidence, the Unrelated Criminal Cases Evidence, and the Disciplinary Records are referred to collectively herein as the "Other Bad Acts Evidence").

Fed. R. Evid. 404(b)(1) prohibits the use of evidence of other bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence may be used for a purpose other than to show a person's propensity, but only if it is relevant and satisfies Fed. R. Evid. 403's balancing test, i.e., "if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice" and other harms. United States v. Garcia, 291 F.3d 127, 136 (2nd Cir. 2002) (citations and quotation marks omitted); see Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

Essentially, to be admissible, evidence of other bad acts "must be (1) offered for a proper purpose; (2) relevant; and (3) substantially more probative than prejudicial. In addition, (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." United States v. Downing, 297 F.3d 52, 58 (2nd Cir. 2002) (citations omitted).

For the reasons discussed below, none of the Other Bad Acts Evidence is admissible. Hamilton should be precluded from presenting any of this evidence at trial.

**A.**   **The Other Bad Acts Evidence Is Not Relevant To Any Issue In This Case And Is Being Used For An Improper Purpose**

The Other Bad Acts Evidence is not relevant to any issue in this case and is being used for an improper purpose.

"[T]he incidents alleged in the complaint are what is on trial, not the conduct of [Det. Scarcella] at other times and places and under other circumstances." Boykins v. City of New York, 2017 U.S. Dist. LEXIS 193768, at *10-11 (E.D.N.Y. Nov. 22, 2017). Evidence of Det. Scarcella's alleged misconduct in connection with the OSI investigation and in other unrelated criminal cases is not relevant to any issue in this case and is being used improperly to show his propensity to commit the misconduct alleged in this case. To the extent Hamilton intends to offer evidence of civilian complaints from the Disciplinary Records, that evidence is likewise not relevant to any issue in this case and would only serve to improperly show Det. Scarcella's propensity to commit the misconduct alleged in this case.[3]

Accordingly, none of the Other Bad Acts Evidence is admissible. See Berkovich

---

[3] Hamilton has not specified which documents or what information from the Disciplinary Records he plans to use.

v. Hicks, 922 F.2d 1018, 1022 (2nd Cir. 1991) ("Under Rule 404(b), wrongful acts evidence may not be admitted merely to show the defendant's propensity to commit the act in question."); United States v. Carboni, 204 F.3d 39, 44 (2nd Cir. 2000) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") (quoting Rule 404(b)).

**B.      The Other Bad Acts Evidence Is Not Admissible To Establish Any Pattern Of Conduct By Det. Scarcella**

The Other Bad Acts Evidence is not admissible to establish any pattern of conduct by Det. Scarcella.

Evidence of other bad acts may be admitted to establish a "pattern of conduct" if they "shared 'unusual characteristics' with the acts charged, thereby evidencing a unique scheme or pattern." United States v. Benedetto, 571 F.2d 1246, 1249 (2nd Cir. 1978); see Berkovich, 922 F.2d at 1022. To meet this requirement, "much more is demanded than the mere repeated commission of [acts] of the same class, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.*" Benedetto, 571 F.2d at 1249 (quoting McCormick, Evidence § 190, at 449 (2d ed. 1972) (emphasis in original)); see Garcia, 291 F.3d at 137 (proffering party "may not . . . offer, carte blanche, any prior act of the defendant in the same category of crime"); Bermudez v. City of New York, U.S. Dist. Ct. E.D.N.Y. Case No. 15-CV-3240 (KAM) (RLM), Memorandum and Order filed on January 8, 2019 ("Bermudez Decision") at 18 (proffering party must show "[m]ore than the 'mere repeated commission' of some act").

Hamilton cannot make that showing here.   The Other Bad Acts Evidence consists

mainly of unproven allegations of misconduct by Det. Scarcella. But even if it is assumed that these allegations can be proven, they do not share the requisite "unusual characteristics" with the alleged misconduct in this case.

### 1. OSI Investigation Evidence

The OSI investigation of alleged tampering with the Regents exam at Cobble Hill High School occurred more than fourteen years ago. That investigation has nothing to do with this case. It is completely unrelated to any police work that Det. Scarcella performed as a member of the NYPD. While the Office of the Special Commissioner of Investigation for the City of New York reviewed the OSI investigation and found fault with aspects of Det. Scarcella's work in the investigation, none of the alleged improprieties shares any "unusual characteristics" with the alleged misconduct in this case.

### 2. Unrelated Criminal Cases Evidence

The alleged misconduct by Det. Scarcella in the unrelated criminal cases do not share any "unique characteristics" with his alleged misconduct in this case. For example, Shabaka Shakur, Sundhe Moses, Nelson Cruz, and Vanessa Gathers were each convicted based in part on confessions they gave which they later claimed were fabricated or coerced by Det. Scarcella. This case does not involve a confession. Hamilton does not claim that Det. Scarcella fabricated or coerced any confession from him.

None of the other unrelated criminal cases share any "unique characteristics" with this case either. For example:

- In the Jabbar Washington case, a witness who had identified Washington from a lineup later disputed that she identified him as the perpetrator. This

information was not disclosed to the defense, which the KCDA conceded was a Brady violation. While Det. Scarcella was accused of giving testimony that misleadingly suggested that the witness had identified Washington as the perpetrator, there was no allegation that he had threatened and coerced the witness to make a false identification.

•  In the Rosean Hargrove case, a victim who survived the shooting identified Hargrove as one of the shooters.  There was no allegation that Det. Scarcella threatened or coerced the witness to falsely identify Hargrove or that he did anything improper to procure the identification.  In fact, at a hearing on the co-defendant John Bunn's § 440.10 motion, the witness stood by his identification testimony at trial and reiterated that Hargrove was one of the shooters.[4]  Without alleging that Det. Scarcella did anything improper to procure the identification in his case, Hargrove instead argued in his § 440.10 motion that he was entitled to a new trial in light of "new evidence" of alleged misconduct by Det. Scarcella in other cases (e.g., the David Ranta case).  See People v. Hargrove, 162 A.D.3d 25, 43 (2nd Dep't 2018).[5]

_____

[4] People v. Bunn, N.Y. Sup. Ct., Kings Cty., Indict. No. 10150-91, Decision and Order dated Nov. 22, 2016 at 5 ("Mr. Crosson testified at trial that the defendants were the individuals who shot him and his friend and reiterated that at the hearing.").

[5] The Hargrove court evaluated Hargrove's claim under the newly-discovered evidence standard in CPL 440.10(1)(g), which provides that a motion for a new trial should be granted if the court finds that

[n]ew evidence has been discovered since the entry of a judgment .

8

- John Bunn is the co-defendant in the Hargrove case who was identified by the survivor-victim as the other shooter. As in the Hargrove case, there was no allegation that Det. Scarcella threatened or coerced the witness to falsely identify Bunn or that he did anything improper to procure the identification. In fact, as noted above, at a hearing on Bunn's § 440.10 motion the witness stood by his identification testimony at trial and reiterated that Bunn and Hargrove were the shooters (see infra n.4). Without alleging that Det. Scarcella did anything improper to procure the identification in his case, Bunn like Hargrove instead argued in his § 440.10 motion that he was entitled to a new trial in light of "new evidence" of alleged misconduct by Det. Scarcella in other cases (e.g., the David Ranta case). See People v. Bunn, N.Y. Sup. Ct., Kings Cty., Indict. No. 10150-91, Decision and Order dated Nov. 22, 2016 ("Bunn Decision") at 12-13.[6]

- Alvena Jennette, Darryl Austin, and Robert Hill were each convicted based on the trial testimony of Teresa Gomez. Upon re-evaluating their

---

. . which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such a character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant[.]

See Hargrove, 162 A.D.3d at 55.

[6] Both Bunn and Hargrove raised other arguments in their respective § 440.10 motions that are not pertinent here (such as ineffective assistance of counsel and failure to preserve exculpatory evidence). See Bunn Decision at 12; Hargrove, 162 A.D.3d at 44.

cases in 2014, CRU determined that Gomez's testimony was problematic and for that reason (and without finding that Det. Scarcella did anything improper in bringing Gomez to the KCDA as a witness) agreed to vacate their convictions.

- In the <u>Shawn Williams</u> case, a witness who identified Williams as the person she saw put the gun into his waistband later recanted and claimed that she "felt pressure" to make the identification. According to the witness, she "felt pressure" to do so because the victim's mother had told her that Williams was the person who killed her son. She also claimed that she "felt pressure" from police detectives, including Det. Scarcella. However, there is no allegation that Det. Scarcella actually did anything to threaten and coerce her to falsely identify Williams.

- <u>Roger Logan</u> was convicted based in part on the identification testimony of a witness named Aisha Jones. Upon re-evaluating his case, CRU discovered that Jones had been arrested the day before the shooting and was in police custody. It is not apparent what misconduct, if any, Det. Scarcella was alleged to have committed in this case.

- In the <u>David Ranta</u> case, five different witnesses identified Ranta as the perpetrator. Ranta also confessed. He subsequently claimed that his confession was coerced by Det. Scarcella. It was also discovered that two of the witnesses who implicated him were incarcerated felons who were allegedly allowed to leave jail, smoke crack cocaine, and have sex with

prostitutes in exchange for their testimony. One witness who picked Ranta from a police lineup later claimed that he was coached to pick the guy with "the big nose".

- In the <u>James Jenkins</u>, the trial judge was critical of the identification procedures used by Det. Scarcella and did not allow the identification of Jenkins to be admitted at trial. Jenkins was convicted nevertheless. In other word, Jenkins was not convicted as a result of any alleged impropriety by Det. Scarcella.

It is clear from the foregoing that the unproven allegations of misconduct by Det. Scarcella in the unrelated criminal cases do not share any "unique characteristics" with his alleged misconduct in this case. That there may be some superficial similarities in some of the allegations, or that he is accused of engaging in the "same class" of conduct in some cases, is not enough. For example, it is not enough that he is accused in different cases of conducting improper identification procedures or procuring witnesses who later recanted their testimonies and was deemed to be unreliable in hindsight.[7] As discussed above, "much more" is needed to satisfy this requirement "than the mere repeated commission of [acts] of the same class[.]" <u>Benedetto</u>, 571 F.2d at 1249 (citation omitted).

---

[7] It is important to note that in all these cases Det. Scarcella brought the witness to the KCDA and the KCDA then interviewed and vetted the witness and determined that the witness was reliable and made the decision to use the witness. For example, Teresa Gomez was interviewed and vetted extensively by the KCDA (and may have even been polygraphed by the KCDA). The KCDA, after vetting her, deemed her reliable and authorized her to testify in multiple murder cases.

### 3. Disciplinary Records

As noted above, Hamilton has not specified which documents or what information from the Disciplinary Records he plans to use. There is nothing in the Disciplinary Records that provides a basis for establishing a pattern of conduct that would permit their use here under Rule 404(b). To the extent Hamilton intends to use evidence of civilian complaints from the Disciplinary Records, none of those complaints share any "unique characteristics" with the alleged misconduct in this case. See Bermudez Decision p. 21 (granting motion to preclude use of defendants' disciplinary histories because, among other things, "Plaintiff has not specified what documents in defendants' disciplinary histories he plans to offer, nor has he described what pattern of conduct he seeks to prove, nor has he established any other permissible purpose for admitting this evidence").

In sum, the Other Bad Acts Evidence is not admissible to establish any "pattern of conduct" by Det. Scarcella.

## C. Any Probative Value That The Other Bad Acts Evidence Can Possibly Have Is Substantially Outweighed By The Risks Of Unfair Prejudice And Other Harms

Any probative value that the Other Bad Acts Evidence can possibly have is substantially outweighed by the risks of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

Even if relevant and otherwise admissible (e.g., as evidence of a "pattern of conduct"), evidence of other bad acts may be excluded pursuant to Fed. R. Evid. 403 if the probative value of the evidence is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

12

or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see Benedetto, 571 F.2d at 1248-49 ("Once the trial judge has decided that the [prior acts] evidence is relevant . . . the judge must still weigh the probative value of the evidence against harmful consequences, principally 'unfair prejudice.'").

Here, as discussed below, the Other Bad Acts Evidence has no probative value. And any probative value that it can possibly have is substantially outweighed by the risks of unfair prejudice to Det. Scarcella, confusing the issues, misleading the jury, undue delay, and wasting time.

### 1.    The Other Bad Acts Evidence Has No Probative Value

The Other Bad Acts Evidence consists mainly of unproven allegations that have no probative value. For example, Sundhe Moses alleged that, to coerce his confession, Det. Scarcella "struck him in the face, choked him while pressing his head against a wall and blew cigar smoke in this face." People v. Moses, 2018 WL 1163796, at *2 (N.Y. Sup. Ct. Kings Cty. Jan. 11, 2018). He claimed "that he was frightened and that he made the statement because of Detective Scarcella's actions." Id. However, none of these allegations have been proven. As a matter of fact, the judge in his case found after a hearing that "[t]he prosecution is correct that some of [Moses's] more recent claims concerning what Detective Scarcella and the other detectives did to him seem far-fetched." Id. at *8.

As another example, in the Vanessa Gathers case, Gathers' lawyer claimed that her confession was coerced by Det. Scarcella. However, while finding that the confession was problematic and agreeing to vacate her conviction, CRU found that Det. Scarcella did nothing wrong to obtain her confession. Assistant District Attorney Mark Hale stated in court that the

confession was "a product of permissible pressure" by the police.[8]

The Rosean Hargrove case and the John Bunn case are also revealing. Hargrove and Bunn were co-defendants charged with the same homicide. In the Hargrove case, the court (ShawnDya L. Simpson, J.) wrote:

> It has been established that the cases of David Ranta, Derrick Hamilton, Robert Hill, Alvena Jennette and Darryl Austin were comprised [sic] by the intentional acts of Detective Scarcella which lead to the extinguishment of the judgment and sentence in those cases by the decision of the District Attorney's Office. In each of those cases, Detective Scarcella procured identification testimony that was false and was predominantly the basis for their conviction.

State v. Hargrove, 2015 N.Y. Misc. LEXIS 3691, at *16-17 (N.Y. Sup. Ct. Kings Cty. Apr. 14, 2015). Justice Simpson repeated these statements verbatim in her decision in the Bunn case. See Bunn Decision at 13. She further wrote in the Bunn case: "Detective Scarcella has been found to have engaged in a pattern and practice at the time the instant case was investigated and litigated to have gotten witnesses to lie and provide false testimony concerning the identification of the accused in those cases." Id. at 15.

These statements are not accurate and lack a factual basis. Whether Det. Scarcella engaged in intentional misconduct in the Hamilton case is an open question that will be tried before a jury in this Court at the trial scheduled to start on November 12, 2019. No finding with any factual basis has been made in any judicial proceeding to date that Det. Scarcella did anything improper in connection with Hamilton's case. Nor has there been any such finding by

---

[8]The Guardian, "New York woman convicted of manslaughter in 1998 is exonerated", Feb. 23, 2016
<https://www.theguardian.com/us-news/2016/feb/23/new-york-manslaughter-vanessa-gathers>

CRU.  As discussed above, CRU agreed to vacate Hamilton's conviction because it found that Smith's testimony concerning how the shooting transpired  was inconsistent with the crime scene evidence and the medical evidence (all of which was available to Hamilton at his trial).  It did not find that Det. Scarcella had done anything illegal or improper in connection with the case.

Justice Simpson's statements concerning the cases of David Ranta, Robert Hill, Alvena Jennette and Darryl Austin similarly lack a factual basis.  While allegations of wrongdoing have been made against Det. Scarcella in connection with these cases, none of the allegations have been proven.  No finding with any factual basis has been made in any judicial proceeding or by CRU that Det. Scarcella did anything improper in connection with any of these cases.  As the KCDA stated in an affirmation filed in opposition to Shawn Williams' motion to vacate his conviction:

> The Conviction Review Unit of the Kings County District Attorney's Office ("C.R.U.") has completed review of forty-one other cases in which Detective Scarcella was involved in the police investigation.  In thirty-four of those forty-one cases, the District Attorney's Office has concluded that it will defend the conviction. In the other seven of those forty-one cases, the District Attorney's Office has consented to *vacatur* of the judgment of conviction.  In each of those forty-one cases, the decision of the District Attorney's Office regarding whether to defend the conviction or consent to *vacatur* was based on consideration of all of the facts and circumstances of the case.  In each of the seven cases in which Detective Scarcella was involved in the police investigation and in which the District Attorney's Office has consented to vacatur of the judgment of conviction – namely, the cases of Robert Hill, Darryl Austin, Alvena Jennette, Roger Logan, Vanessa Gathers, Carlos Davis, and Derrick Hamilton – the decision to consent to vacatur was for reasons not related to any alleged misconduct by Detective Scarcella.  In addition, in another case in which Detective Scarcella was involved in the police investigation – the case of David Ranta – the District Attorney's Office . . . also consented to vacatur of the judgment of conviction; but in that

> case, too, the decision to consent to vacatur was for reasons not
> related to any alleged misconduct by Detective Scarcella.

(Affirmation in Opposition to Motion to Vacate Judgment (by Assistant District Attorney Seth M. Lieberman) dated May 15, 2017, filed in the case of People v. Williams, N.Y. Sup. Ct., Kings Cty., Indict. No. 11731/93, at ¶ 49 (emphasis added). Copies of relevant pages of this affirmation are attached as Exhibit A to the Declaration of Bryan Ha submitted herewith). It bears noting again here that the KCDA, independently of Det. Scarcella, interviewed and vetted and approved the use of Teresa Gomez as a witness in the Robert Hill, Alvena Jennette and Darryl Austin cases. The KCDA, after vetting her (and perhaps even polygraphing her), deemed her reliable and authorized her to testify. There has never been any finding that Det. Scarcella did anything wrong in bringing Gomez to the KCDA as a witness (for the KCDA to interview and vet and approve or disapprove as it deems fit).

In short, contrary to what Justice Simpson wrote, it has not "been established" that Det. Scarcella engaged in intentional misconduct in Hamilton's case and in the cases of David Ranta, Robert Hill, Alvena Jennette and Darryl Austin. None of the allegations of misconduct in these cases have been proven. Det. Scarcella has consistently denied all the allegations made against him in these and other cases.[9]

As for the civilian complaints in the Disciplinary Records, none of them has any

---

[9] Justice Simpson also wrote that Det. Scarcella appeared on the Dr. Phil Show in 2007 and "stated on the show that there were no rules when it came to prosecuting homicide cases and that he did not play by the rules", and concluded that "[t]his statement indicates an acknowledgment of a lack of disregard [sic] for rules." Hargrove, 2015 N.Y. Misc. LEXIS 3691 at *14-15. However, Det. Scarcella also stated on the show that he would do anything "within the law" to get a confession or get someone to cooperate. This statement, which provided important context for his other statements, was not mentioned in Justice Simpson's decision. <https://www.drphil.com/slideshows/false-confessions-louis/>

probative value either. Of all the complaints brought against Det. Scarcella from 1974 through 1999 (when he retired from the NYPD), only one was substantiated with charges. He was cleared of those charges after a departmental trial. He was also cleared and found not liable in the § 1983 action that was brought based on those charges. None of the complaints has any relevance here.

Finally, as noted above, the OSI investigation of alleged tampering with the Regents exam at Cobble Hill High School occurred more than fourteen years ago. That investigation has nothing to do with this case. It is completely unrelated to any police work that Det. Scarcella performed as a member of the NYPD. It has no probative value here.

In sum, the Other Bad Acts Evidence that Hamilton is seeking to use against Det. Scarcella consists mainly of unproven allegations that have no probative value whatsoever.

## 2. The Risks Of Unfair Prejudice And Other Harms Substantially Outweigh Any Probative Value That The Other Bad Acts Evidence Can Possibly Have

Any minuscule probative value that the Other Bad Acts Evidence can possibly have is substantially outweighed by the risk of unfair prejudice to Det. Scarcella, confusing the issues, misleading the jury, undue delay, and wasting time.

"Unfair prejudice" has been defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Old Chief v. United States, 519 U.S. 172, 180 (1997) (citation and quotation marks omitted). An example of that is "a jury's 'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged'[.]" United States v. McCallum, 584 F.3d 471, 476 (2nd Cir. 2009) (quoting Old Chief, 519 U.S. at 180-81). "The danger is that once the jury is

told of the defendant's other crimes, the jury will impermissibly infer that he is a bad man likely to have committed the crime for which he is being tried." Benedetto, 571 F.2d at 1248-49. "The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." United States v. Figueroa, 618 F.2d 934, 943 (2nd Cir. 1980).

"[T]he strength of the evidence establishing the similar act is one of the factors the court may consider when conducting the Rule 403 balancing." Huddleston v. United States, 485 U.S. 681, 689 n.76 (1988). "The Second Circuit has held that unsubstantiated complaints are not sufficiently probative to outweigh the potential for unfair prejudice under Rule 403." Bermudez Decision p. 17; see Hardy v. Town of Greenwich, 629 F.Supp.2d 192, 197-98 (D. Conn. 2009) ("Nor will the Court allow this trial to be sidetracked by several mini-trials on the veracity of civilian complaints that have been investigated and found to be of no substance.") (citation omitted).

Here, the Other Bad Acts Evidence is certain to have an unfairly prejudicial effect on Det. Scarcella. It is plain that Hamilton will use the evidence to paint Det. Scarcella as a "rogue cop" who routinely framed innocent people by fabricating confessions and coercing witnesses to give false testimony. A jury will inevitably infer from this evidence that Det. Scarcella is a bad cop and a bad person likely to have done the same thing in this case. Moreover, given the anti-police bias prevalent in today's society and the common perception that the police often abuse their power and authority, this evidence – essentially a parade of sensational, inflammatory allegations – will inflame the jury and excite the jury's emotions against Det. Scarcella, thus further "raising the odds that" it will find against him on an improper

basis.

        The Other Bad Acts Evidence also presents risks of other harms in addition to unfair prejudice, namely, confusing the issues, misleading the jury, undue delay, and wasting time. Hamilton is seeking to present other acts evidence from at least fifteen unrelated criminal cases, as well as evidence from the OSI investigation and from the Disciplinary Records. If admitted at trial, this evidence, especially the evidence concerning the allegations of misconduct in the unrelated criminal cases that each has its own unique and complex set of facts, will likely mislead and confuse the jury, waste time, and unduly delay the trial. For the jury to properly evaluate the allegations of misconduct in each of these unrelated cases, "the particular details of each [case] . . . must be before the jury. Opening up this area thus invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues." Outley v. City of New York, 837 F.2d 587, 595 (2nd Cir. 1988). Essentially, there will be at least fifteen "mini-trials" conducted within the trial that will take weeks if not months to complete. The jury will be bombarded with voluminous exhibits and testimonies from a multitude of witnesses in each of these mini-trials and have to decide whether misconduct occurred as alleged in each case. It will be completely sidetracked from the issues in this case.

        In these circumstances, it is clear that the risks of unfair prejudice and other harms substantially outweigh any probative value that the Other Bad Acts Evidence can possibly have. As discussed above, this evidence consists mainly of unproven allegations that have no probative value whatsoever.

        For all the reasons set forth above, Hamilton should be precluded from presenting any of the Other Bad Acts Evidence at trial.

## POINT II

### HAMILTON SHOULD BE PRECLUDED FROM CALLING ANY WITNESS ON HIS IMPEACHMENT WITNESS LIST AND USING ANY OTHER EXTRINSIC EVIDENCE FOR IMPEACHMENT PURPOSES UNDER FED. R. EVID. 608(b)

Hamilton should be precluded from calling any witness on his impeachment witness list to testify at trial and introducing at trial any other extrinsic evidence of other bad acts for impeachment purposes under Fed. R. Evid. 608(b).

Rule 608(b) provides, in pertinent part, that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Specific instances of a witness's conduct may only be inquired into "on cross-examination . . . if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]" Fed. R. Evid. 608(b).

Here, in the Revised Proposed Joint Pre-Trial Order ("JPTO") filed on June 6, 2019 (ECF Doc. #137), Hamilton listed the following individuals as impeachment witnesses: David Ranta, Vanessa Gathers, Alvena Jennette, Robert Hill, Jabbar Washington, Shawn Williams, John Bunn, Rosean Hargrave, Shabaka Shakur, and Sundhe Moses. See JPTO, pp. 21-23 ("Plaintiff's Impeachment Witness List"). These witnesses are expected to testify about the allegations of misconduct they made against Det. Scarcella in their respective cases. However, "such testimony, if intended for impeachment purposes, runs afoul of the rule against introduction of extrinsic evidence of prior bad acts" under Fed. R. Evid. 608(b). United States v. Scotti, 47 F.3d 1237, 1248 (2nd Cir. 1995).

Accordingly, Hamilton should be precluded from calling any of the witnesses on

his impeachment witness list to testify at trial. He should also be precluded under Rule 608(b) from introducing any other extrinsic evidence to prove any other bad act by Det. Scarcella for impeachment purposes.

**POINT III**

**HAMILTON SHOULD BE PRECLUDED FROM**
**INTRODUCING ANY EVIDENCE THAT WAS**
**NOT PREVIOUSLY PRODUCED IN DISCOVERY**

Hamilton's exhibit list in the JPTO includes numerous documents that were not previously produced in discovery. Hamilton should be precluded from introducing these documents at trial. See Rosen v. Brookhaven Capital Mgmt., Co. Ltd., 194 F.Supp.2d 224, 232 (S.D.N.Y. 2002) (enforcing order precluding defendants from "offer[ing] at trial any documents relating to Brookhaven's trading in Egghead stock which were not previously produced in discovery" and precluding witnesses from "testify[ing] about any transactions referred to in documents that should have been produced but were not").

The documents on Hamilton's exhibit list that have not been produced, and that Hamilton should therefore be precluded from introducing at trial, include the following:

| Ex# | Description |
|---|---|
| 28 | Scarcella Sundhe Moses Testimony  5/18/17 & 5/26/17 |
| 32 | Robles, Frances, *Review of 50 Brooklyn Murder Cases Ordered*, *The New York Times*, May 11, 2013 |
| 33 | Robles, Frances, *In Confession Detective Took, Shared Phrases*, *The New York Times,* June 13, 2013 |
| 34 | Robles, Frances, *Murder Witness Says Police Coached Lie in 1995*, *The New York Times*, October 3, 2013 |
| 36 | Videotaped interview of Scarcella on Dr. Phil show |
| 37 | Audio of David Ranta Line-up |
| 38 | Selected Scarcella Articles |
| 41 | McAlary, Mike, N.Y. DAILY NEWS, *Token Booth Cop Growing Up* |

| Ex# | Description |
|---|---|
|  | *Fast*, Nov. 20, 1996 |
| 42 | Flynn, Sean, GQ, *Brooklyn's Baddest*, August 4, 2014 |
| 43 | Barry C. Scheck, *Conviction Integrity Units Revisited*, 50 Ohio St. J.C.L. 705, 720-22 (2017) |
| 44 | Hamm, Theodore, THE DAILY BEAST, *The Crack-Era Cop Who Locked Up the Innocent in NYC*, Sept. 3, 2017 |
| 45 | Fanelli, James and Marcius, Chelsia Rose, N.Y. DAILY NEWS, *Dirty Detective Louis Scarcella insists, 'I've done nothing wrong,' despite sending 13 wrongfully convicted people to jail*, May 20, 2018 |
| 46 | Powell, Michael and Otterman, Sharon, N.Y. TIMES, *Jailed Unjustly in the Death of a Rabbi, Man Nears Freedom*, March 20, 2013 |
| 48 | Robles, Frances, N.Y. TIMES, *Several Murder Confessions Taken by Brooklyn Detective Have Similar Language*, June 12, 2013 |
| 49 | Clifford, Stephanie, N.Y. TIMES, *Conviction to Be Cleared in 1991 Brooklyn Murder Case*, Jan. 5, 2015 |
| 50 | Surico, John and Clifford, Stephanie, N.Y. TIMES, *Judge Orders Shabaka Shakur Freed From Prison After 27 Years*, June 4, 2015 |
| 51 | Robles, Frances and Clifford, Stephanie, N.Y. Times, *3 Are Exonerated of Murder in Cases Tied to a Discredited Detective*, May 5, 2014 |
| 52 | Press Release: *Brooklyn D.A. Moves to Vacate the Wrongful Conviction of Vanessa Gathers Tried for Murder – Convicted of Manslaughter – Spent 10 Years in Prison; First Woman Exonerated by Conviction Review Unit*, February 23, 2018 |
| 54 | Brooklyn DA Chart of Conviction Review Unit Exonerations |
| 55 | Feuer, Alan, N.Y. TIMES, *Citing Ex-Detective's 'Malfeasance,' Judge Overturns Conviction in '91 Brooklyn Murder*, Nov. 29, 2016 |
| 56 | Santora, Marc and Schweber, Nate, N.Y. TIMES, *Man Convicted in Murder Investigated by Scarcella is Ordered Freed*, Apr. 14, 2015 |
| 57 | Eustachewich, Lia and Saul, Emily, N.Y. POST, *Another victim of disgraced cop will have all charges dismissed*, May 14, 2018 |
| 58 | Clifford, Stephanie, N.Y. TIMES, *Court and Brooklyn District Attorney's Office Revisit 2 Contested Convictions*, Sept. 16, 2014 |
| 59 | Powell, Michael, N.Y. TIMES, *With Lives and Careers Destroyed, Asking: Who Watches the Investigators?*, Mar. 25, 2013 |
| 60 | Barshad, Amos, NEW YORK MAGAZINE, *Infamous Cop Louis Scarcella Gets a Hero's Reception*, Oct. 12, 2017 |

| Ex# | Description |
|---|---|
| 61 | Feuer, Alan, N.Y. TIMES, *Despite 7 Scrapped Convictions, Prosecutors Say Ex-Detective Broke No Laws*, May 25, 2017 |
| 67 | Clifford, Stephanie, N.Y. Times, *Judge Voids Murder Convictions for 3 Half Brothers Linked to Brooklyn Detective*, May 6, 2014 |
| 68 | Clifford, Stephanie, N.Y. TIMES, *Another Man Freed as Brooklyn District Attorney's Office Reviews Cases*, June 3, 2014 |
| 69 | Scarcella Nelson Cruz 440 Testimony |
| 71 | Sundhe Moses 440 Hearing Testimony of Louis Scarcella |
| 75 | Scarcella Testimony James Jenkins, March 2, 1988 |
| 76 | James Jenkins 440 Brief and exhibits |
| 78 | David Ranta Verified 8-b Claim |
| 79 | Shabaka Shakur 440 Motion and Exhibits |
| 80 | Jabbar Washington Scarcella Testimony, July 12, 2017 |
| 81 | Shawn Williams 440 Affirmation and Exhibits |
| 82 | Linwood Wright 440 Motion and Exhibits |
| 83 | Jabbar Collins Verified 8-b Claim |
| 84 | Hargrave Appellants' Appendices Vol. I-II |
| 85 | Robert Hill Verified 8-b Claim |
| 86 | Proceedings in Alvena Jenette and Darryl Austin, May 6, 2014 |
| 88 | Trial Testimony of Theresa Gomez in *PSNY v. Darryl Austin and Alvena Jennette*, July 18 and 21, 1988 |
| 89 | Roger Logan 440 Materials |
| 90 | John Bunn 440 Materials |

## POINT IV

## HAMILTON SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR MENTIONING THAT DET. SCARCELLA MAY BE INDEMNIFIED BY THE CITY

Det. Scarcella may and should be indemnified by the City for any potential

liability he may have in this case.  However, any reference to such potential indemnification by

Hamilton in front of the jury at trial will only serve to unfairly prejudice Det. Scarcella.

Accordingly, Hamilton should be precluded from introducing evidence of or mentioning such

potential indemnification at trial.  See Mathie v. Fries, 121 F.3d 808, 816 (2nd Cir. 1997)

(evidence of an indemnification agreement relevant only if the defendants present evidence of their personal financial resources at trial); <u>Jean-Laurent v. Wilkinson</u>, 2009 U.S. Dist. LEXIS 20472, *8 (S.D.N.Y. Mar. 13, 2009) (precluding evidence of potential indemnification of police officers by the City).[10]

**POINT V**

**<u>JOINDER IN CO-DEFENDANTS' MOTIONS IN LIMINE</u>**

Det. Scarcella adopts by reference and joins in any other motions in limine filed by his co-defendants in this action to the extent such motions are applicable to him, including but not necessarily limited to any motion in limine to preclude the expert testimony of Joseph A. Pollini of Police Expert, Inc.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant the instant motion and issue an order: (1) precluding plaintiff Hamilton from:

(a) introducing at trial any evidence of other bad acts against Det. Scarcella under Fed. R. Evid. 404(b);

(b) calling any witness on his impeachment witness list to testify at trial and introducing at trial any other extrinsic evidence of other bad acts for impeachment purposes under Fed. R. Evid. 608(b);

(c) introducing at trial any evidence that was not previously produced in discovery; and

---

[10] Det. Scarcella otherwise fully reserves his right to pursue any and all indemnification claims against the City if circumstances warrant upon the conclusion of this jury trial.

(d) introducing evidence or mentioning at trial that Det. Scarcella may be

indemnified by the City for any potential liability he may have in this case; and

(2) granting such other and further relief as the Court deems just and proper.[11]

Dated: New York, New York
July 26, 2019

                                        Respectfully submitted,

                                        LAW OFFICE OF
                                        RICHARD E. SIGNORELLI

                        By:

                                        /s/ Bryan Ha
                                        /s/ Richard E. Signorelli
                                        _____
                                        Bryan Ha (cellular: 646-245-7443)
                                        Richard E. Signorelli
                                        52 Duane Street, 7th Floor
                                        New York, NY 10007
                                        Telephone:     212 254 4218
                                        Facsimile:     212 254 1396
                                        bhanyc@gmail.com
                                        rsignorelli@nycLITIGATOR.comSM
                                        www.nycLITIGATOR.comSM

                                        Attorneys for Defendant
                                        Detective Louis Scarcella (Ret.)

---

[11] As noted, Det. Scarcella also adopts by reference and joins in any other motions in limine filed by his co-defendants in this action to the extent such motions are applicable to him.