Docket No. 15 CV 4574 (CBA)(SJB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DERRICK HAMILTON,

                                                   Plaintiff,

                              -against-

CITY OF NEW YORK; THE NEW YORK CITY
POLICE DEPARTMENT, DET. LOUIS SCARCELLA,
individually and in his capacity as a New York City police
officer; DET. FRANK DeLOUISA, individually and his
capacity as a New York City police officer, INV. JOSEPH
PONZI, individually and in his capacity as an Investigator
for the Kings County District Attorney's office,
JOHN/JANE DOE NOS. 1 through 10, being unknown
employees of the City of New York, THE CITY OF NEW
HAVEN, POLICE OFFICER BILLY WHITE,
individually and in his capacity as a New Haven police
officer and JOHN/JANE DOE NOS. 11 through 20, being
unknown employees of the City of New Haven,

                                                   Defendants.

## DEFENDANT RETIRED DETECTIVE FRANK DeLOUISA'S MOTIONS *IN LIMINE*

**ZARCHARY W. CARTER**
Corporation Counsel of the City of New York

*Attorney for Defendants City of New York, and Retired Detective Frank DeLouisa*
100 Church Street
New York, New York  10007

Of Counsel:   Philip R. DePaul
                     Kiran H. Rosenkilde
                     Angharad K. Wilson

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 1

    POINT I ...................................................................................................................... 1

            DEFENDANT DELOUISA IS ENTITLED TO
            QUALIFIED IMMUNITY ON PLAINTIFF'S
            *BRADY* CLAIM, OR, ALTERNATIVELY,
            SPECIAL INTERROGATORIES SHOULD BE
            SUMBITTED TO THE JURY ................................................................ 1

    POINT II .................................................................................................................... 7

            THE TRIAL SHOULD BE BIFURCATED INTO
            DAMAGES AND LIABILITY PHASES ................................................. 7

    POINT III ................................................................................................................. 13

            THE COURT SHOULD PRECLUDE
            PLAINTIFF'S "ALIBI" WITNESSES AND
            THOSE RELATED TO JEWEL SMITH THAT
            WERE NOT KNOWN TO LAW ENFORCEMENT
            BEFORE PLAINTIFF'S CONVICTION IN 1992 .................................. 13

    POINT IV ................................................................................................................. 17

            THE COURT SHOULD PRECLUDE PLAINTIFF
            FROM USING THE STATEMENTS AND
            TESTIMONY OF DECEASED PERSONS ON HIS
            WITNESS AND EXHIBIT LISTS .......................................................... 17

    POINT V ................................................................................................................... 19

            PLAINTIFF SHOULD BE PRECLUDED FROM
            INTRODUCING INTO EVIDENCE, OR
            ELICITED ANY TESTIMONY REGARDING
            THE FINDING OF THE BKDAO CONVICTION
            REVIEW UNIT'S INVESTIGATION .................................................... 19

POINT VI................................................................................................ 23

      PROPOSED WITNESSES SAUNDERS, TORRES,
      SLEVIN, BREEDEN, LEDEE, MICHAEL AND
      CHARLENE ROSS, VECCHIONE AND MERKIN
      LACK    PERSONAL    KNOWLEDGE    AND
      SHOULD BE PRECLUDED FROM TESTIFYING ............................. 23

POINT VII ............................................................................................. 28

      PLAINTIFF SHOULD BE PRECLUDED FROM
      CALLING WINTESSES WHO IDENTIFIED IN
      DISCLOSURES PURSUANT TO FED. R. CIV. P.
      26(a) ........................................................................................ 28

POINT IX............................................................................................... 38

      PLAINTIFF SHOULD BE PRECLUDED FROM
      INCLUDING THE CITY OF NEW YORK IN THE
      CAPTION AND ON THE VERDICT SHEET AND
      PLAINTIFF SHOULD BE PRECLUDED FROM
      REFERRING TO DEFENSE COUNSEL AS CITY
      ATTORNEYS.............................................................................. 38

POINT X ................................................................................................ 40

      PLAINTIFF SHOULD BE PRECLUDED FROM
      MENTIONING OR OFFERING ANY EVIDENCE
      REGARDING THE CITY OF NEW YORK'S
      POTENTIAL    INDEMNIFICATION    OF
      DEFENDANT DELOUISA..................................................... 40

POINT XI............................................................................................... 41

      PLAINTIFF SHOULD BE PRECLUDED FROM
      REQUESTING A SPECIFIC DOLLAR AMOUNT
      FROM THE JURY ................................................................ 41

POINT XII ............................................................................................. 42

      EVIDENCE    OF    DEFENDANT    DELOUISA'S
      DISCIPLINARY    HISTORY    SHOULD    BE
      PRECLUDED ........................................................................ 42

POINT XIII ........................................................................................... 45

      DEFENDANT RESERVES HIS RIGHT TO FILE
      SUPPLEMENTAL MOTIONS IN LIMINE............................. 45

**CASES**

Abeyta v. City of New York, 588 F. App'x 24 (2d Cir. 2014).................................... 38

Amorgianos v. Amtrak, 303 F. 3d 256 (2d Cir. 2002)................................................ 33

Annunziato v. Manson, 566 F.2d 410 (2d Cir. 1977) ................................................. 4

Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409 (S.D.N.Y. 2009) ....... 32

Ashcroft v. al-Kidd, 563 U.S. 731 (2011)................................................................... 2

Ashley v. Civil, No. 14 CV 5559 (NGG) (SMG),
    2019 U.S. Dist. LEXIS 56006 (E.D.N.Y. Apr. 1, 2019) .................................... 40

Bah v. City of New York, 13 Civ. 6690 (PKC),
    2017 U.S. Dist. LEXIS 13285 (S.D.N.Y. Jan. 31, 2017) ................................... 37

Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991)....................................... 42, 43

Bermudez v. City of New York, No. 15 CV 3240 (KAM) (RLM),
    2019 U.S. Dist. LEXIS 3442 (E.D.N.Y. Jan. 8, 2019) ...................................... 43

Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18 (2d Cir. 1996)........................... 32, 34

Brosseau v. Haugen, 543 U.S. 194 (2004)................................................................. 2

Brutus v. Silverseal Corp., No. 06 Civ. 15298 (LAP),
    2010 U.S. Dist. LEXIS 81488 (S.D.N.Y. July 29, 2010) ................................... 24

Buscemi v. Pepsico, Inc., 736 F. Supp. 1267 (S.D.N.Y. 1990)................................. 10

Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010)........................................ 22

Castro v. City of New York, No. 06 CV 2253 (KAM) (RER),
    2009 U.S. Dist. LEXIS 69723 (E.D.N.Y. Aug. 10, 2009)................................... 24

CDR-Wantagh, Inc. v. Shell Oil Co., 07-CV-4497 (DRH) (ETB),
    2011 U.S. Dist. LEXIS 19717, *21-22 (E.D.N.Y. Feb. 28, 2011) ....................... 31

Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003 (2d Cir. 1995) .......... 41, 42

Dallas v. Goldberg, 143 F. Supp. 2d 312 (S.D.N.Y. 2001) ........................................ 8

Davis v. City of New York, 296 F.R.D. 127 (E.D.N.Y. 2013) .................................... 40

Design Solange Ltd. v. Lane Bryant, Inc., No. 99 Civ. 7805,
    2000 U.S. App. LEXIS 1857 (2d Cir. 2000) ..................................................... 25

Design Strategy, Inc. v. Davis, 469 F.3d 284 (2d Cir. 2006) ...................................... 29

Ebbert v. Nassau County, 05-CV-5445 (FB) (AKT),
    2008 U.S. Dist. LEXIS 74213, at 11 n. 5 (E.D.N.Y. Sept. 26, 2008)..................................... 31

Ebewo v. Martinez, 309 F. Supp. 2d 600 (S.D.N.Y. 2004) ........................................ 29

Edwards v. City of New York, No. 08 CV 199 (TLM),
    2011 U.S. Dist. LEXIS 75300 (E.D.N.Y. July 13, 2011) .................................... 41

Estate of Kreiner v. Bridgestone/Firestone, Inc., No. 98 CV 2168 (AKH),
    2000 U.S. Dist. LEXIS 9190 (S.D.N.Y. July 5, 2000) ............................................ 10

Fappiano v. City of New York, 640 Fed. Appx. 115 (2d Cir. 2016) ....................................... 6, 16

Fate v. Vill. of Spring Valley, No. 11-CV-6838 (JPO),
    2013 U.S. Dist. LEXIS 83425 (S.D.N.Y. June 13, 2013).................................... 35

Galapo v. City of New York, 95 N.Y.2d 568 (2000)................................................... 37

Garnett v. Undercover Officer C0039, 838 F.3d 265 (2d Cir. 2016) .................................... 15

Grant v. Alldredge, 498 F.2d 376 (2d Cir. 1974) ........................................................ 4

Hamilton v. City of New York, No. 15 CV 4574 (CBA),
    2019 U.S. Dist. LEXIS 56606  (E.D.N.Y. Mar. 18, 2019)................................ passim

Hoyos v. City of New York, 999 F. Supp. 2d 375 (E.D.N.Y. 2013).......................................... 16

Huddleston v. United States, 485 U.S. 681................................................................ 43

Hygh v. Jacobs, 961 F.2d 359 (2d Cir. 1992) ......................................................... 32

Jaquez v. Flores, No. 10 CV 2881 (KBF),
    2016 U.S. Dist. LEXIS 34521 (S.D.N.Y. Mar. 17, 2016) ..................................... 40, 43

Jean-Laurent v. Hennessy, No. 05 CV 1155 (KAM) (LB),
    840 F.Supp.2d 529 (E.D.N.Y. 2011) ...................................................... 24, 39, 41

Jenkins v. City of New York, 478 F.3d 7686 (2d Cir. 2007).................................................. 18

Katsaros v. Cody, 744 F.2d 270 (2d Cir. 1984)............................................................ 9

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) ............................................. 31, 32

Kyles v. Whitley, 514 U.S. 419 (1995)........................................................................ 4

Levitant v. City of New York Human Res. Admin., No. 05 CV 230 (KAM) (MDG),
    2011 U.S. Dist. LEXIS 20742 (E.D.N.Y.  Feb. 28, 2011)...................................... 24

Malley v. Briggs, 475 U.S. 335 (1986)................................................................................ 2

McGrier v. City of New York, 16 CV 5667 (VEC),
2019 U.S. Dist. LEXIS 38688 (S.D.N.Y. Mar. 11, 2019) ....................................... 36

Mileski v. Long Island R.R. Co., 499 F.2d 1169 (2d Cir. 1974) ................................... 41

Miller v. Angliker, 848 F.2d 1312 (2d Cir. 1988) ........................................................... 4

Mullenix v. Luna, 136 S. Ct. 305 (2015) ......................................................................... 2

Newsome v. McCabe, 260 F.3d 824 (7th Cir. 2001) ....................................................... 3

Nimely v. City of New York, 414 F.3d 381 (2d Cir. 2005)) ......................................... 31

Nnodimele v. Derienzo, No. 13 CV 3461(ARR)(RLM),
2016 U.S. Dist. LEXIS 83357 (E.D.N.Y. June 27, 2016) ......................... 16, 22, 23

O'Brien v. City of Yonkers, No. 07 CV 3974 (KMK) (LMS),
2013 U.S. Dist. LEXIS 43551 (S.D.N.Y. Mar. 22, 2013) ...................................... 18

Othman v. Benson, No. 13-CV-4771 (NGG) (SJB),
2019 U.S. Dist. LEXIS 3859 (E.D.N.Y. Mar. 8, 2019) .......................................... 38

Panetta v. Crowley, 460 F3d. 388 (2d Cir. 2006) ......................................................... 36

Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006) ................................................... 29

Patterson v. County of Oneida, 375 F.3d 206 (2d Cir. 2004) ..................................... 18

People v. Hamilton, 115 A.D.3d 12 (App. Div. 2d Dep't 2014) ................................. 20

Plumhoff v. Rickard, 572 U.S. 765 (2014) ...................................................................... 2

Raposo v. Honda Motor Co., No. 92 CV 1087,
1996 U.S. Dist. LEXIS 1116 (N.D.N.Y. Jan. 29, 1996)..................................... 10, 11

Reichle v. Howards, 566 U.S. 658 (2012). ....................................................................... 1

Saucier v. Katz, 533 U.S. 194 (2001) ............................................................................... 2

Shaw v. City of N.Y., No. 95 Civ 9325 (AJP),
1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. Apr. 15, 1997)......................................... 43

Simpson v City of New York, No. 12 CV 6577 (KBF),
2015 U.S. Dist. LEXIS 138723 (S.D.N.Y.  Oct. 9, 2015).................................. 39, 40

Smith v. Freland, 954 F.2d 343 (6th Cir. 1992)............................................................. 37

_Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc._, 118 F.3d 955 (2d Cir. 1997) ........... 29

_Stephenson v. Doe_, 332 F.3d 68 (2d Cir. 2003) ........................................................................... 7

_Strickler v. Greene_, 527 U.S. 263 (1999) ................................................................................... 16

_Sullivan v. Lakeram_, 13 CV 7677 (NRB),
   2017 U.S. Dist. LEXIS 155254 (S.D.N.Y. Sep. 13, 2017) ...................................................... 33

_Tate v. Wood_, 963 F.2d 20 (2d Cir. 1992) ..................................................................................... 4

_Tucker v. Am. Int'l Group, Inc._, No. 09 CV 1499,
   2011 U.S. Dist. LEXIS 139086 (N.D.N.Y. Dec. 2, 2011) ...................................................... 10

_United States v. Brawer_, 482 F.2d 117 (2d Cir. 1973) ................................................................. 4

_United States v. Duncan_, 42 F.3d 97 (2d Cir. 1994) ................................................................... 32

_United States v. Miller_, 411 F.2d 825 (2d Cir. 1969) ................................................................... 4

_United States v. Perez_, 325 F.3d 115 (2d Cir. 2003) ................................................................. 43

_United States v. Peterson_, 808 F.2d 969 (2d Cir. 1987) ............................................................ 43

_United States v. Polisi_, 416 F.2d 573 (2d Cir. 1969) ................................................................... 4

_United States v. Rivas_, 377 F.3d 195 (2d Cir. 2004) ................................................................. 16

_Walker v. City of New York_, 974 F.2d 293 (2d Cir. 1992) ...................................................... 5, 6

_Whren v. U.S._, 517 U.S. 806 (1996) .......................................................................................... 37

**RULES**

FED. R. CIV. P. 26 ........................................................................................................................ 29

FED. R. CIV. P. 37 ........................................................................................................................ 29

FED. R. EVID. 602 ............................................................................................................. 24, 26, 28

FED. R. EVID. 402 ............................................................................................................. 19, 28, 38

FED. R. EVID. 403 ................................................................................................................. passim

FED. R. EVID. 404 ........................................................................................................................ 42

FED. R. EVID. 411 ........................................................................................................................ 41

FED. R. EVID. 608 ........................................................................................................................ 44

FED. R. EVID. 702 ............................................................................................................. 31, 32

FED. R. EVID. 801 ............................................................................................................. 18, 28

FED. R. EVID. 802 ............................................................................................... 15, 17, 23, 44

FED. R. EVID. 803 .................................................................................................................. 17

FED. R. EVID. 804 ............................................................................................................. 17, 18

FED. R. EVID. 807 .................................................................................................................. 17

## PRELIMINARY STATEMENT

Trial in this matter is scheduled to begin on November 12, 2019. Notwithstanding that plaintiff has listed *72 witnesses* and *231 exhibits* on his portion of the Joint Pretrial Order (JPTO)—most of which have *nothing* to do with plaintiff's underlying allegations—this is a relatively straightforward § 1983 case.  With this in mind, Detective Frank DeLouisa respectfully requests that the Court grant these motions *in limine* in order to prevent this trial from ballooning into a weeks-long spectacle.

## ARGUMENT

## POINT I

### DEFENDANT DELOUISA IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S *BRADY* CLAIM, OR, ALTERNATIVELY, SPECIAL INTERROGATORIES SHOULD BE SUMBITTED TO THE JURY

Defendant DeLouisa is entitled to the defense of qualified immunity on plaintiff's Brady claim about the "Karen/Jewel" memobook entry.  Alternatively, if liability is found, the jury should answer special interrogatories to assist the Court in assessing whether defendant is immune.[1]

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Reichle v. Howards, 566 U.S. 658, 664 (2012).  A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Id. (internal quotation marks and alteration

---

[1] By moving for qualified immunity on this claim at this stage, defendant DeLouisa does not waive the defense as it may apply to all of plaintiff's other claims against him.  Defendant DeLouisa specifically reserves the right to assert the defense based on the evidence admitted at trial.  Defendant DeLouisa also reserves the right to propose additional special interrogatories to assist the Court in determining whether qualified immunity shields defendant DeLouisa from liability with respect to plaintiff's other claims.

omitted).  Qualified immunity can be denied only when an official's conduct violates controlling authority or a robust consensus of cases of persuasive authority.  Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011).  "In other words, existing precedent must have placed the . . . constitutional question confronted by the official *beyond debate*." Plumhoff v. Rickard, 572 U.S. 765, 779 (2014) (internal quotation marks omitted) (emphasis added).  This is why qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The critical first step in determining whether a right is clearly established is defining the scope of the right at issue.  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." al-Kidd, 563 U.S. at 742.  The dispositive question, therefore, is "whether the violative nature of particular conduct is clearly established." Id.  This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)

With respect to plaintiff's Brady claim against defendant DeLouisa premised on the "Karen/Jewel" memobook entry, it is not enough for plaintiff to point to the broad, general proposition that a police officer must turn over to the prosecutor evidence favorable to the defendant.  Even if that were the clearly established right which defendant DeLouisa was being accused of violating, it is undisputed that defendant DeLouisa did not violate it: he provided his memobook the "Karen/Jewel" memobook entry to the prosecution.

Pursuant to the Supreme Court's decisions, however, the "clearly established" inquiry is much more granular.  Thus, defendant DeLouisa can only be denied qualified immunity if, as of July 1992, it was clearly established that: a criminal defendant's right to a fair

trial is violated when a police detective takes notes, which he turns over to the prosecutor (who, in turn, discloses the notes to the defense), that reflect a statement of a witness taken in the course of a criminal investigation but does not describe the circumstances of that statement in detail.

Plaintiff cannot establish that such a right was clearly established for two reasons. First, defendants have not been able to locate any case—let alone controlling authority or a robust consensus of cases of persuasive authority—which holds that a police detective has an affirmative duty to describe to a prosecutor the circumstances of a witness statement with particularity beyond what is reflected in the detective's notes.  Persuasive authority suggests that the opposite may be true.  See Newsome v. McCabe, 260 F.3d 824, 825 (7th Cir. 2001) (opining that "if all the plaintiff can prove at trial is that [police] officers failed to take the initiative in providing the prosecutors with information that would have come out as soon as the prosecutors asked . . . then no due process violation by the police has been established.")  Second, even if there was such authority, the contours of the right were not so clearly established that it could be violated on anything less than intentional conduct.  Because there is no credible evidence that defendant DeLouisa deliberately shielded the meaning of the "Karen/Jewel" memobook entry, he is entitled to qualified immunity.

As of plaintiff's conviction in July 1992, whether there was even clearly established law holding that police officers had a Brady obligation independent of the prosecutor to evaluate the exculpatory or impeachment value of that evidence is, at best, arguable.  Before July 1992, in every appeal that defendant DeLouisa has found where the Second Circuit reversed or remanded because the government was alleged to have violated Brady, the Circuit unfailingly described the Brady obligation as belonging to the prosecutor, not the police officer.  See Tate v.

Wood, 963 F.2d 20, 24 (2d Cir. 1992) ("A criminal defendant has a well-established due process right to require *the prosecution* to give him whatever material exculpatory evidence it has.") (emphasis added); Miller v. Angliker, 848 F.2d 1312, 1319 (2d Cir. 1988) ("It is by now well established that a person accused of a crime has a due process right to require *the prosecution* to turn over to him any material exculpatory evidence in its possession.") (emphasis added); Annunziato v. Manson, 566 F.2d 410, 411 (2d Cir. 1977) ("[Petitioner] then brought this petition for habeas corpus . . . contending that the failure of the State to disclose exculpatory evidence . . . [was] a violation of the responsibilities of *the prosecutor* under Brady v. Maryland.") (emphasis added); Grant v. Alldredge, 498 F.2d 376, 382 (2d Cir. 1974) ("Inasmuch as we find that, at a minimum, *the prosecution* was negligent in initially withholding the specifics of [a witness's identification of another potential suspect] . . .") (emphasis added); United States v. Brawer, 482 F.2d 117, 136 (2d Cir. 1973)("[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of *the prosecutor*.") (quotation marks omitted) (emphasis added); United States v. Polisi, 416 F.2d 573, 579 (2d Cir. 1969) ("We think that the command of Brady v. Maryland . . . required that *the prosecutor* make known to the defense the conflicting statements" of a cooperating co-conspirator.) (emphasis added);  United States v. Miller, 411 F.2d 825, 832 (2d Cir. 1969)("[N]egligence of *the prosecutor* in failing to make evidence available to the defense reduces the standard of materiality needed to require the granting of a new trial . . . .") (emphasis added).

Even in Kyles v. Whitley, which was not decided until April 1995, the Supreme Court found that the government's Brady duty fell squarely on the prosecution:

> The prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached. This in turn means that the

- 4 -

> individual prosecutor has a duty to learn of any favorable evidence
> known to the others acting on the government's behalf in the case,
> including the police.

514. U.S. 419, 437 (1995).

Walker v. City of New York, decided in September, 1992, established little with regard to the specific context of this case.  974 F.2d 293 (2d Cir. 1992).  In many ways, it supports a grant of qualified immunity here.  In Walker, the Circuit decided whether a municipality could be held liable on a § 1983 claim that it failed to adequately train and supervise police officers and prosecutors with respect to withholding exculpatory evidence, among other things.  Id. at 294.  It held that a municipality's deliberate indifference towards instituting a Brady training policy for prosecutors could give rise to § 1983 liability. Id. at 300-01.  Importantly, the Circuit did not address the appropriate basis for § 1983 liability of an individual police officer's Brady violation.  Id. at 293-300.

The Circuit did, however, opine on police officers' Brady obligations, but only in broad, general terms.  It found that the "police satisfy their obligations under Brady when they turn exculpatory evidence over to the prosecutors." Id. at 299.  Again, it is undisputed that defendant DeLouisa did exactly that when he disclosed the "Karen/Jewel" memobook entry to the prosecution.  The Walker Court emphasized, however, that the critical player in the government's compliance with Brady is the prosecutor, not the police officer.  The Circuit found that "prosecutors, who possess the requisite legal acumen, [should] be charged with the task of determining which evidence constitutes Brady material that must be disclosed to the defense." Id.  It likewise explained that "a rule requiring the police to make separate, often difficult, and perhaps conflicting disclosure decisions would create unnecessary confusion."  Id.  And, critically for the qualified immunity inquiry, the Circuit did not set forth the precise contours of the police officer's Brady obligations, or whether—and, if so, to what extent—police are

required to *describe* evidence turned over to the prosecutor or independently evaluate the exculpatory or impeachment value of that evidence. Id. at 293-300.  Thus, since there was no clearly established law governing the specific circumstances of this case, the Court should find that, as a matter of law, defendant DeLouisa is entitled to qualified immunity.

Even if the precise contours of a police officer's Brady obligations were established law in 1992, there is simply no evidence that defendant DeLouisa *intentionally* withheld the circumstances of the Karen Smith/Jewel statement from the prosecutor.  See generally Fappiano v. City of New York, 640 Fed. Appx. 115, 118 (2d Cir. 2016) (summary order) (recognizing that "[w]e have never held that anything less than an intentional Brady violation establishes a § 1983 due process claim for damages, however, and we decline to do so here.") At summary judgment, this Court found it compelling that "the prosecutor in Hamilton's case, [Assistant District Attorney Anne] Gutmann, did not understand that ['Karen Smith' and 'Jewel']" were the same person.  Hamilton v. City of New York, No. 15 CV 4574 (CBA), 2019 U.S. Dist. LEXIS 56606, at *75 (E.D.N.Y. Mar. 18, 2019).  However, that fact—by itself—does not equate to defendant DeLouisa *intentionally* withholding that information from the prosecutor.

Indeed, defendant DeLouisa was not called as a witness at trial.  As a result, he was not given an opportunity to explain what the "Karen/Jewel" memobook entry meant.  What's more, when ADA Gutmann testified in October, 1992 in connection with plaintiff's N.Y. CRIM. PROC. LAW § 330.30 proceedings, she stated that, after receiving plaintiff's § 330.30 motion, she called defendant DeLouisa and he explained to her exactly what the note meant:

> Q: Do you know now if Karen Smith is the same person as Jewel Smith?
> A: I know about what this memo book entry refers to, yes.
>          THE COURT: The memo book says it's the same.
>          THE WITNESS: No.

I called Detective Delouisa after I received the papers in this case.

> THE COURT: And?
> THE WITNESS: And I asked him.
> THE COURT: What did he say[?]
> THE WITNESS: He said this was Jewel Smith.

(See Testimony of ADA Gutmann, dated October 20, 1992, annexed to the Declaration of Philip R. DePaul, dated July 25, 2019, as Exhibit "A," at 40 (DEF602): 10-23.)

To the extent the Court declines to grant immunity at this stage defendant DeLouisa respectfully submits that he should be permitted to submit proposed special interrogatories to the jury to aid the Court, if necessary, in determining whether qualified immunity should be granted. See Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir. 2003) (endorsing the use of special interrogatories to assist the Court with "the ultimate legal determination of whether qualified immunity attaches on those facts.").

## POINT II

## THE TRIAL SHOULD BE BIFURCATED INTO DAMAGES AND LIABILITY PHASES

The trial of should be bifurcated into liability and damages phases. Bifurcation will prevent unfair prejudice against either party—primarily defendants—and will efficiently and expeditiously resolve the issues.

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues…" FED. R. CIV. P. 42(b). In determining whether to bifurcate, courts consider several factors including: (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing

bifurcation will be prejudiced if it is granted. Dallas v. Goldberg, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001).

**A. The substantial difference between the liability and damages issues and little overlap of evidence for each weighs strongly in favor of bifurcation.**

Notwithstanding the length of the JPTO, the questions surrounding liability are limited. The claims are: (1) malicious prosecution as to Detectives Scarcella and DeLouisa; (2) fabrication of Jewel Smith's inculpatory statements and testimony as to Detectives Scarcella and DeLouisa; (3) the failure to disclose Jewel Smith's initial exculpatory statements as to Detectives Scarcella and DeLouisa; (4) the failure to disclose Taseem Douglas's exculpatory statements as to Detective Scarcella and Lieutenant White; and (5) the intimidation of Alphonso Dixon and the failure to disclose that intimidation as to Lieutenant White. Hamilton, 2019 U.S. Dist. LEXIS 56606, at *102-03.

Plaintiff's damages concerns an entirely different set of issues than the alleged constitutional misconduct. Those issues include, "loss of liberty, pain, suffering, emotional distress, damage to reputation, loss of familial relations, humiliation, degradation, loss of enjoyment of life," "past and future lost earning," and future medical and psychiatric costs." (ECF No. 137, at 10.) There is little, if any, overlap between liability and damages. Indeed, the liability questions are focused on the alleged acts of defendants before plaintiff's incarceration, while the question of damages is largely focused on what happened to plaintiff during the course of his incarceration after his conviction.

In fact, plaintiff's proposed witness list highlights the difference between the two issues. Plaintiff lists 15 non-expert witnesses whose proposed testimony consists solely of evidence related to his damages. (ECF No. 137, at 17-19.) Plaintiff lists 39 non-expert witnesses whose proposed testimony consists solely of evidence related to the facts of the case.

(ECF No. 137, at 11-17.) Only *two* of those witnesses' proposed testimony encompasses both—plaintiff and Sharon Goodwin. (ECF No. 137, at 12, 14.)

Moreover, there are at least 24 exhibits on plaintiff's exhibit list that could only be offered for damages, including evidence described on the JPTO as "[s]elected damages photographs and correspondence," "[s]elected commendations and certificates," and "[s]elected evidence of Mr. Hamilton's education, advocacy and community service." (See, e.g., ECF No. 137, at 52, 57.)  Plaintiff's damages calculations also include potentially hundreds of pages of medical records, and mental health records. None of this evidence has any relevance at all to the underlying claim of whether or not the defendants violated plaintiff's civil rights.

In addition, there are also five experts who opine on one or more aspects of damages: three psychological experts (Drs. Sanford Drob, Ph.D. and Orly Calderon, Psy.D. for plaintiff and Dr. Mary Tramontin, Psy.D. as a rebuttal expert for Detective DeLouisa) whose opinions concern the effect of imprisonment on plaintiff and two economic experts (Kristin Kucsma for plaintiff and Dr. Andrew Kidd, Ph.D. as a rebuttal expert for Detective DeLouisa) whose opinions concern the effects of imprisonment on plaintiff's lifetime earnings (ECF No. 137, at 20.)  None of these expert opinions pertain to the cause of plaintiff's conviction.

Thus, the distinct nature of the liability and damages claims, and evidence related to each, weighs heavily in favor of bifurcation.

**B. Defendants will be unfairly prejudiced if the trial is not bifurcated because evidence regarding plaintiff's damages is significantly different from the actual liability questions and may distract from the issues and garner sympathy.**

The decision as to whether to bifurcate a trial into liability and damages phases is within the discretion of the trial court.  Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984), cert. denied, 469 U.S. 1072 (1984) (approving bifurcation of trial into liability and damages phases where the two phases involved different types of evidence); see also In re Master Key Antitrust

Litig., 528 F.2d 5, 15 (2d Cir. 1975) (noting that bifurcated trials have frequently been employed with great success and that a single jury can hear both the liability and damages phases).

Courts in this Circuit have bifurcated trials were, as here, plaintiff seeks to introduce substantial damages evidence.  Those Courts have correctly recognized that such evidence may result in sympathetic jurors who are more concerned with compensating plaintiff than with whether defendant is at fault.  Buscemi v. Pepsico, Inc., 736 F. Supp. 1267, 1272 (S.D.N.Y. 1990) (bifurcating liability and damages issues so as to separate emotional distress evidence relevant only to some but not all claims; recognizing that evidence of harm to a plaintiff regardless of the cause might result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not the defendant is at fault); Estate of Kreiner v. Bridgestone/Firestone, Inc., No. 98 CV 2168 (AKH), 2000 U.S. Dist. LEXIS 9190, at *4-5 (S.D.N.Y. July 5, 2000) (recognizing that potential for prejudice justifies bifurcation where there is a potential or risk that a jury's liability determination will be influenced by evidence of plaintiff's severe injuries, lengthy medical treatment, and the physical and economic impact; ordering bifurcation of trial to avoid undue prejudice; noting that a jury is unlikely to follow instruction by court to disregard considerations of sympathy); Raposo v. Honda Motor Co., No. 92 CV 1087, 1996 U.S. Dist. LEXIS 1116, at *11 (N.D.N.Y. Jan. 29, 1996) (ordering bifurcation of liability and damages phases in injury action because of grave risk of jury confusion and sympathy verdict on damages issue); Tucker v. Am. Int'l Group, Inc., No. 09 CV 1499, 2011 U.S. Dist. LEXIS 139086, at n.24 (N.D.N.Y. Dec. 2, 2011) ("Addressing damages in advance of a finding of liability may, under certain circumstances, evoke sympathy from jurors and thus be prejudicial to the defendant.)

For example, in Raposo, an action brought to recover for severe personal injuries sustained by one of the plaintiffs in a vehicle accident, defendant sought bifurcation and proposed that evidence concerning liability be presented to the jury first. 1996 U.S. Dist. LEXIS 1116, at *2.  Defendant proposed that, if the jury found for the plaintiff on liability, then the same jury would hear evidence concerning the extent of the injuries and determine appropriate damages. Id. Plaintiffs opposed the motion to bifurcate, arguing that the issues of liability and damages were not distinct and separate, and that defendant had failed to show how it would be prejudiced from a single trial or how bifurcation of trial would enhance judicial economy.  Id.

After considering the Rule 42(b) standard and case law applying the rule, the Raposo Court held that the trial should be bifurcated into liability and damages phases.  Id. at *10-11.  Specifically, the court concluded that the extent of plaintiff's injuries and medical treatment, lost wages and future earnings, and pain and suffering had no bearing on liability; the testimony of experts, including a vocational specialist, life care planner, and economist were relevant only to damages issues and should be deferred pending determination of liability; and that plaintiffs would be permitted to introduce medical testimony during the liability phase of the trial only to the extent that it was relevant to liability issues such as accident reconstruction.  Id. at *4-6.  The court recognized both the substantial impact that damages evidence was likely to have on a jury's sympathy, and that the trial would not be unreasonably lengthened by conducting it in liability and damages phases.  Id. at *7-10.

Here, plaintiff claims substantial damages that may garner sympathy with a jury. It is beyond question that if the jury were to hear that plaintiff spent 21 years in prison—10 of which were in solitary confinement—they would feel sympathy for plaintiff.  This, in turn, would distract them from their task in determining liability; namely, whether any of the

defendants violated plaintiff's constitutional rights.  Similarly, should plaintiff be permitted to testify about his incarceration, including the conditions of his confinement and the effect it had on his family relationships, it would result in juror sympathy toward him. The jury may well decide to compensate plaintiff for these damages, even if plaintiff has not met his burden of proof on liability. The risk of prejudice to defendants is therefore substantial.  This, by itself, is sufficient to warrant bifurcation.

### C. Bifurcation will be more efficient by reducing jury confusion, minimizing limiting instructions on evidence, and may eliminate the need for a damages trial.

Bifurcation will also promote judicial efficiency.  The parties have estimated that the trial in this matter will take *20 trial days* to complete. (ECF No. 137, at 11.) Bifurcation would eliminate 20 witnesses and limit the scope of testimony by others. It would also eliminate the number and scope of documentary evidence. This significant reduction in evidence presented would streamline the trial.

Further, it is likely that, if the case is not bifurcated, limiting instructions will have to be given to the jury regarding testimony and documentary evidence that should only be considered as evidence of damages, rather than evidence on liability. Given the volume of evidence contemplated by the JPTO, litigating the appropriate limiting instructions will likely substantially lengthen trial.  Additionally, every time a limiting instruction is given, it increases the possibility of jury confusion.

Finally, bifurcation will have the added benefit of limiting the amount of evidence the jury will need to consider when determining liability. Also, bifurcation will ensure that the jurors resolve the issue of liability closer in time to the introduction of that evidence, instead of sitting through days or weeks of complicated damages evidence (including the testimony of five experts) before being asked to determine liability. Bifurcation would thus enhance efficiency.

- 12 -

**POINT III**

**THE COURT SHOULD PRECLUDE PLAINTIFF'S "ALIBI" WITNESSES AND THOSE RELATED TO JEWEL SMITH THAT WERE NOT KNOWN TO LAW ENFORCEMENT BEFORE PLAINTIFF'S CONVICTION IN 1992**

Liability in this civil trial depends upon whether plaintiff can meet his burden of proof of showing misconduct by defendant DeLouisa *in connection with this original criminal prosecution*—by withholding exculpatory evidence, fabricating inculpatory evidence, and/or initiating and pursuing that prosecution without probable cause. See Hamilton, 2019 U.S. Dist. LEXIS 56606, at *102-03. Plaintiff intends to call at trial witnesses who will testify about his alleged innocence of the Cash murder, either by testifying about plaintiff's purported "alibi" or about the incredibility of Jewel Smith's identification of plaintiff as the murderer. Yet, *none* of these witnesses testified at plaintiff's underlying criminal trial, and, indeed, *none* of these witnesses were known to law enforcement before plaintiff's conviction in 1992. Because the anticipated testimony is not relevant and would prejudice defendant DeLouisa, the Court should preclude both the witness testimony and the exhibits related to these witnesses.[2]

Plaintiff intends to call at trial several "alibi" witnesses who will testify that plaintiff was in New Haven, Connecticut on January 4, 1991, and thus it would have been impossible for him to have murdered Nathaniel Cash. These witnesses are: Kelly Turner; Davette Mahan; Gregory Marable; Tashameaka Watson; Selma Singleton; Eric Daniels; and Mattie Dixon.[3] Yet, as the Court set forth in its summary judgment decision, none of these

---

[2] To the extent the Court precludes a particular witness, the Court should likewise preclude the exhibits and any questioning related to that witness.

[3] Plaintiff also intends to call Kim Freeman and it is expected that she will provide similar "alibi" testimony as these witnesses. However, because Ms. Freeman was known before plaintiff's conviction, defendant DeLouisa is not moving to preclude her at this time.

witnesses were known to law enforcement before plaintiff's conviction. Kelly Turner was not known until her 1995 affidavit, nor was Davette Mahan. Id. at *28-*29.   Mattie Dixon was not known until her 2009 affidavit, and Tashameaka Watson was not known until 2010 when she signed her affidavit. Id. at *25-*29.   Upon information and belief, Gregory Marable, plaintiff's half-brother, has never provided a statement and was not known until Mattie Dixon's affidavit in 2009. (See Affidavit of Mattie Dixon, dated October 31, 2009, annexed to the DePaul Decl., as Exhibit "B.")  And, Selma Singleton and Eric Daniels were never disclosed pursuant to FED. R. CIV. P. 26(a)—which is another reason they be precluded. See Point VII.

Plaintiff also intends to call witnesses regarding Jewel Smith's identification of plaintiff as Mr. Cash's murderer. As with the "alibi" witnesses, none of these witnesses were known to law enforcement before plaintiff's conviction in 1992. Felicia Shuler is expected to testify that she was with Jewel Smith at a supermarket at the time of Mr. Cash's murder. (ECF No. 137, at 11.)  Relatedly, Sharon Goodwin is expected to testify about a meeting that led to the discovery of Shuler's knowledge regarding Jewel Smith's whereabouts on January 4, 1991. (ECF No. 137, at 14.)  Robert Holt is expected to testify about the circumstances of a recantation statement he obtained from Jewel Smith. (ECF No. 137, at 17.)  And, upon information and belief, Charlene Ross and Tawana Smith are expected to testify regarding statements made to them by Smith that she had been threatened by law enforcement to implicate plaintiff in the Cash murder. (ECF No. 137, at 16-17.)

Taken together, the testimony of these witnesses purportedly supports plaintiff's contention that he is not guilty of the Cash murder, either because it suggests that he was out of state at the time of the murder or because the testimony undermines Jewel Smith's implication of plaintiff.   Yet, because neither the criminal jury nor law enforcement had the opportunity to

evaluate these witnesses before for plaintiff's conviction, or even know about them, they are not relevant to plaintiff's claims at trial which are solely related to his criminal prosecution.

First, these witnesses are irrelevant to plaintiff's fabrication-of-evidence claim. For this claim, plaintiff must demonstrate that "(1) [an] investigating official (2) fabricate[d] [material] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that [material] information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016). Plaintiff must also prove that the criminal proceedings terminated in his favor. McDonough v. Smith, 139 S. Ct. 2149, 2161 (2019).

As an initial matter, there can be no credible argument that defendants fabricated these witnesses' testimony since the expected testimony purports to *exculpate* plaintiff. More importantly, however, to the extent plaintiff argues that these witnesses provided defendants with a motive to fabricate other inculpatory information in connection with plaintiff's prosecution, that argument is foreclosed by the fact that law enforcement did not know about these witnesses until well after plaintiff's prosecution had concluded. Indeed, some of their identities were not know until after plaintiff's conviction was vacated. With respect to Charlene Ross and Tawana Smith, who are expected to testify that Jewel Smith told them that she was threatened by detectives, that testimony is hearsay without exception and their testimony should be wholly precluded on that basis. See FED. R. EVID. 802.

Second, these witnesses are not relevant to plaintiff's Brady claim either. A Brady claim requires that "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." United States v. Rivas,

377 F.3d 195, 199 (2d Cir. 2004).  In the § 1983 context, intentional suppression of exculpatory

evidence is required.  Fappiano, 640 Fed. App'x at 118.  ("We have never held that anything less

than an intentional Brady violation establishes a § 1983 due process claim for damages, however,

and we decline to do so here.")   And the suppressed evidence must be known only to the

government.   Strickler v. Greene, 527 U.S. 263, 281 (1999).  Thus, because none of these

exculpatory witnesses were known to law enforcement before plaintiff's conviction, there can be

no argument that defendants intentionally "suppressed" them.

        Moreover, Brady's materiality requirement "considers the probable effect [of the

allegedly suppressed evidence] on the actual criminal trial that took place, taking into account

the totality of the evidence presented to the jury."   Nnodimele v. Derienzo, No. 13 CV

3461(ARR)(RLM), 2016 U.S. Dist. LEXIS 83357, at *20 (E.D.N.Y. June 27, 2016)  Here, since

these witnesses did not testify before the original criminal jury, they are not relevant to this civil

jury's materiality inquiry.

        Further, these witnesses are also not relevant to plaintiff's malicious prosecution

claim.  On this claim, the probable cause inquiry is "'whether there was probable cause to

believe the criminal proceeding could succeed and, hence, should be commenced.'"  Hamilton,

2019 U.S. Dist. LEXIS 56606, at *90 (quoting Hoyos v. City of New York, 999 F. Supp. 2d 375,

390 (E.D.N.Y. 2013)).  But these witnesses could not have undermined the probable cause for

initiating or continuing plaintiff's prosecution—since they were not known to police or

prosecutors until after plaintiff conviction.

        Finally, in addition to their irrelevance, allowing these witnesses to testify will

necessarily confuse the jury and prejudice defendant DeLouisa.  If plaintiff is allowed to call

these witnesses, plaintiff will be inviting the jury to assess defendant DeLouisa's liability for

actions he purportedly took in 1991, based on evidence that he, or any other defendant did not know about—and, indeed, could not have known about—until well after plaintiff's conviction in 1992.  As a result, these witnesses can also be precluded pursuant to Rule 403.  Therefore, the Court should prelude these witnesses.

### POINT IV

### THE COURT SHOULD PRECLUDE PLAINTIFF FROM USING THE STATEMENTS AND TESTIMONY OF DECEASED PERSONS ON HIS WITNESS AND EXHIBIT LISTS

Plaintiff should be precluded from introducing the statements and testimony of deceased persons on his witness and exhibit lists.  Specifically, the statements and testimony of: Elnora Douglas; James Hamilton, Jr.; Gregory Wright; and, Alphonso Dixon[4] —all offered for their truth—are hearsay without exception, and should not be allowed into evidence.

First, plaintiff seeks to introduce affidavits of Gregory Wright and Alphonso Dixon into evidence. These affidavits are rank hearsay—out of court statements offered for their truth.  It is true that Wright and Dixon, by virtue of the fact that they are deceased, are unavailable pursuant to FED. R. EVID. 804(a)(4).  However, despite the witnesses' unavailability, none of the Rule 804 exceptions apply to the affidavits that plaintiff is seeking to introduce.  In fact, no exceptions apply, and these affidavits should therefore be excluded. See FED. R. EVID. 802, 803, 804, 807.

Second, plaintiff also seeks to introduce the testimony of Elnora Douglas and James Hamilton, Jr. at respective N.Y. CRIM. PROC. LAW § 440.10 hearings. But this testimony is also inadmissible hearsay.  "Testimony of a nonparty witness that was given at a prior hearing is,

---

[4] Defendant DeLouisa notes that Alphonso Dixon is not listed as a plaintiff's witness on the JPTO. (See ECF No. 137, at 11-23.)  However, plaintiff does list the affidavit of Alphonso Dixon dated June 24, 1992 as an exhibit. (ECF No. 137, at 52 (Pl.'s Exs. 179, 180)).

when offered for its truth, hearsay." Patterson v. County of Oneida, 375 F.3d 206, 219-20 (2d Cir. 2004); see generally FED. R. EVID. 801(c). In order to admit their prior testimony under Rule 804(b)(1), plaintiff bears the burden to show by the preponderance of the evidence that (1) the witness is unavailable; (2) the party against whom the testimony is offered is the same as in the prior proceeding; and (3) that that party, or that party's predecessor in interest, had the same motive and opportunity to examine the witness. See Annunziata v. City of New York, No. 06 CV 7637 (SAS), 2008 U.S. Dist. LEXIS 42097, at *29 (S.D.N.Y. May 28, 2008); FED. R. EVID. 804(b)(1).

While defendant DeLouisa also concedes that Douglas and Hamilton are unavailable by virtue of their deaths, their testimony is still inadmissible because plaintiff fails to meet the second and third requirements of Rule 804(b)(1). Defendant DeLouisa is distinct from the Brooklyn District Attorney's Office (BKDAO), and thus is not "the [same] party against whom the testimony [was] offered … in the prior proceeding." FED. R. EVID. 801(b)(1)(B). The BKDAO is also not the predecessor in interest to defendant DeLouisa, as many courts in this Circuit have held. See, e.g., O'Brien v. City of Yonkers, No. 07 CV 3974 (KMK) (LMS), 2013 U.S. Dist. LEXIS 43551, at *24-*25 (S.D.N.Y. Mar. 22, 2013) (finding that "the District Attorney's Office is not a predecessor in interest to the individual officers named as Defendants here."); Annunziata, 2008 U.S. Dist. LEXIS 42097, at *29-*32 (holding that the district attorney's office was not the same party as, or in privity with, New York City or an individual officer for purposes of Rule 804(b)(1)). See also Jenkins v. City of New York, 478 F.3d 76, 85-86 (2d Cir. 2007) (holding that police detectives are not in privity with prosecutors, thus precluding application of collateral estoppel against detectives based on cases involving prosecutors). Moreover, defendant DeLouisa did not have any opportunity—let alone motive—

to cross-examine these witnesses. As such, plaintiff should be precluded from introducing the statements and/or testimony these deceased persons.

### POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING INTO EVIDENCE, OR ELICITED ANY TESTIMONY REGARDING THE FINDING OF THE BKDAO CONVICTION REVIEW UNIT'S INVESTIGATION

Plaintiff seeks to introduce a memorandum written by the Conviction Review Unit ("CRU") of the BKDAO concerning its investigation of plaintiff's arrest and prosecution. Plaintiff also seeks to introduce the hearsay statements of Assistant District Attorney Mark Hale dismissing charges against plaintiff, in which he stated, in pertinent part, that plaintiff's due process rights were violated at his underlying criminal trial by the BKDAO.  (See ECF No. 137, at 29.)  The CRU memorandum and transcript reflecting ADA Hale's statements should not be admitted because this evidence is cumulative, irrelevant, prejudicial, hearsay, and is likely to usurp the fact-finding duties of the jury.

First, this evidence is cumulative.  As the Court may recall, at the June 20, 2019 status conference plaintiff and counsel for defendants DeLouisa and Scarcella agreed to stipulate that plaintiff's criminal prosecution terminated in his favor for purposes of his malicious prosecution claim.[5]  As such, there is no need for this evidence, as the jury will be instructed that the element of favorable termination is not before them.

Second, the findings of the CRU's investigation are irrelevant. FED. R. EVID. 402. And, if introduced, they would be highly and unfairly prejudicial to defendants. FED. R. EVID. 403.  The CRU findings do not have any tendency to make any fact at issue at issue at trial more

---

[5] Because plaintiff is not a asserting a malicious prosecution claim against defendant White, his counsel took no position with respect to this stipulation.

or less probable and the findings are not of consequence in this action, because the issue that was investigated by the BKDAO is fundamentally different from the issues that are before the Court. Moreover, the introduction of this irrelevant evidence would be highly prejudicial to defendant DeLouisa.

Plaintiff's claims in this matter, for malicious prosecution, fabrication of evidence and Brady violations, are against police personnel, not BKDAO personnel. See Hamilton v. City of New York, No. 15-CV-4574 (CBA), 2019 U.S. Dist. LEXIS 56606 at *4-5, 35-36 (E.D.N.Y. Mar. 19, 2019). Conversely, the purpose of the CRU's investigation of plaintiff's conviction was not to evaluate wrongdoing by police actors, but, instead, to explore the "actual innocence" claim that plaintiff pursued in his post-conviction motions following the January, 2014 decision of New York's Appellate Division, Second Department, that a claim of "actual innocence" could serve as grounds to vacate a conviction under N.Y. CRIM. PROC. LAW § 440.10(1)(h). See People v. Hamilton, 115 A.D.3d 12 (App. Div. 2d Dep't 2014); (CRU Report, annexed to the DePaul Decl. as Exhibit "C," at KCDA1108.) Plaintiff also already litigated and settled the claim of his actual innocence in the New York Court of Claims pursuant to the Court of Claims Act § 8-b. (See Plaintiff's "Verified Claim for Damages," annexed to the DePaul Decl. as Exhibit "D," at DEF18-32.)  Further, the statements of ADA Hale on January 9, 2015 reveal that the question of liability to be decided by the civil jury in this matter and the purpose of the BKDAO's CRU investigation are entirely distinct:

> [T]he Conviction Review Unit has determined that [Jewel Smith] is, as a whole, unreliable, incredible and for the most part untruthful. And because she was unreliable, untruthful and incredible in her testimony against Mr. Hamilton being the sole eyewitness, they had to depend upon her credibility in order to convict Mr. Hamilton.

Because of that, *Mr. Hamilton's due process rights were violated by the use of this witness at trial* because of the nature of her inconsistency and incredibility…

Now, *because of this primary focus on the due process violation that occurred through the use of this particular witness, the People and Conviction Review Unit did not reach the other issues which were raised by the defendant, that is, with regard to alibi and other issues.*

(Transcript of Hearing dated January 9, 2015, People v. Hamilton, Indict. No. 142/1991, annexed to the DePaul Decl., as Exhibit "E," at 4:18-5:13 (DEF4-5).) (emphasis added).  The CRU's findings concern the violation of plaintiff's rights at his trial rather, not the actions or inactions of the individual defendants.[6]

The CRU report should also be precluded because it is grounded upon a significant amount of evidence that was not known or discovered until after plaintiff's criminal trial had concluded.  This evidence had no bearing upon plaintiff's criminal trial—and, by extension, plaintiff's § 1983 claims here—and can also be excluded for the reasons set forth in Point III.

The unfair prejudice to the defendant DeLouisa by the admission of this evidence cannot be understated.  With the imprimatur of a lengthy in-house investigation by career prosecutors, the jury may just defer to the CRU's investigation and determine that plaintiff's rights were violated by defendants—even though that was not the purpose of CRU's investigation, nor its finding.[7]  The evidence would confuse the issues before the jury and

---

[6] Your Honor also recognized that the determination by the BKDAO was made after a conclusion that "Hamilton's due process rights were violated by the use of Smith's testimony *at trial*." Hamilton, 2019 U.S. Dist. LEXIS 56606 at *4 (emphasis added).

[7] The danger of unfair prejudice resulting from the undue weight a jury may accord conviction review units generally also requires the preclusion of plaintiff's proposed exhibit 43, a recent law review article containing "commentary on developing best practices for [conviction integrity units] that can work and have worked."  Barry C. Scheck, *Conviction Integrity Units Revisited*, 50 OHIO ST. J.C.L. 705, 707 (2017).  Particularly troublesome, the article characterizes defendant Scarcella as a "detective who broke

- 21 -

suggest, in effect, that defendant's liability has already been established. Therefore, even assuming that the Court determines the evidence concerning the CRU investigation and its findings is relevant, any line of inquiry should still be precluded.

In addition to misleading the jury, testimony by ADA Hale, or any of the other prosecutors regarding the CRU findings, violates the accepted principle that "witnesses may not 'present testimony in the form of legal conclusions.' Such testimony 'undertakes to tell the jury what result to reach, and thus attempts to substitute the witness's judgment for the jury's.'" Cameron v. City of New York, 598 F.3d 50, 62 (2d Cir. 2010) (vacating verdict where the trial court permitted prosecutors to testify to the existence of probable cause and to the credibility of officers). Indeed, this very report and accompanying testimony invades the province of the jury.

The Court's decision in Nnodimele v. Derienzo is instructive here. No. 13 CV 3461 (ARR) (RLM), 2016 U.S. Dist. LEXIS 83357 (E.D.N.Y. 2016). In Nnodimele, prosecutors determined there was insufficient evidence of guilt after plaintiff had already been incarcerated for multiple robberies. The Court precluded testimony concerning the conclusions of the New York County District Attorney's Office's Conviction Integrity Unit including any opinions regarding plaintiff's actual innocence, the "thought process" of prosecutors in the District Attorney's office, and its assessment of certain evidence and the decision to recommend dismissal of charges. Id. at *36-39. The Court further held,

> "this court will not permit testimony from prosecutors regarding those matters because their opinions are not relevant and they intrude upon the role of the jury as the arbiter of materiality on the Brady claim. Likewise excluded is testimony and evidence concerning findings and opinions of any prosecutors regarding plaintiff's actual innocence."

Id. at 39-40.

---

rule after rule according to court filings…kept few written records, coached witnesses…[and led] the CIU…to make a major effort to audit and investigate other Scarcella cases." Id. at 721.

The Court in <u>Nnodimele</u> explained that the probative value of the prosecutor's post-conviction findings was substantially outweighed by the danger of confusing the issues, misleading the jury and wasting time, and emphasized that "what matters to the jury is the weight it assigns to the allegedly withheld evidence, not the weight assigned to it by the attorneys who prosecuted plaintiff or reviewed his conviction." <u>Id.</u> at *37. The court found that "[t]estimony regarding the latter poses a risk of polluting the jury's determination with the opinion of others. The fact that such opinions were held by lawyers, and presented to judges, makes that risk especially great." <u>Id.</u>

Finally, ADA Hale's statement and the entire January 9, 2015 hearing transcript, should be excluded as hearsay. These are statements offered outside of the present proceedings, and they are clearly being offered by plaintiff for the truth of the matter asserted—namely, that plaintiff's rights were violated by his prosecution. FED. R. EVID. 802.

Accordingly, plaintiff should be precluded from introducing into evidence the CRU memorandum and the transcript of the January 9, 2015 court appearance, and should be prohibited from eliciting any testimony regarding these subjects.

**POINT VI**

**PROPOSED WITNESSES SAUNDERS, TORRES, SLEVIN, BREEDEN, LEDEE, MICHAEL AND CHARLENE ROSS, VECCHIONE AND MERKIN LACK PERSONAL KNOWLEDGE AND SHOULD BE RPECLUDED FROM TESTIFYING**

Plaintiff intends to call Dan Saunders, Rogelio Torres, Jr., Joyce Slevin, Darren Breeden, Michael Ross, Robert Ledee, Charlene Ross, Michael Vecchione, and Beth Merkin  at trial.  However, these witnesses do not have any personal knowledge of the underlying criminal investigation, and the testimony plaintiff purports to elicit through them is objectionable as

hearsay, bolstering of other witnesses or irrelevant, and serves only to make plaintiff's already unwieldy case even more bloated.  These witnesses should therefore be precluded.

FED. R. EVID. 402, 403, and 602 require that any testimony provided by a witness at trial be both relevant and based upon personal knowledge. Where testimony is not relevant, it should be precluded. Levitant v. City of New York Human Res. Admin., No. 05 CV 230 (KAM) (MDG), 2011 U.S. Dist. LEXIS 20742, at *13-14 (E.D.N.Y.  Feb. 28, 2011) (precluding testimony of witnesses who had no personal knowledge of the events alleged in the suit); Castro v. City of New York, 06 CV 2253 (KAM) (RER), 2009 U.S. Dist. LEXIS 69723, at *19-20 (E.D.N.Y. Aug. 10, 2009) (same); Jean-Laurent v. Hennessy, No. 05 CV 1155 (KAM) (LB), 840 F.Supp.2d 529, at 547-48 (E.D.N.Y. 2011) (precluding all testimony by the prosecuting ADA for lack of personal knowledge); Brutus v. Silverseal Corp., No. 06 Civ. 15298 (LAP), 2010 U.S. Dist. LEXIS 81488, at *3 (S.D.N.Y. July 29, 2010) (precluding the testimony of witnesses who had no "personal knowledge of any disputed facts" and whose testimony, therefore, "would waste time and be likely to confuse the jury.").

Plaintiff cannot show that any of these witnesses have any relevant testimony to offer which will not confuse the issues and/or mislead the jury.

**A. Breeden's testimony (which was deemed incredible) is inadmissible hearsay; Breeden lacks personal knowledge and he was never disclosed as a Plaintiff's witness**

Through Darren Breeden, plaintiff seeks to elicit hearsay statements of Will Dawson, who is not testifying because he is deceased.  As an initial matter, the judge in the underlying criminal matter already found Darren Breeden's testimony incredible after seeing and hearing him.  (Ex. C, at KCDA1106.)  Further, this testimony is clearly inadmissible hearsay about subjects not within Breeden's personal knowledge, specifically, alleged statements about

the Cash murder made by Will Dawson to Breeden, and accordingly the testimony should be barred under Rules 802 and 602.  Finally, his testimony should be precluded because plaintiff failed to ever disclosed Mr. Breeden pursuant to FED. R. CIV. P. 26(a).

First, in denying plaintiff's motion to vacate his conviction pursuant to § 440.10, as noted in the CRU memorandum, the court stated, "The court finds that the testimony of Darren Breeden was incredible because of his demeanor in the answering of questions and the inconsistencies in his answers.' The court ruled, 'Since the court has found Mr. Breeden's testimony incredible, his allegations do not constitute newly discovered evidence.'" (Ex. C, at KCDA1106.)

As noted in the CRU memorandum, Breeden's credibility is even more suspect because he submitted an affidavit on plaintiff's behalf only after Hamilton discovered that Breeden was going to be testifying *against* Hamilton.  (Ex. C, at KCDA1105 n.33.)

Finally, Breeden was an undisclosed witness, who plaintiff failed to identify during discovery, and therefore plaintiff should be precluded from identifying Breeden for the first time as a trial witness. Federal Rule of Civil Procedure 37 was designed exactly for this type of situation.  Announcing a witness or documents for the first time on the eve of trial, subjects the defendants to unfair surprise and prejudice. Given plaintiff's inexcusable delay in identifying this witness, he should be precluded.  Design Solange Ltd. v. Lane Bryant, Inc., No. 99 Civ. 7805, 2000 U.S. App. LEXIS 1857, at *2-3 (2d Cir. 2000). Thus, under Rule 403, this witness should be precluded.

**B.  Michael Vecchione has no personal knowledge, and is likely being called to impeach him about his involvement in unrelated matters**

The only apparent role that former Assistant District Attorney Michael Vecchione played in plaintiff's prosecution or the ensuing litigation was to serve as the "questioning"

attorney at a post-trial hearing.  Upon information and belief, based upon a review of the record, Mr. Vecchione has no personal knowledge of the underlying events in this case.  His testimony should be precluded under FED. R. EVID. 602.

Mr. Vecchione should also be precluded because of the danger of confusing the issues, misleading the jury, and the prejudice to defendant DeLouisa that would result from Mr. Vecchione's expected testimony.  A fair assessment of plaintiff's portion of the JPTO leads to the conclusion that plaintiff's likely reason for calling Mr. Vecchione as a witness has nothing to do with his negligible involvement in the post-conviction proceedings.  Instead, plaintiff appears to be calling him solely to discredit and impeach him based on his involvement in the high-profile prosecution of another man, Jabbar Collins, whose conviction was reversed.  See Vivian Yee, "Under Fire, Brooklyn Deputy Prosecutor Will Retire," THE N.Y. TIMES (Nov. 14, 2013).[8] Thus, plaintiff appears to be seeking to offer character evidence of a non-party who had no apparent involvement in the underlying investigation or prosecution.

**D. Brooklyn D.A. Witnesses Saunders, Torres and Slevin**

ADAs Saunders and Slevin, and DA Investigator Torres have no personal knowledge of the underlying events in this matter, and should be precluded from reciting the testimony of other witnesses, or from discussing the CRU's investigation of plaintiff's claim of actual innocence. See Point V.

---

[8]   Available at:  https://www.nytimes.com/2013/11/15/nyregion/under-fire-brooklyn-deputy-prosecutor-will-retire.html.

**E. Michael Ross, Charlene Ross, and Robert Ledee bolster Jewel Smith through inadmissible hearsay, which is also objectionable because it is not based on their personal knowledge**

Michael Ross, Charlene Ross and Robert Ledee should be precluded from testifying because these witnesses serve only to bolster Jewel Smith's testimony by reiterating and augmenting her hearsay statements.

The impermissible nature of these witnesses' testimony is evident from plaintiff's portion of the JPTO.  According to plaintiff, Michael Ross, the father of Jewel Smith's child, "will testify that Jewel Smith was coerced by NYPD detectives." (ECF No. 137, at 15.)  Mr. Ross testified following plaintiff's trial and merely echoed Jewel Smith's testimony.  (See Testimony of Michael Ross dated October 20, 1992, annexed to DePaul Decl. as Ex. "F," DEF605-28.)  It is abundantly clear that Mr. Ross has no personal knowledge of the events at issue in this trial, and this testimony serves no legitimate purpose.  Further, the anticipated trial testimony constitutes double hearsay, as Mr. Ross would be testifying about conversations he had with Jewel Smith, in which she alleges that she was coerced into implicating plaintiff as Cash's murderer.  Mr. Ross acknowledges that he knows plaintiff from their jail stints, although he maintains that he independently decided to create an affidavit supporting plaintiff, because "In Riker's [*sic*.] Island you always run into somebody sooner or later."  (Ex. F, at DEF611-13.) Finally, Michael Ross's testimony should also be precluded as having no bearing on any of plaintiff's claims, as even Mr. Ross admitted that he did not tell anyone about the information he learned from Ms. Smith until he spoke to a private investigator.  (Ex. F, at DEF611, DEF614.)

Relatedly, the testimony of private investigator Robert Ledee, concerning the "reinvestigation and the underlying documents," (ECF No. 137, at 15), constitutes hearsay, to the extent his testimony summarizes the statements of Michael Ross and Gregory Wright; and

furthermore, as he simply "reinvestigated" the underlying matter, he lacks personal knowledge of the incidents at issue.

Similarly, according to plaintiff, Charlene Ross "will testify to admissions by Jewel Smith about misconduct by investigating detectives." (ECF No. 137, at 16.)  This testimony should be precluded as bolstering the expected testimony of Jewel Smith on this subject and hearsay, as a recitation of Ms. Smith's prior out-of-court statements to Ms. Ross (which, of course, are offered for the truth of the matter asserted.)  See FED. R. EVID. 801(c).  Upon information and belief, Ms. Ross has never given testimony previously relating to plaintiff's arrest and prosecution, and, again, plaintiff failed to disclose Charlene Ross under Rule 26.

In sum, none of these previously undisclosed witnesses have personal knowledge of any matters that are relevant to plaintiff's claims. Their testimony amounts to hearsay and bolstering of other witnesses, and would mislead the jury and waste the Court's time. Accordingly, they should be precluded from testifying pursuant to FED. R. EVID. 402, 403, 602 and 802.

## POINT VII

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING WITNESSES WHO WERE NOT IDENTIFIED IN DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)

Plaintiff should be precluded from calling as witnesses individuals he did not disclose during the course of discovery.  Specifically, plaintiff should be precluded from calling: Dennis James Brown; Darren Breeden; Robert Ledee; Selma Singleton; Eric Daniels; Charlene Ross; Tawana Smith; Tara Hamilton; Ernest Smith. (See Plaintiff's Disclosure Pursuant to Rule 26(A), dated December 15, 2015, annexed to the DePaul Decl. as Exhibit "G"; Plaintiff's

Disclosure of Damages Witnesses, dated July 25, 2016, annexed to the DePaul Decl., as Exhibit "H.")

Where a party fails to provide information required by FED. R. CIV. P. 26(a), the party is not allowed to use that information at a hearing or trial unless the failure was substantially justified or harmless.   FED. R. CIV. P. 37(c)(1).   "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (precluding expert report not timely disclosed prior to motion practice for summary judgment).   In determining whether preclusion is warranted the Court should consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)(citing Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)).   Further, a "'bad-faith' violation of the Rule 26 is not required in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply." Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. N.Y. 2006).

As an initial matter, plaintiff has not provided any reason for his failure to identify these witnesses.  Indeed, it is apparent from plaintiff's description of their expected testimony on the JPTO that plaintiff has known about some of these witnesses since 1991.  For example, Selma Singleton and Eric Daniels are expected to testify about plaintiff's "alibi" that he was in New Haven at the time of the Cash murder.  Yet, amazingly, in the almost 30 years since the murder, plaintiff has never disclosed them as witnesses.  So too, plaintiff identifies Dennis James

Brown as an "eyewitness to the Cash murder" who failed to identify plaintiff in a lineup. Setting aside the fact that there is no record of Mr. Brown' viewing a lineup, there is simply no reason— other than sandbagging—that plaintiff has waited so long to disclose his identity.

Further, given the differing nature of their expected testimony, the importance of the witnesses varies.  Tara Hamilton, for example, is listed as a damages witness and is therefore duplicative of other witnesses' testimony.  Similarly, the testimony of Charlene Ross and Tawana Smith, which should also be excluded for the reasons set forth in Point III, is largely duplicative of that of Jewel Smith. Selma Singleton, Eric Daniels, Dennis James Brown, on the other hand, are of significant importance for the reasons explained above—which only amplifies the prejudice to defendants in not having been afforded the opportunity to prepare for their testimony.

Finally, the Court should not grant a continuance.  Given the potential breadth of this trial, the parties' resources are better spent preparing for trial rather than re-opening discovery to depose witnesses that plaintiff has known about for 30 years.  As a result, plaintiff should be precluded from calling these witnesses.

## POINT VIII

### THE OPINION OF PLAINTIFF'S POLICE PRACTICES EXPERT, JOSEPH POLLINI SHOULD BE PRECLUDED BECAUSE IT FAILS TO MEET THE STANDARDS OF ADMISSIBLITY SET BY FRE 702

Plaintiff's police practices expert, Joseph Pollini, should be precluded from testifying as to any of the opinions contained in his expert report. Pollini offers three conclusions in his report: (1) "the defendants in this case violated the proper, accepted, and standard police practices and procedures in connection with the investigation and arrest of Derrick Hamilton,"

(2) "[n]o reasonable police officer could have concluded that there was probable cause to arrest Derrick Hamilton and initiate his prosecution based on the totality of the information," (3) "[t]he police violated their obligation under the Brady Rule by withholding important and relevant information undercutting the reliability and credibility of Karen Smith," and "misled the prosecution by vouching for the credibility of the main witness without disclosing that they had not investigated her credibility." (See Report of Joseph A. Pollini dated May 5, 2017, annexed to the DePaul Decl., as Exhibit I, at ¶ 47(a)-(c).)

Rule 702 of the Federal Rules of Evidence sets forth the standard for admissibility of expert testimony. The rule provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Rule 702 sets forth three basic requirements: [Th]e witness must be qualified as an expert to testify as to a particular matter, the testimony must be based on reliable data and methodology, and the testimony must assist the trier of fact. See CDR-Wantagh, Inc. v. Shell Oil Co., No. 07 CV 4497 (DRH) (ETB), 2011 U.S. Dist. LEXIS 19717, *21-22 (E.D.N.Y. Feb. 28, 2011) (citing Nimely v. City of New York, 414 F.3d 381, 395 (2d Cir. 2005)). "Weighing whether the expert testimony assists the trier of fact goes primarily to relevance." CDR-Wantagh, Inc., 2011 U.S. Dist. LEXIS 19717 at *30. Thus, in order to be admissible, expert testimony must be "not only relevant, but reliable." Ebbert v. Nassau County, No. 05 CV 5445 (FB) (AKT), 2008 U.S. Dist. LEXIS 74213, at 11 n. 5 (E.D.N.Y. Sept. 26, 2008) (citing Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 141 (1999)).

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)).  "[E]xpert testimony should be excluded if it is speculative or conjectural."  Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (internal citations omitted); accord Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 423 (S.D.N.Y. 2009).   In assessing whether expert testimony should be admitted, the trial court acts as a "gatekeeper," in order to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co., 526 U.S. at 152.  While the Supreme Court first described the court's "gatekeeping" role in the context of scientific testimony, Daubert, 509 U.S. 579, it later clarified that this "gatekeeping" obligation applies to "all expert testimony," in keeping with Rule 702's reference to "technical" and "other specialized" knowledge.  Kumho Tire Co., 526 U.S. at 147-48, 151.

## A. Pollini should be precluded because he opines on the ultimate legal conclusion in this matter.

It is well settled that an expert may not "tell the jury what result to reach," because such testimony "does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."  United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) (emphasis in original). "This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion . . . ."  Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992).

Significantly, "the issue of whether or not probable cause to arrest exists is a legal determination that is not properly the subject of expert opinion testimony."  Rizzo v. Edison, 419

F. Supp. 2d 338, 348-49 (E.D.N.Y. 2005), aff'd, 172 Fed. Appx. 391 (2d Cir. 2006) (unpublished).   In affirming the district court's decision in Rizzo, the Second Circuit stated: "The judge is both uniquely qualified and uniquely tasked to make the legal determination of what constitutes probable cause; an expert cannot assist in this task, at the summary judgment phase or at trial."  Rizzo, 172 Fed. App'x at 394-95. See also Sullivan v. Lakeram, 13-CV-7677 (NRB), 2017 U.S. Dist. LEXIS 155254, at *14 (S.D.N.Y. Sep. 13, 2017) ("the existence of probable cause is a question of law that is not properly the subject of expert testimony").

As discussed above, the Pollini Report concludes that the defendants violated their obligations under Brady and that no reasonable officer could have believed that there was probable cause to prosecute plaintiff. Both of these opinions constitute ultimate legal conclusions in this matter and should be precluded.

**B. Pollini's opinion should also be precluded because he will not assist the jury because it relies on disputed facts and speculates as to other facts.**

"To warrant admissibility…it is critical that an expert's analysis be reliable at every step." Amorgianos v. Amtrak, 303 F. 3d 256, 267 (2d Cir. 2002).   In evaluating reliability, the court "should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Id.

Throughout the Pollini Report, Mr. Pollini simply assumes certain facts as true, even though such facts are not established—and, indeed, may never be established. For example, in paragraph 35(a), Pollini opines that "[h]ere [Jewel Smith] was coerced into giving a different rendition of her story, which she later provided to Detective DeLouisa." As another example, Pollini assumes throughout his report that "Money Will" Dawson was, in fact, the perpetrator of Mr. Cash's homicide. Pollini also offers the opinion, "[i]n this case, Mr. Johnson [Dawson] was

discounted as a possible suspect early on in the investigation, without the benefit of being thoroughly investigated by the assigned detective." (Ex. I, ¶ 37.) Another opinion he offers is, "[the defendants] single-mindedly discarded any evidence that did not point to Mr. Hamilton." (Ex. I, ¶ 38.) These and other similar factual conclusions render Pollini's report unreliable, and further, invade the province of the jury by resolving factual disputes in plaintiff's favor.

Additionally, Pollini speculates as to what is contained in evidence that he concedes he was not provided in preparing his report. (See, e.g. Ex. I, ¶ 40 (concerning the possible contents of the SPRINT report) and Ex. I, ¶ 39 (in which Pollini opines that "the investigation took place in an environment of general disregard for practices intended to safeguard the integrity of evidence," with no explanation of how he concluded this, and then launches into a lengthy explanation of the information he believed should have been in the memobooks of the first officers on the scene)).

However, it is well established that experts may not engage in speculation in forming their opinions. "[E]xpert testimony should be excluded if it is speculative or conjectural." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (internal citations omitted). Because Pollini's expert opinion is impermissibly based on factual assumptions and speculation, it is unreliable and will not assist the jury.

**C. Pollini's opinions regarding the credibility of Jewel Smith or any other witnesses should be precluded because they impermissibly invade the province of the jury.**

Further, the Pollini Report repeatedly offers opinions regarding the credibility of Jewel Smith, which is outside of the province of an expert, and without question invades the province of the jury. (See, e.g. Ex. I, ¶ 35 ("It should have been obvious to Detective DeLouisa that Ms. Smith was an unreliable informant because she used three different aliases,"); ¶ 35(e) ("[comparison with the crime scene file] would have shown that [Ms. Smith's] statement at the

- 34 -

79th Precinct which incriminated Mr. Hamilton was false,"); ¶ 35(f) ("It would have substantiated the fact that Ms. Smith was not a credible witness in this case."); ¶ 35(g) ("This information would have further destroyed the credibility of Ms. Smith – the only witness in the case.")

However, an expert cannot comment on a witness's testimony or credibility.  See Nimely, 414 F.3d at 398 ("[T]his court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."); Fate v. Vill. of Spring Valley, No. 11-CV-6838 (JPO), 2013 U.S. Dist. LEXIS 83425, at *17-18 (S.D.N.Y. June 13, 2013) (precluding expert on police practices to "offer testimony about what he believes actually happened or about the credibility of any witness"). Pollini's opinions regarding the credibility of any witnesses in this case should thus be precluded.

**D.  Pollini's opinion is further irrelevant to the legal issues before the jury.**

Many of the paragraphs in the section of the Pollini Report entitled "Evaluation and Opinion" offer opinions as to what steps the defendant officers should have undertaken to further investigate the murder of Nathaniel Cash. These vary from the opinion that Detective DeLouisa should have asked Jewel Smith about her criminal record during his interview of her, to somehow discovering the existence of Felicia Shuler, to following up on the 911 call to investigating "Money Will" Dawson (referred to in the Report as "Mr. Johnson") as a suspect in the homicide, to interviewing EMS personnel to doing a search for CCTV footage in the area to notifying Crime Stoppers with respect to this case. (See generally Ex. I, ¶¶ 34-45.)

However, none of these opinions as to what actions the investigating detectives *might* have taken would assist the jury in determining whether or not there was probable cause to

prosecute plaintiff.  Indeed, the determination of the existence of probable cause depends upon the facts known to a law enforcement officer at the time of arrest and/or the commencement of a prosecution, not upon unknown facts/evidence that plaintiff alleges could have been discovered. See, e.g., McGrier v. City of New York, 16 CV 5667 (VEC), 2019 U.S. Dist. LEXIS 38688 *19-20 (S.D.N.Y. Mar. 11, 2019) ("a purportedly inadequate investigation does not vitiate probable cause") (quotation mark omitted); Panetta v. Crowley, 460 F3d. 388, 395-396 (2d Cir. 2006) ("Although a better procedure may [be] for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest.")  Furthermore, an alleged failure to investigate is not a component of plaintiff's fabrication of evidence and/or Brady claims.

Moreover, introducing testimony about what the defendants could have done in investigating this case is likely to lead to juror confusion. Indeed, if an individual deemed an "expert" is testifying regarding other steps that the officers could have taken, a juror could incorrectly conclude that it must be relevant in deciding the disputed issues, even though that is a patently incorrect statement of law. Therefore, Pollini should be precluded from offering any opinions regarding what other steps the defendants could have taken.

### E. Pollini's opinion that defendant violated "proper police practices and procedures" has no probative value and is outweighed by the danger of the unfair prejudice.

The Pollini Report, at paragraph 35(d), opines that it was violation of "proper police practice and procedure" for Detective DeLouisa not to prepare a Complaint Follow-Up Report regarding Jewel Smith's original statement, to discount Jewel Smith's initial statement after her subsequent implication of plaintiff, and not to inform the assigned assistant district attorney about Jewel Smith's different statements.  However, these opinions regarding "proper

police practices and procedure" are different than the constitutional standards the jury will be asked to evaluate.  As such, Pollini should be precluded from offering any opinions based on, or evidence of, the NYPD procedure or patrol guide provisions as any alleged violation of NYPD procedure by defendant DeLouisa is irrelevant to the determination of whether plaintiff's constitutional rights were violated. See, e.g., Whren v. U.S., 517 U.S. 806, 815 (1996) (rejecting constitutional standard based on "usual police practices," because "police enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and from time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable"); Bah v. City of New York, 13 Civ. 6690 (PKC), 2017 U.S. Dist. LEXIS 13285 at *18-19 (S.D.N.Y. Jan. 31, 2017) ("Section 1983 provides a remedy for the violation of rights protected by the Constitution or federal law. It does not provide a remedy for violation of best police practices.") (internal citation omitted).

First, the standards of NYPD are merely guidelines and are not constitutional standards.  In other words, the internal NYPD procedures are not a source of rights.  See Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("[u]nder § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force.  A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"); Galapo v. City of New York, 95 N.Y.2d 568, 574-75 (2000) (the NYPD patrol guide "is not a body of law or regulation establishing clear legal duties that should serve as a basis for civil liability of municipalities").  Since NYPD procedure does not create legal duties, it is irrelevant to the determination of whether plaintiff's constitutional rights were violated and any expert opinion

based thereon, as well as the procedures themselves, should therefore be precluded under FED. R. EVID. 402.

Second, any opinions that defendant DeLouisa violated and/or deviated from NYPD procedure would only confuse the jury. If the jury is presented with expert testimony and/or portions of NYPD patrol guide, it is likely to wrongly assume that NYPD procedure sets out the standard by which they are to evaluate defendant DeLouisa's alleged unconstitutional actions, notwithstanding a contrary instruction from the Court. See Othman v. Benson, No. 13-CV-4771 (NGG) (SJB), 2019 U.S. Dist. LEXIS 38594, at *16-17 (E.D.N.Y. Mar. 8, 2019) (noting that introduction of such evidence [i.e., NYPD procedures] might confuse a jury); see also Abeyta v. City of New York, 588 F. App'x 24, 25 (2d Cir. 2014) (affirming district court's decision to preclude excerpts of NYPD Patrol Guide under Rule 403 as "evidence of the [NYPD Patrol Guide] could have 'unduly confuse[d] the jury' because a departure from the guides does not necessarily establish a legal or constitutional violation").

Accordingly, Pollini's opinions regarding the alleged violation of police practices, as well as the Patrol Guide itself, should be precluded pursuant to Fed. R. Evid. 402 and 403.

### POINT IX

### PLAINTIFF SHOULD BE PRECLUDED FROM INCLUDING THE CITY OF NEW YORK IN THE CAPTION AND ON THE VERDICT SHEET AND PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO DEFENSE COUNSEL AS CITY ATTORNEYS

Since Plaintiff's municipal liability claim against the City of New York has been bifurcated, there is no good reason for the City to be mentioned at trial. Given the potential prejudice to defendant DeLouisa, including that the jury may not meaningfully assess the specific claims against him, the City of New York at trial should not be mentioned at trial.

**A.      The City of New York Should be Removed from the Caption and the Verdict Sheet.**

Defendant DeLouisa will be prejudiced if the City remains in the caption and on the verdict sheet.  First, this would falsely suggest that the City's conduct is at issue at this trial. Since plaintiff's municipal liability claim against the City has been bifurcated, the trial will concern the acts of defendant DeLouisa—*not* the City.  If the City remains in the caption and verdict sheet, defendant DeLouisa could be prejudiced by the jury's misapprehension of this fact.

Second, if the City is left in the caption and verdict sheet the jury could believe that there are a greater number of defendants in the action, thus potentially bolstering plaintiff's claims.  Third, reference to the City could also lead the jury to assume that the City will pay any damages award if the Court does not bifurcate them.  See Point II. It is well settled that such apprehension causes undue prejudice, especially where, as here, the municipality's conduct is not at issue.  See Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 549 (E.D.N.Y. 2011).   Moreover, including the City on the verdict sheet may unfairly prejudice defendant DeLouisa because the jury may view the City as a "deep pocket" that can pay a higher judgment than this retired detective would be able to pay on his own.  This is especially true in this case since the mention of the City of New York is completely unnecessary for the jury to decide the claims at issue.

As such, defendants respectfully request that the Court remove the City of New York from the caption and not include the City on the verdict sheet.

**B.      Plaintiff Should Be Precluded from Calling Defense Counsel "City Attorneys."**

Plaintiff should be precluded from referring to defendant DeLouisa's counsel as "City attorneys."   This is a "standard request in these types of actions" and the concerns underlying it are "valid."  Simpson v. City of New York, No. 12 CV 6577 (KBF), 2015 U.S. Dist. LEXIS 138723, at *16 (S.D.N.Y.  Oct. 9, 2015).  First, any reference to City attorneys is inaccurate as it fails to account for defendant DeLouisa.  Second, and as explained above,

referring to defense counsel as City attorneys is prejudicial to defendant DeLouisa as it may create the impression that the City will likely pay any potential verdict against him.  If it were to have this misconception, the jury may not "critically" assess liability or damages.  Id.

Additionally, "[a] reference to 'Corporation Counsel' may itself be misunderstood by jurors as suggesting some association with a corporation or the City, leading to the same associations with a deep pocket." Jaquez v. Flores, 10 CV 2881 (KBF), 2016 U.S. Dist. LEXIS 34521, at *6 (S.D.N.Y. Mar. 17, 2016); see Davis v. City of New York, 296 F.R.D. 127, 130 (E.D.N.Y. 2013) (granting defendants' motion to "preclude any reference to defense counsel as employees of the City of New York or 'City attorneys'").   Therefore, reference to the Corporation Counsel should also be avoided.

To offset this potential prejudice, defendants respectfully request that defendant DeLouisa's counsel be identified as "defense counsel."

**POINT X**

**PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR OFFERING ANY EVIDENCE REGARDING THE CITY OF NEW YORK'S POTENTIAL INDEMNIFICATION OF DEFENDANT DELOUISA**

If damages are not bifurcated, plaintiff should be precluded from mentioning or suggesting that the City of New York may indemnify defendant DeLouisa.  Such evidence or arguments lack any value and would unduly prejudice this defendant.  If the jurors assume that the City will pay a judgment, then they may not carefully assess issues of liability because they believe that defendant DeLouisa would not be responsible for paying.  See Ashley v. Civil, No. 14 CV 5559 (NGG) (SMG), 2019 U.S. Dist. LEXIS 56006, at *28-29 (E.D.N.Y. Apr. 1, 2019) (evidence regarding indemnification would be prejudicial against the individual defendants

because it might "encourage a jury to inflate its damages award because it knows the government—not the individual defendant[]—is footing the bill." (internal citation omitted)).

This unfortunate prejudice is precisely the concern behind Federal Rule of Evidence 411, which prohibits the admission of evidence of a defendant's liability insurance. See FED. R. EVID. 411 advisory committee's note (1972) ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds.")

Evidence of the City's potential indemnification should also be precluded because it is not relevant.  See Edwards v. City of New York, No. 08 CV 199 (TLM), 2011 U.S. Dist. LEXIS 75300 at *14-15 (E.D.N.Y. July 13, 2011) ("Indemnification is not relevant to any issue before the jury and plaintiff will not be permitted to inform the jury that defendant might be indemnified by the City"); Jean-Laurent, 840 F. Supp. 2d at 550 (E.D.N.Y. 2011) (precluding plaintiff from introducing evidence that the City may indemnify individual defendants because "[i]ndemnification is not relevant to any issue before the jury").  Accordingly, plaintiff should be precluded from offering any evidence that the City may indemnify defendant DeLouisa.

## POINT XI

## PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY

To the extent damages are not bifurcated, plaintiff should be precluded from suggesting a specific target dollar amount for the jury.  Such suggestions are "disfavored" by the Second Circuit.  See Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003, 1016 (2d Cir. 1995).  Indeed, they unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence.  Id.; see also Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely

upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel").   As the Circuit recognized in <u>Consorti</u>, "[a] jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent." 72 F.3d at 1016.   The Circuit went so far as to "encourage trial judges to bar such recommendations." <u>Id.</u> As such, plaintiff should be precluded from suggesting a dollar amount to the jury at trial.

**POINT XII**

**EVIDENCE OF DEFENDANT DELOUISA'S DISCIPLINARY HISTORY SHOULD BE PRECLUDED**

Evidence of defendant DeLouisa's disciplinary history should be precluded under Federal Rules of Evidence 402, 403, 404(b), 608, and 802.   Defendant DeLouisa's disciplinary history is not relevant to plaintiff's claims.   And to the extent this information has any probative value—which it does not—it is substantially outweighed by the danger of unfair prejudice, juror confusion, and waste of time. Fed. R. Evid. 403.

Moreover, evidence of disciplinary complaints made against a police officer is merely an attempt to introduce propensity evidence—which is expressly prohibited by Federal Rule 404(b).   <u>See</u> <u>Berkovich v. Hicks</u>, 922 F.2d 1018, 1022 (2d Cir. 1991 (upholding the exclusion at trial of all references to the defendant police officers' history of prior civilian complaints pursuant to Rules 404(b) and 403).   Rule 404(b) states that evidence of past acts "to prove the character of a person in order to show action in conformity therewith . . ." is inadmissible.   Instead, evidence of other acts is only admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).   However, evidence of other bad acts is not automatically admissible simply because the proponent has articulated some not-for-character purpose.

- 42 -

In Huddleston v. United States, the Supreme Court held that the decision to admit evidence under Rule 404(b) depends on "whether the danger of unfair prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." 485 U.S. 681, 688 (1988)  Thus, Rule 404(b) "requires a two-part analysis: First, whether the proposed evidence fits within one of the 'exceptions' provided by the Rule, and second, even if it does, whether under Rule 403, the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice."  Shaw v. City of N.Y., No. 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at *16-17 (S.D.N.Y. Apr. 15, 1997); see also Jaquez, 2016 U.S. Dist. LEXIS 34521, at *10-11.

Moreover, even where evidence of other acts is offered for a proper purpose, it is only admissible if the acts are sufficiently similar to the act at issue.  See United States v. Perez, 325 F.3d 115, 129 (2d Cir. 2003) ("Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged."); United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987)("[W]e would consider it an abuse of discretion to admit [similar act] evidence if the other act were not sufficiently similar to the conduct at issue.")(collecting cases).

Here, any reference to an allegation of misconduct by a defendant does not fall under any of the Rule 404(b) exceptions.  Any attempt by plaintiff to introduce such evidence would be solely for the purpose of suggesting that defendant DeLouisa had a propensity to engage in misconduct, which is prohibited. See Berkovich, 922 F.2d at 1022; see also Bermudez v. City of New York, No. 15 CV 3240 (KAM) (RLM), 2019 U.S. Dist. LEXIS 3442, at * 20-21 (E.D.N.Y. Jan. 8, 2019) (precluding officer disciplinary histories where plaintiff failed to show a

pattern or not-for-character purpose, failed to demonstrate relevance, and failed to establish how any probative value substantially outweighed the danger of unfair prejudice).

Even assuming, *arguendo*, any proposed evidence of unrelated allegations of misconduct fits within one of the exceptions of Rule 404(b), it is substantially more prejudicial than probative and, thus, inadmissible pursuant to Rule 403.  Admitting evidence of unrelated complaints would unfairly burden defendant, who would then be required to explain the particular facts and circumstances of each unrelated incidents, which would in turn confuse and distract the jury from the ultimate issue of whether defendants violated plaintiff's constitutional rights in this case.  Similarly, unrelated allegations of misconduct are inadmissible hearsay.  See FED. R. EVID. 802.

Finally, any introduction into evidence of disciplinary history would violate Rule 608, which prohibits the use of extrinsic evidence as impeachment evidence bearing on a witness's truthfulness.  FED. R. EVID. 608.  Whether defendant DeLouisa was the subject of unsubstantiated or unsupported allegations of misconduct does not go to the detective's credibility and should be precluded.  To the extent plaintiff claims he will only use the disciplinary records for impeachment, he should not be permitted to impeach the officers using allegations that an unknown individual made that are not sufficiently similar to the dispute at issue.  This would confuse and distract the jury from what is actually at issue in this case.

Accordingly, plaintiff should not be permitted to inquire or to introduce evidence of, prior disciplinary histories brought complaints against defendants DeLouisa.

## POINT XIII

## DEFENDANT RESERVES THE RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE*

Defendant DeLouisa respectfully reserves his right to object to any *in limine*

motions submitted by plaintiff and to file supplemental motions *in limine*, if necessary.

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendants City of New York and*
*Retired Detective Frank DeLouisa*
100 Church Street, Room 3-219
New York, New York 10007
(212) 356-2413


By:            /s/
_____

PHILIP R. DePAUL
KIRAN H. ROSENKILDE
ANGHARAD K. WILSON
Special Federal Litigation Division

- 45 -