

**GEORGIA M. PESTANA**
*Acting Corporation Counsel*

**T**HE **C**ITY OF **N**EW **Y**ORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**PHILIP R. DePAUL**
*Senior Counsel*
Phone: (212) 356-2413
Fax: (212) 356-3509
pdepaul@law.nyc.gov

October 15, 2019

<u>BY ECF</u>
Honorable Carol Bagley Amon
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     <u>Derrick Hamilton v. City of New York, et al.</u>
        15 CV 4574 (CBA)(SJB)

Your Honor:

I am a Senior Counsel in the office of Georgia M. Pestana, Acting Corporation Counsel of the City of New York, and one of the attorneys representing Defendants City of New York and former Detective Frank DeLouisa in this action. Defendant DeLouisa writes to provide additional supplemental briefing in advance of trial, in accordance with the Court's Order at the pre-trial conference on October 8, 2019.

**A.      The Witnesses Who Were Not Known to Law Enforcement Before Plaintiff's Conviction Should Be Precluded.**

The witnesses who were not known to law enforcement before plaintiff's conviction should be precluded.[1] First, because plaintiff is not required to prove his innocence in order to succeed on his claims, these witnesses are not relevant pursuant to Federal Rule of Evidence 402. Second, regardless of relevance, the civil jury will still hear the evidence of plaintiff's innocence that was known during plaintiff's original prosecution. But because it was *impossible* for law enforcement to have known about these witnesses until after plaintiff's conviction, allowing them to testify would be confusing for the civil jury and prejudicial to defendant DeLouisa. Therefore, they should also be precluded under Rule 403.

Notably, plaintiff mischaracterizes defendant's motion *in limine* on this point. Defendant DeLouisa is *not* moving to exclude all evidence of plaintiff's innocence. The civil jury will hear the evidence of innocence that was known before plaintiff's conviction. Specifically, they will hear about the "alibi notice" that plaintiff served during his criminal

---

[1] These witnesses are plaintiff's "alibi" witnesses (Kelly Turner; Davette Mahan; Gregory Marable; Tashameaka Watson; Selma Singleton; and Mattie Dixon) as well as the witnesses who undermine Jewel Smith's credibility (Felicia Shuler; Sharon Goodwin; Robert Holt; Charlene Ross; and Tawana Smith).

prosecution identifying Kim Freeman, Alphonso Dixon, and James Hamilton, Jr., as alibi witnesses. Plaintiff, presumably, will also testify about where he was when Mr. Cash was murdered. Thus, plaintiff can, and will, present evidence of his purported innocence and the civil jury can assess it in determining whether defendant DeLouisa's alleged conduct before plaintiff's conviction violated plaintiff's constitutional rights.

Further, most of the cases on which plaintiff relies are inapposite. In fact, several of those cases tend to support defendant's argument that the purported post-conviction innocence evidence should be precluded. In Restivo v. Hessemann, the Second Circuit expressly emphasized that "[p]laintiffs *were not required* to prove their innocence to win on their [malicious prosecution and denial of the right to a fair trial] claims at trial." 846 F.3d 547, 559 (2d Cir. 2017) (emphasis added). While the Second Circuit recounted the evidence of plaintiffs' innocence in its decision, it did so only as an "important backdrop to their claims at trial." Id. This binding authority is therefore directly in conflict with the two Ninth Circuit cases on which plaintiff relies. This is because plaintiffs there can prove a fabrication of evidence claim through evidence of innocence, by showing that the defendants "continued their investigation . . . despite the fact that they knew or should have known that [plaintiff] was innocent." Spencer v. Peters, 857 F.3d 789, 799 (9th Cir. 2017); Costanich v. Dep't of Soc. Servs., 627 F.3d 1101, 1111 (9th Cir. 2009) (both quoting Deveraux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001)).

The Seventh Circuit's decision Parish v. City of Elkart also supports defendant's position. There the district court excluded evidence of innocence at trial focusing on "what evidence that was known at the time of the crime." 702 F.3d 997, 1001 (7th Cir. 2012). The Seventh Circuit explicitly recognized that such a limitation "is relevant only regarding the issue of liability for wrongful conviction." Id. The Seventh Circuit vacated the damages award only because the excluded innocence evidence was relevant to damages. Id. at 1003.

Moreover, the authority that plaintiff relies upon also demonstrates why it would confuse the civil jury and prejudice defendant DeLouisa to introduce evidence of plaintiff's innocence that only arose after his conviction. Unlike here, in nearly all of the cases that plaintiff relies upon, the plaintiffs were conclusively proven innocent. Restivo v. Hessemann, 846 F.3d 547, 559 (2d Cir. 2017) (noting that DNA testing demonstrated that neither plaintiff nor his criminal co-defendants "contributed the semen found" in the victim, and rejecting arguments that such evidence did not establish innocence as speculative and implausible); Ayers v. City of Cleveland, 773 F.3d 161, 169 (6th Cir. 2014) (noting that DNA evidence showed "no linkage" between plaintiff and the crime scene); Halsey v. Pfeiffer, 750 F.3d 273, 285 (3rd Cir. 2014) (noting that a DNA test and follow up investigation confirmed "beyond dispute" that plaintiff was innocent); Jimenez v. City of Chicago, 732 F.3d 710, 713 (7th Cir. 2013) (noting that after plaintiff's conviction was vacated he was "granted a certificate of innocence"); White v. Smith, 696 F.3d 740, 743 (8th Cir. 2012) (noting that DNA testing established semen and blood found at the crime scene was left by another individual "who had no connection to [plaintiff] and the other defendants" and that a subsequent reinvestigation of the crime revealed that it was committed by one person); Good v. Curtis, 601 F.3d 393, 397 (5th Cir. 2010) (noting that DNA testing of biological evidence recovered from the crime scene "ruled [plaintiff] out" as the attacker); Newsome v. McCabe, No. 96 C 7680, 2002 U.S. Dist. LEXIS 6345, at *14 (N.D. Ill. Apr. 4, 2002) (noting that evidence pointing to other perpetrator was so strong that it "prompted the governor of the State of Illinois to pardon Newsome on the grounds of innocence.").

The conclusive proof of innocence in the above-cited cases could therefore support an inference that incriminating evidence was false or fabricated. In other words, since the plaintiffs in those cases could not possibly have committed the crimes of which they were accused, then it could reasonably be inferred that evidence of guilt was the product of law enforcement misconduct. See, e.g., Ayers, 773 F.3d at 169 (finding that exonerating DNA evidence was relevant because it increased the likelihood that defendants "fed" a witness details about the underlying crime); Newsome, 2002 U.S. Dist. LEXIS 6345, at *15 (finding that evidence that pointed to the real perpetrator of the underlying crime "could be considered by the jury in determine whether the defendants intentionally manipulated eyewitness identifications.")

Here, however, no reasonable inference can be drawn from plaintiff's post-conviction innocence evidence because—to this day—plaintiff has never been conclusively proven innocent. As previously explained, the KCDAO agreed moved to vacate plaintiff's conviction because of a purported due process violation, not because plaintiff was innocent. Assistant District Attorney Mark Hale explicitly stated that the "primary focus" of the CRU was the due process violation that occurred by the "use of [Jewel Smith] at trial[,]" and "because of this primary focus on the due process violation that occurred through the use of this particular witness, the People and [CRU] did not reach the other issues which were raised by the defendant, that is, with regard to alibi and other issues." (See ECF No. 149-1, Ex. E, at 4-5.)

Furthermore, plaintiff's proof of innocence is both self-serving and dubious: it consists of his own testimony and the testimony of friends and acquaintances. To allow plaintiff to call these witnesses would divert the jury from focusing on whether defendant maliciously prosecuted plaintiff, or denied him his fair trial rights, to the question of whether he is innocent—which is not related to plaintiff's claims. It could also suggest to the jury that defendant DeLouisa is somehow at fault for failing to learn about these witnesses during the underlying criminal investigation, when *plaintiff* knew about them all along and did not disclose their identities until years, and, in some cases, *decades* later.

Accordingly, the witnesses who were not known to law enforcement before plaintiff's conviction should be precluded.

## B. Unrelated Witnesses Whose Convictions Were Vacated Should Be Precluded.

At the October 8, 2019 conference, plaintiff expressed his intent to call Vanessa Gathers, Shabaka Shakur, and Sundhe Moses—unrelated witnesses whose convictions have also been vacated. Though light on the details, plaintiff represented that these individuals will testify that Detective Scarcella forced them to confess to crimes they did not commit. Notwithstanding that this testimony is classic propensity evidence, plaintiff argues that it is admissible pursuant to FED. R. EVID. 404(b) to show "absence of mistake" and "opportunity" on the part of Detective Scarcella. This testimony should be precluded because: (1) none of the defendants have argued mistake or lack of opportunity; (2) the alleged prior conduct is insufficiently similar to the conduct alleged in this case; and (3) admission of what is plainly propensity evidence would be highly prejudicial to defendant DeLouisa.

First, in order for evidence to be admissible pursuant to Rule 404(b), it must be probative. See Hynes v. Coughlin, 79 F.3d 285, 290-291 (2d Cir. 1996) (finding that where plaintiff inmate did not argue that he accidentally kicked one of the defendant correction by accident, but rather that plaintiff did not kick defendant at all, plaintiff's disciplinary records were not admissible as evidence of absence of mistake); Jackson v. City of White Plains, No. 05

CV 0491 (NSR), 2016 U.S. Dist. LEXIS 6469, at *4-*5 (S.D.N.Y. Jan. 19, 2016) (finding that defendant's prior uses of force were inadmissible as evidence of an absence of mistake where the defendant did not allege that he punched plaintiff by accident or mistake, but rather that he did not punch plaintiff at all). Here, in order for this evidence to be probative, defendants must argue that there was a mistake in order for evidence supporting an absence of mistake. But none of the defendants have argued that Detective Scarcella's purported coercion of Jewel Smith was the result of a mistake or accident. Rather, defendants' position has consistently been that Detective Scarcella did not coerce Jewel Smith at all.

Similarly, plaintiff's assertion that that the unrelated witness testimony demonstrates Detective Scarcella's "opportunity" to commit the acts alleged is also unavailing. No defendant has argued that Detective Scarcella did not possess the means to commit the acts alleged. Instead, the argument has been that he did not commit those acts. See, e.g., United States v. Williams, 585 F.3d 703, 708-709 (2d Cir. 2009) (finding that it was error to admit evidence of weapons and drugs recovered from an apartment that the defendant had access to in order to show the defendant had "opportunity" in a gun possession trial where the defendant's primary argument at trial was that the state had failed to meet its burden, rather than that defendant was unable to procure a gun). There is thus no issue of opportunity of which this evidence would be probative.

In any event, even where evidence of past acts is offered for a proper purpose, it is only admissible if the acts are sufficiently similar to the act at issue in the instant matter. See United States v. Perez, 325 F.3d 115, 129 (2d Cir. 2003) ("Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches *near identity* with the elements of the offense charged.") (quotation marks and citation omitted) (emphasis added). The allegations regarding Detective Scarcella's purported conduct in the Gathers, Shakur, and Moses cases are fundamentally different from the alleged coercion of Jewel Smith in this case. For example, Shakur does not allege that he was coerced into falsely confessing, but rather that he did not make the statements Detective Scarcella attributed to him at all. Moses alleges that Scarcella physically assaulted him in order to coerce him to confess, a fact which is very much in dispute, as the detective to whom Moses confessed has consistently testified that Detective Scarcella was not even present for Moses' confession. In contrast, this plaintiff alleges that Detective Scarcella threatened a non-party witness with arrest and the loss of the custody of her children if she did not falsely inculpate plaintiff. Thus, a simple comparison of the allegations herein with the allegations of the unrelated witnesses shows that the allegations do not approach "near identity." Perez, 325 F.3d at 129. As such, the dissimilarities weigh in favor of preclusion.

Finally, assuming *arguendo* that the instant matter is sufficiently similar to matters concerning the unrelated witnesses, bad act evidence of a sufficiently similar nature is not automatically admissible even where the proponent has articulated some not-for-character purpose. As the Supreme Court held in Huddleston v. United States, the decision to admit evidence under Rule 404(b) depends on "whether the danger of unfair prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." 485 U.S. 681, 688 (1988). Further, "[w]here allegedly prejudicial evidence is admitted solely against one defendant in a multi-defendant trial, the prejudice this might cause to his co-defendants is an appropriate consideration for Rule 403 balancing and may result in the exclusion of such evidence in the joint trial." United States v. Gelzer, 50 F.3d 1133, 1140 (2d Cir. 1995).

The testimony of the three unrelated witnesses should also be precluded because the risk of prejudice to defendant DeLouisa outweighs the probative value of the witnesses' proposed testimony. Detective DeLouisa is likely to suffer prejudice from the admission of this testimony, as a jury may infer that NYPD officers generally have a propensity to force witnesses to testify falsely or that NYPD officers working with Detective Scarcella have a propensity to acquiesce to coercive interrogation techniques. Any of these inferences would be highly prejudicial to defendant DeLouisa, and would substantially outweigh whatever slight probative value the testimony might have.

Thus, for all of the foregoing reasons, the testimony of Vanessa Gathers, Sundhe Moses, and Shabaka Shakur should be precluded at the trial.

## C.   Detective Scarcella Should Not Be Cross-Examined Regarding Purported Prior Judicial Credibility Determinations.

Finally, plaintiff intends to cross-examine Detective Scarcella regarding various purported judicial findings regarding Detective Scarcella's credibility pursuant to FED. R. EVID. 608(b). Specifically, plaintiff wants to cross examine Detective Scarcella regarding judicial credibility determinations in the following cases: (1) People v. Hargrove, Indict. No. 10150-91, 2015 N.Y. Misc. LEXIS 3691 (Sup. Ct. Kings Co., Apr. 14, 2015); and (2) People v. Moses, Indict. No. 13565/1995, 2018 N.Y. Misc. LEXIS 701 (Sup. Ct. Kings Co., Jan. 11, 2018).

Rule 608(b) states that a court "may, on cross-examination," allow a party to inquire into "specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  The Second Circuit has approved of cross-examination based on "prior occasions when his testimony in other cases has been criticized by [a] court as unworthy of belief." United States v. Terry, 702 F.2d 299, 316 (2d Cir. 1983). In determining whether a district court should allow such inquiry, the Second Circuit has set forth many factors that may be considered in determining whether to allow cross examination on prior judicial credibility findings. United States v. Cedeño, 644 F.3d 79, 82-83 (2d Cir. 2011).

However, the Second Circuit's analysis assumes that a judicial determination some or all of a witness's testimony unworthy of belief that has been made. Id. at 82. But no such finding was made in People v. Moses. See 2018 N.Y. Misc. LEXIS 701, at *21-*27. Moreover, the apparent credibility determination in People v. Hargrove is an assertion that Detective Scarcella's testimony was "false, misleading and non-cooperative." 2015 N.Y. Misc. LEXIS 3691, at *18.  But the subsequent explanatory paragraph consists largely of statements that Detective Scarcella failed to recall certain events that took place nearly thirty years before the post-conviction hearing. Id. at *18-*19.

But even if the Court were to find that Hargrove is an unfavorable credibility determination as to Detective Scarcella, then it should still be precluded pursuant to Rule 403. Allowing plaintiff to inquire about this decision would be extremely prejudicial to Detective DeLouisa.  Indeed, since the court's ruling in Hargrove's appears to have been partly based on Detective Scarcella's failure to recall certain events, defendant DeLouisa could be prejudiced by the suggestion that an individual's failure to remember events that occurred so long ago in detail can render their testimony unworthy of belief. The Court should therefore deny, or at a minimum, severely limit, plaintiff's cross-examination regarding the purported judicial determinations.

Defendant DeLouisa thanks the Court for your consideration of this matter.

Respectfully submitted,

s/*Philip R. DePaul*

Philip R. DePaul
Senior Counsel
Special Federal Litigation Division

cc:      All Counsel (by ECF)