LAW OFFICES OF
# MICHAEL S. ROSS
ONE GRAND CENTRAL PLACE
60 EAST 42ND STREET
FORTY-SEVENTH FLOOR
NEW YORK, NY 10165

TELEPHONE
(212) 505-4060
FACSIMILE
(212) 505-4054
E-MAIL
michaelross@rosslaw.org

February 7, 2020

**By ECF**

Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   Hamilton v. City of New York, et al.,
              15-CV-4574 (CBA) (SJB).

Dear Magistrate Judge Bulsara:

    **A.**    **INTRODUCTION.**

    We are professional responsibility counsel to Elefterakis, Elefterakis & Panek (the "EEP Firm"), counsel to plaintiff Derrick Hamilton in the above-captioned case. As the Court is aware, Mr. Hamilton's former counsel, Scott Brettschneider, has asserted a charging lien in this case. We are writing pursuant to the Court's January 17, 2020 and January 30, 2020 Orders, which permitted the parties to respond to Mr. Brettschneider's Motion to Intervene (Doc No. 179) and Petition Under Judiciary Law § 475 to Determine and Enforce Attorney's Lien (Doc. No. 179-1) (the "Petition"). Pursuant to the Court's Orders, we address in this letter only issues related to Mr. Brettschneider's fee request, and not the entitlement of any other law firm to a fee in this case.

    As discussed below, the Petition is deficient because: it contains no financial records reflecting work performed by Mr. Brettschneider; Mr. Brettschneider cannot recover in this proceeding for work performed in connection with Mr. Hamilton's criminal case; and Mr. Brettschneider is not entitled to any fee because he was discharged for cause, violated the Rules of Professional Conduct, and breached his fiduciary obligations to Mr. Hamilton. Mr. Brettschneider engaged in unethical and criminal conduct which tainted Mr. Hamilton's civil case, and he breached his fiduciary duty to Mr. Hamilton by not being truthful about his criminal conduct. Cumulatively, Mr. Brettschneider's misconduct impacted the settlement negotiation process, created downward pressure, and materially decreased the ultimate recovery.

    Recognizing that the Court has discretion in determining whether a breach of fiduciary duty should result in a complete forfeiture, see Louima v. City of New York, 2004 U.S. Dist. LEXIS 13707, at *275 (E.D.N.Y. Jul. 21, 2004), we respectfully submit that this matter should be set for a hearing. Our discussion of the relevant facts below is summary in nature and will be amplified at the hearing.

Law Offices Of
Michael S. Ross

Honorable Sanket J. Bulsara
February 7, 2020
Page 2

### B. THE RELEVANT FACTS.

On March 12, 2015, Mr. Hamilton retained Mr. Brettschneider, Edelstein & Grossman, and Novo Law Firm, P.C., to file the underlying lawsuit, pursuant to 42 U.S.C. § 1983, against the City of New York and other defendants. In December 2017, Mr. Hamilton retained the EEP Firm and discharged the Edelstein and Novo firms. At that time, Mr. Hamilton did not discharge Mr. Brettschneider; however, Mr. Brettschneider performed no further work on the case. When the EEP Firm was retained, the City was offering $1.75 million to settle Mr. Hamilton's case. As a result of the EEP Firm's excellent advocacy, the case was ultimately settled for $7 million – *four times* the settlement offer amount obtained by prior counsel. Contrary to Mr. Brettschneider's completely unsupported assertion in his Petition (at ¶ 16), Mr. Brettschneider *did not* "perform[] the majority of Plaintiff's legal work in the case at bar." He conducted approximately ten imperfect depositions, attended approximately seven court conferences, and was not involved in any motion practice. In fact, much of the work on this case was performed by attorneys at the EEP Firm, who worked in excess of 1,600 hours on this case between December 2017 and November 2019.

Regrettably, one of the EEP Firm's most difficult challenges in the case was overcoming the problems created by the illegal conduct of Mr. Brettschneider. On March 13, 2018, Mr. Brettschneider and two of his co-conspirators were indicted in this Court based upon a brazen scheme orchestrated by Mr. Brettschneider to perpetrate a fraud upon this Court in connection with a criminal sentencing of one of his clients. In his Petition (at ¶ 23), Mr. Brettschneider's counsel claims that "[t]he charges against Mr. Brettschneider had nothing to do with his representation of Hamilton." This statement is far divorced from truth and reality. Mr. Brettschneider was charged, *before the very same Judge hearing Mr. Hamilton's civil rights case*, with lying to the Court to help a client avoid jailtime and was secretly recorded discussing his plan to *procure false testimony for use in wrongful conviction litigation*. United States v. Brettschneider, et al., 18-CR-123 (E.D.N.Y.) (CBA), Doc. No. 240 (Government's sentencing memorandum). Mr. Hamilton's case also turned on recantation testimony of a witness. Accordingly, Mr. Brettschneider's misconduct cast a shadow and downward pressure over the settlement discussions in this case – i.e., because of the lingering suspicion that Mr. Hamilton's exoneration was the result of false recantation testimony procured by his counsel. Mr. Brettschneider's criminal conduct, lack of credibility, and the resulting large volume of negative press subsequently infected and prejudiced Mr. Hamilton's case – and we will demonstrate these facts at a hearing on this matter.

### C. MR. BRETTSCHNEIDER IS NOT ENTITLED TO A FEE.

*First*, Mr. Brettschneider's Petition is not supported by any time or work records and, as a matter of law, is insufficient to warrant any *quantum meruit* award of attorney fees. See Heller v. Emanuel, 460 F. Appx. 48, 50 (2d Cir. 2012) (affirming denial of fee award to disbarred attorney who made conclusory assertions in support of his *quantum meruit* application, such as that he was a "preeminent, superbly qualified, maritime lawyer" who "expended an incredible amount of effort and funds," and "laid the entire groundwork for [the] settlement"). Mr. Brettschneider's Petition does not attach any time or work records and renders it impossible to determine how much time

Law Offices Of
Michael S. Ross

Honorable Sanket J. Bulsara
February 7, 2020
Page 3

he actually spent performing work on Mr. Hamilton's civil rights matter (indeed, much of the Petition is devoted to work supposedly performed in the criminal case). No meaningful *quantum meruit* calculation could be performed based on the Petition and the single attached e-mail.

*Second*, Mr. Brettschneider cannot recover for work performed by him in connection with Mr. Hamilton's criminal case (as opposed to this civil rights case). The Petition asserts that Mr. Brettschneider assisted Mr. Hamilton in various respects in connection with Mr. Hamilton's underlying criminal case. (See Petition ¶¶ 1-8.) Even assuming the accuracy of Mr. Brettschneider's description of the work performed by him in connection with the criminal matter, none of that work factors into a *quantum meruit* calculation in connection with his entitlement to a legal fee in *this* civil rights action. A charging lien pursuant to Judiciary Law § 475 "by definition attaches only to the proceeds obtained as a result of the action." Sequa Corp. v. Gbj Corp., 156 F.3d 136, 149 (2d Cir. 1998). Mr. Brettschneider therefore cannot attach to the *quantum meruit* calculation legal fees he may have earned in the criminal case – fees which are not "proceeds obtained as a result" of this civil rights action. In addition: 1) Mr. Brettschneider has either already been paid for his work in the criminal matter, by way of an 18B assignment or otherwise, or chose to perform the work on a *pro bono* basis; 2) Mr. Brettschneider did not, at that time, have a retainer agreement with Mr. Hamilton with respect to the civil rights case, as required by 22 N.Y.C.R.R § 1215.1; and 3) contingent fees are absolutely prohibited in criminal cases by Rule 1.5(d)(1) of the New York Rules of Professional Conduct ("NYRPC"). To be clear, we are not disputing that Mr. Brettschneider provided services to Mr. Hamilton in the criminal case. The law is quite clear, however, that if Mr. Brettschneider had believed that he was representing Mr. Hamilton in connection with a civil rights case, he would have had to obtain a retainer agreement with respect to that case. A lawyer who serves as criminal counsel and is paid for their services cannot later turn back the clock and seek compensation for the collateral benefits to a future civil case.

*Third*, at the hearing, we will demonstrate that Mr. Brettschneider was discharged *for cause* because his misconduct cast a shadow over Mr. Hamilton's case – i.e., suspicion that his exoneration was the result of false recantation testimony procured by his counsel. Just cause exists for discharge where, as here, the discharged attorney has committed a "a significant breach of a legally or ethically imposed duty," such as "indulging in some sort of unprofessional conduct while handling the client's affairs" and/or where the discharged attorney's conduct resulted in "loss of the client's trust and confidence." Holcombe v. U.S. Airways Group, Inc., 2017 U.S. Dist. LEXIS 214656, at *31 (E.D.N.Y. Jul. 31, 2017); Garcia v. Teitler, 443 F.3d 202, 212 (2d Cir. 2006) (conflict of interest warrants discharge for cause). "If a lawyer is discharged for cause, he or she is not entitled to legal fees." 2017 U.S. Dist. LEXIS 214656, at *30. "Unlike the analysis in a subsequent malpractice action, the 'for cause' inquiry simply asks whether the client was justified in terminating the attorney-client relationship." D'Jamoos v. Griffith, 2006 U.S. Dist. LEXIS 50757, at *12 (E.D.N.Y. Jul. 25, 2006). There is no doubt here that Mr. Hamilton was "justified in terminating the attorney-client relationship" in light of the significant downward pressure on this case as a result of Mr. Brettschneider's criminal conduct. At the time he was discharged, Mr. Brettschneider was on trial and days away from being convicted of perpetrating a fraud upon the very Court in which Mr. Hamilton was seeking relief. Mr. Hamilton did not discharge Mr.

LAW OFFICES OF
MICHAEL S. ROSS

Honorable Sanket J. Bulsara
February 7, 2020
Page 4

Brettschneider because of "a disagreement on strategy or conflict in personality," D'Jamoos, 2006 U.S. Dist. LEXIS 50757, at *29, but because of Mr. Brettschneider's unethical and criminal conduct, which tainted the case. In any event, the records will demonstrate that Mr. Brettschneider did not perform any substantive work on the case subsequent to the EEP Firm's retention.

 *Fourth*, and separately, Mr. Brettschneider breached his fundamental fiduciary obligations to Mr. Hamilton – which is an independent basis warranting fee forfeiture. Separate from the principle of "discharge for cause," in New York, "'[i]t is well settled that an attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered.'" Food Mgt. Group, LLC, 2008 Bankr. LEXIS 4587, at *38. Mr. Hamilton understood that the prosecution of Mr. Brettschneider was initiated by federal prosecutors who likely had more than sufficient evidence to demonstrate that he had been involved in corrupting witnesses. Under the circumstances, Mr. Brettschneider had an obligation pursuant to NYRPC 1.4(b) to advise Mr. Hamilton that he (Mr. Brettschneider) was involved in bribery and criminal activity which could, *and ultimately did*, impact on Mr. Hamilton's case. See, e.g., NYRPC 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); In re Spatola, 196 Misc. 2d 666 (N.Y. Sur. Ct. 2003) ("when an attorney deliberately fails to disclose to a client critical information, it weakens that trust and confidence and erodes the relationship to the point that the client, indeed, has cause to discharge the attorney"); Louima v. City of New York, 2004 U.S. Dist. LEXIS 13707, at *60 (E.D.N.Y. Jul. 21, 2004), aff'd sub nom., Roper-Simpson v. Scheck, 163 F. Appx. 70 (2d Cir. 2006) (affirming reduction in legal fee); C. Wolfram, *Lawyers' Ethics in an Adversary System: A Cautionary Tale: Fiduciary Breach as Legal Malpractice*, 34 Hofstra L. Rev. 689, 702 (2006) ("a central purpose of the remedy of fee forfeiture is to provide deterrence by depriving the lawyer of any gain related to the wrongdoing and to protect the relationship of trust and confidence between clients and lawyers, purposes whose salience does not depend on whether the client was harmed").

 As one court explained, "a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect…. This is a sensitive and 'inflexible' rule of fidelity, barring not only blatant self-dealing, but also *requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts* with the interest of those owed a fiduciary duty." Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466 (1989) (emphasis added). As a fiduciary, Mr. Brettschneider could not ethically have undertaken, or continued, to represent Mr. Hamilton in this case because he knew his personal criminal conduct could likely prejudice this case if it was ever uncovered, and he concealed those facts. NYRPC 1.7(a)(2) (personal interest conflicts); Jay Deitz & Assoc. of Nassau County, Ltd. v. Breslow & Walker, LLP, 153 A.D.3d 503, 505 (N.Y. App. Div. 2d Dept. 2017) ("A lawyer is strictly forbidden from undertaking a representation where the lawyer possesses a personal … or financial interest at odds with that of his or her client").

 Mr. Brettschneider notes in his Petition (at ¶¶ 21-27) that, following his March 13, 2018 indictment, he was not discharged until April 3, 2019, in the midst of his trial. The fact that Mr. Brettschneider was not immediately fired by Mr. Hamilton is understandable. Initially, Mr. Brettschneider represented that the allegations against him were false and would promptly be

Honorable Sanket J. Bulsara
February 7, 2020
Page 5

dismissed, which he knew was false. Thus, Mr. Brettschneider also violated NYRPC 8.4(c) and his duties to his co-counsel by grossly mischaracterizing the evidence that could be produced to establish his guilt. Co-counsel urged him to consider withdrawing, but Mr. Brettschneider's position was that this was an unfair and factually unwarranted prosecution and that, because of that fact and facts which would come out during discovery, no decision should be made to discharge him at that time. Mr. Brettschneider claimed, in essence, that the prosecution was retribution for having zealously advocated on behalf of criminal defendants.

Mr. Brettschneider's continued involvement cast a shadow and downward pressure on the settlement discussions in Mr. Hamilton's case and resulted in a lower settlement. At a hearing, we will introduce evidence that the work performed by the EEP Firm was multiplied because of the shadow of corruption, albeit untrue as to Mr. Hamilton, in light of the indictment against Mr. Brettschneider. For example, Det. Scarcella's summary judgment motion in this case raised the issue of Mr. Brettschneider's arrest and argued that: Mr. Brettschneider's scheme bore "disturbing resemblance to this case (e.g., a murder witness recants her trial testimony and accuses the police of coercing her to lie by threatening to lock her up)"; "Brettschneider and his co-conspirator actually proceeded to carry out this scheme in late 2014 and early 2015 – around the same time that Brettschneider and his then co-counsel were filing wrongful conviction claims on behalf of Hamilton"; "Brettschneider's co-conspirator orchestrated numerous other similar schemes to bribe and intimidate witnesses 'to thwart prosecution and obtain postconviction relief' (which would of course then be followed by the filing of 'slam dunk' multimillion dollar wrongful conviction lawsuits)." (Doc. No. 91, p. 6)

In another example of downward pressure, Det. Scarcella's attorneys sought to make Mr. Brettschneider a witness, arguing that "there is good cause to re-open discovery to allow the parties to take limited but essential discovery concerning Brettschneider's involvement in these witness bribery/false recantation schemes and any links to this case." (Doc. No. 91, p. 6 n.2) Pursuant to NYRPC 3.7, an attorney "shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact…." Presumably, Mr. Hamilton could have elected to continue with Mr. Brettschneider pre-trial had Mr. Brettschneider advised him of the personal interest conflict. NYRPC 1.7(a)(2). However, that would have required Mr. Brettschneider to disclose the conflict to Mr. Hamilton and to obtain a written conflict waiver.

### D. CONCLUSION.

In sum, our discussion above demonstrates why Mr. Brettschneider's Petition lacks merit.

Respectfully submitted,

/s/Michael S. Ross
Michael S. Ross

/s/Eugene Gormakh
Eugene Gormakh