UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SCOTT BRETTSCHNEIDER, NOVO LAW FIRM,
P.C., ELEFTERAKIS, ELEFTERAKIS & PANEK,
EDELSTEIN & GROSSMAN,

**REPORT &**
Movants,                    **RECOMMENDATION**
15-CV-4574-CBA-SJB

DERRICK HAMILTON,

Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, DET. LOUIS
SCARCELLA, individually and in his capacity as
a New York City police officer; DET. FRANK
DeLOUISA, individually and in his capacity as a
New York City police officer, INV. JOSEPH
PONZI, individually and in his capacity as an
Investigator for the Kings County District
Attorney's office, JOHN/JANE DOE NOS. 1
through 10, being unknown employees of the
City of New York, THE CITY OF NEW HAVEN,
POLICE OFFICER BILLY WHITE, individually
and in his capacity as a New Haven police officer,
and JOHN/JANE DOE NOS. 11 through 20, being
unknown employees of the City of New Haven,

Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

The parties settled and stipulated to dismiss this civil rights action in November

2019. The attorneys that represented Plaintiff Derrick Hamilton ("Hamilton") now seek

resolution of their entitlement to fees from the settlement proceeds to be paid by

Defendants. Hamilton's current counsel—the firm of Elefterakis, Elefterakis & Panek—

contends that prior counsel—attorneys Ilya Novofastovsky and Scott Brettschneider—

are not entitled to any fees after both being discharged for cause: one after being

convicted of a felony and the other following violations of the New York Rules of

Professional Conduct.  In this now-closed case, the Court does not have subject-matter

jurisdiction over the state law claims that are the basis for involving the Court in this fee

dispute; furthermore, even if jurisdiction existed, the motions to intervene filed by

Hamilton's prior counsel are untimely and should be denied.  As such, the Court

respectfully recommends that the pending motions be denied and the claims be

dismissed without prejudice so that counsel may resolve their disputes in the

appropriate non-federal forum.

<u>BACKGROUND</u>

Hamilton commenced this civil rights action on August 5, 2015.  (*See* Compl.

dated Aug. 5, 2015, Dkt. No. 1).  At the time, he was represented by attorneys Jonathan

I. Edelstein of Edelstein & Grossman, Ilya Novofastovsky ("Novofastovsky") of the Novo

Law Firm, P.C. ("Novo"), and Scott Brettschneider ("Brettschneider").  (*Id*. at 32–33).[1]

Hamilton executed a joint-retainer agreement with these attorneys.  (Retainer

Agreement between Hamilton and Edelstein & Grossman, Novo, and Brettschneider

dated Mar. 12, 2015, attached as Ex. 1 to Letter dated July 16, 2020, Dkt. No. 198).

Brettschneider states that pursuant to this retainer agreement, he was entitled to

7.78% of any recovery by Hamilton.  (*See* Brettschneider's Letter dated Aug. 14, 2020

("Brettschneider's Aug. 14 Br."), Dkt. No. 201 at 1).  At some point, Brettschneider's

---

[1] Although Edelstein & Grossman filed a response to the pending motions, (Edelstein & Grossman's Resp. dated Feb. 7, 2020, Dkt. No. 186), any issues related to Edelstein & Grossman and its fee entitlement were resolved by stipulation of the parties and are no longer at issue.  Pursuant to the stipulation, Edelstein & Grossman receives $200,000 of the settlement.  Elefterakis, Elefterakis & Panek, Novo, and Brettschneider all agreed that any fees they may be entitled to will be distributed from the $2.1 million remaining.  (Stip. dated Mar. 23, 2020, Dkt. No. 194 at 1–2).

arrangement with Hamilton and the other attorneys apparently entitled him to a greater fee award of 10% of Hamilton's recovery. (*See id.* at 1–2; *see also* Novo's Resp. to Brettschneider's Mot. to Intervene dated Feb. 7, 2020 ("Novo's Br."), Dkt. No. 188 at 1 n.1 ("[Edelstein & Grossman] later agreed to allocate an additional 2% of its fee to Mr. Brettschneider, such that . . . Mr. Brettschneider received 9.78%.")).

While Novofastovsky appeared at Court conferences in the case, he never filed a notice of appearance despite multiple Court orders to do so; in fact, Novofastovsky was never admitted to practice in this District. (*See* Min. Entry dated Dec. 16, 2015 (noting Novofastovsky appeared at initial conference); Order dated Feb. 12, 2016 ("Ilya Novofastovsky was ordered to file a notice of appearance during the 12/16/2015 conference but has failed to do so. If Plaintiff's counsel fails to file the notice of appearance as required, she will not be permitted to represent Plaintiff."); Scheduling Order dated Dec. 6, 2016, Dkt. No. 56 ("Ilya Novo Fastovsky may only participate in this case if and when he is admitted to practice in the Eastern District of New York and filed a notice of appearance.")).

On December 18, 2017, Hamilton retained Baree N. Fett and Gabriel P. Harvis of Harvis & Fett LLP ("Harvis & Fett"), and the Novo and Edelstein & Grossman firms were substituted out from the case on consent; Brettschneider remained in the case. (Retainer Agreement between Hamilton and Harvis & Fett dated Dec. 18, 2017, attached as Ex. 2 to Letter dated July 16, 2020, Dkt. No. 198; Notice of Consent to Change Att'y dated Dec. 22, 2017, Dkt. No. 76 at 1 ("Mr. Hamilton has discharged the Edelstein & Grossman and Novo law firms. Mr. Brettschneider will continue his representation of Mr. Hamilton." (footnote omitted)). Novofastovsky still had not filed a notice of

appearance when the parties informed the Court that Novo was no longer counsel for Hamilton.

Harvis & Fett later merged with Elefterakis, Elefterakis & Panek ("EEP"), (*see* Letter dated July 2, 2018, Dkt. No. 102; Notice of Change of Address dated July 2, 2018, Dkt. No. 100; Notice of Change of Address dated July 2, 2018, Dkt. No. 101), and Hamilton executed a retainer agreement with EEP, (Legal Services Contingent Fee Agreement Between Hamilton and EEP dated Aug. 6, 2018, attached as Ex. 3 to Letter dated July 16, 2020, Dkt. No. 198).

The current motions involve, in part, the circumstances of Brettschneider's status as counsel in the midst of these various additions and substitutions of counsel. Brettschneider argues he continued as co-counsel with Harvis & Fett until he was relieved as counsel upon commencement of his trial on a federal grand jury indictment in April 2019. (Brettschneider's Aug. 14 Br. at 2 ("Mr. Brettschneider was discharged from the case at bar on or about April 3, 2019."); Brettschneider's Mot. to Intervene and Resp. to Pl.'s Letter Mot. dated Jan. 17, 2020 ("Brettschneider's Mot. to Intervene"), Dkt. No. 179 at 2; *see also* EEP's Resp. to Brettschneider's Mot. to Intervene dated Feb. 7, 2020 ("EEP's Feb. 7 Br."), Dkt. No. 187 at 4–5 ("[F]ollowing his March 13, 2018 indictment, [Brettschneider] was not discharged until April 3, 2019, in the midst of his trial.")); Min. Entry, *United States v. Brettschneider*, No. 18-CR-123 (E.D.N.Y. Apr. 5, 2019), Dkt. No. 197 ("Criminal Trial Min. Entry").[2] Brettschneider was subsequently

_____

[2] Brettschneider did not appear for a Court conference, nor file anything on the docket on behalf of Hamilton, after January 31, 2018, just over a month before he was indicted. (Min. Entry dated Jan. 31, 2018 (noting Brettschneider's appearance at a pre-motion conference); Indictment, *Brettschneider*, No. 18-CR-123 (E.D.N.Y. Mar. 13, 2018), Dkt. No. 1.

convicted by a jury in a trial before the Honorable Carol Bagley Amon for conspiracy to make false statements and making false statements. (Criminal Trial Min. Entry ("Jury Charged. Guilty Verdicts on Count(s) 1 & 2."); Second Am. J. as to Scott Brettschneider at 1, *Brettschneider*, No. 18-CR-123 (E.D.N.Y. July 29, 2019), Dkt. No. 262).[3]

Back in this civil case, after years of litigation, and on the eve of trial, all of the parties informed the Court that they had resolved the case after Judge Amon discussed settlement with them. (*See* Min. Entry & Order dated Oct. 30, 2019; Min. Entry & Order dated Nov. 1, 2019; *see also* Letter from James N. Tallberg dated Nov. 7, 2019, Dkt. No. 174 at 1 ("On behalf of defendants City of New Haven and Billy White, this will confirm that both have accepted the Court's recommended settlement of the above action.")).

The parties filed a stipulation of dismissal, (Stip. & Order of Dismissal dated Nov. 15, 2019 ("Stip. of Dismissal"), Dkt. No. 175), that the Court so-ordered on November 19, 2019, (Stip. & Order of Dismissal dated Nov. 19, 2019, Dkt. No. 176). The terms of the stipulation were as follows:

> WHEREAS, all of the parties in the above-captioned action have reached a settlement agreement and now desire to resolve all issues that were raised or that could have been raised in this litigation, without further proceedings and without admitting any fault or liability;
>
> NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that
>
> 1. The above-referenced action is hereby dismissed in its entirety with prejudice; and

---

[3] "Brettschneider was convicted following a jury trial with making and conspiring to make a false statement to the Bureau of Prisons ('BOP') . . . to submit a false letter to the" BOP on behalf of a client in a criminal case "in an effort to get him admitted into the Residential Drug Abuse Program . . . and reduce his sentence." Government's Sentencing Mem. at 1, *Brettschneider*, No. 18-CR-123 (E.D.N.Y. July 19, 2019), Dkt. No. 240.

> 2. Notwithstanding the dismissal of this action in accordance with prejudice and with this agreement, the District Court shall continue to retain jurisdiction over this action for the purpose of enforcing the terms of the settlement agreement reached between and among the parties and set forth in the Stipulation of Settlement executed by the parties in this matter.

(Stip. of Dismissal at 1–2 (emphasis omitted)). The stipulation was filed and signed by counsel for Defendants City of New York (the "City"), the New York City Police Department, Inv. Joseph Ponzi, and Det. Frank DeLouisa. (*Id.* at 2). Gabriel P. Harvis of EEP signed the stipulation on behalf of Hamilton, as did counsel for Defendant Det. Louis Scarcella and counsel for Defendants City of New Haven and Police Officer Billy White. (*Id.*). In other words, counsel for all parties signed the stipulation of dismissal, (*id.*), and then Judge Amon signed and so-ordered the stipulation, (Stip. & Order of Dismissal dated Nov. 19, 2019, Dkt. No. 176 at 2). The case was closed by the Clerk of Court on November 19, 2019.

On January 13, 2020, EEP moved pursuant to New York Judiciary Law Sections 90(4)(a) and (e) and 475 and N.Y.C.R.R. Section 1240.15(g) for an order resolving the dispute between EEP and Brettschneider about fees and compelling the City to release the settlement funds. (EEP's Mot. for Attorney Fees dated Jan. 13, 2020 ("EEP's Mot."), Dkt. No. 177). Judge Amon referred the matter to the undersigned for a report and recommendation. (Order Referring Mot. dated Jan. 15, 2020).

On January 17, 2020, Brettschneider filed a motion to intervene, pursuant to Federal Rule of Civil Procedure 24, and a petition, pursuant to New York Judiciary Law Section 475, to assert and enforce an attorney's lien he claimed over the settlement proceeds. (Brettschneider's Mot. to Intervene at 1; Brettschneider's Pet. Under Judiciary Law § 475 to Determine & Enforce Att'y's Lien dated Jan. 17, 2020

("Brettschneider's Pet."), attached as Ex. 1 to Brettschneider's Mot. to Intervene, Dkt. No. 179).

Thereafter, the Court set a briefing schedule for resolution of the motions. (Scheduling Order dated Jan. 17, 2020). EEP sought a pre-motion conference, arguing that the City, which was holding settlement funds pending certification that all liens were discharged, should release the settlement funds to EEP so that the undisputed funds could be distributed to Hamilton while the Court determined the issues related to any liens. (Mot. for Pre-Mot. Conference dated Jan. 28, 2020, Dkt. No. 183). The Court resolved the pre-motion conference motion by scheduling a hearing for March 5, 2020. (Order dated Jan. 30, 2020).

EEP filed a brief arguing that Brettschneider's criminal conviction forecloses fee recovery: "Mr. Brettschneider cannot recover in this proceeding for work performed in connection with Mr. Hamilton's criminal case; and Mr. Brettschneider is not entitled to any fee because he was discharged for cause, violated the Rules of Professional Conduct, and breached his fiduciary obligations to Mr. Hamilton." (EEP's Feb. 7 Br. at 1).

Novo filed a brief requesting a fee award based either on a one-third contingency or its work in the case, and reimbursement of expert witness disbursements, arguing it was never terminated as counsel. (Novo's Br. at 5).[4] EEP replied to Novo's brief and argued that Novo is not entitled to any fees because it was discharged for cause and Novofastovsky violated the New York Rules of Professional Conduct and aided

---

[4] What exactly Novo believes it is entitled to is not the picture of clarity. In its five-page brief, it asks for a "one-third contingency fee," (Novo's Br. at 5); while simultaneously insinuating that, as outgoing counsel, it is entitled to a proportionate share based on the work it did, (*id.* at 2); and also claiming an agreement among the different law firms that entitled Novo to 10% of Hamilton's net recovery, (*id.* at 1 & n.1).

Brettschneider's criminal conduct, in addition to other violations. (EEP's Reply to Novo's Br. dated Feb. 21, 2020 ("EEP's Reply to Novo"), Dkt. No. 190).

Brettschneider replied to EEP's brief on February 21, 2020, arguing that he is entitled to fees under a *quantum meruit* theory and that he was not discharged for cause, and defending himself against EEP's claims that he violated New York's professional conduct rules. (Brettschneider's Reply to EEP's Feb. 7 Br. dated Feb. 21, 2020 ("Brettschneider's Reply to EEP"), Dkt. No. 191).[5] Then, on July 15, 2020, Brettschneider filed a motion for leave to supplement his motions with an affidavit from Hamilton. (Brettschneider's Mot. to Suppl., Dkt. No. 196 at 1). According to Hamilton, Brettschneider was not discharged for cause, and "it was never [his] intention that [his] new attorneys not honor the fee arrangement [Hamilton] had with Mr. Brettschneider." (*See* Aff. of Derrick Hamilton dated June 25, 2020 ("Hamilton Aff."), attached to Brettschneider's Mot. to Suppl., Dkt. No. 196 ¶ 5 (emphasis omitted)).[6]

The Court provided an opportunity for the parties to submit briefs explaining why the Court has subject-matter jurisdiction over the fee dispute that is the subject of the various motions. (Order dated Aug. 6, 2020). Brettschneider, EEP, and Novo each filed submissions. (Brettschneider's Aug. 14 Br.; EEP's Letter dated Aug. 14, 2020 ("EEP's Aug. 14 Br."), Dkt. No. 201; Novo's Letter dated Aug. 14, 2020 ("Nov's Aug. 14

---

[5] Brettschneider also filed an eight-page, single-spaced adjournment request, which the Court struck from the docket, as in violation of the Court's scheduling order, (Order dated Mar. 26, 2020).

[6] EEP moved to strike the filing as inconsistent with the Court's briefing schedule. (Mot. to Strike dated July 16, 2020, Dkt. No. 199). The Court prohibited further filings without leave of the Court. (Order dated July 17, 2020). Novo filed a motion for leave to supplement its submission on July 12, 2020, which remains pending as of the date of this Report and Recommendation. (Letter Mot. for Leave to File Document dated July 21, 2020 ("Novo's Mot. for Leave"), Dkt. No. 200). Those motions are hereby denied.

Br."), Dkt. No. 203; EEP's Letter dated Aug. 20, 2020 ("EEP's Aug. 20 Resp."), Dkt. No.

204; Brettschneider's Letter dated Aug. 20, 2020 ("Brettschneider's Aug. 20 Resp."),

Dkt. No. 205; Novo's Letter dated Aug. 21, 2020 ("Novo's Aug. 21 Br."), Dkt. No. 206).[7]

## DISCUSSION

The pending motions—namely EEP's motion for an order determining attorney's

fees, Brettschneider's motion to intervene and petition to determine and enforce an

attorney's lien, and Novo's motion for attorney's fees—should be denied because: (1) the

Court lacks ancillary jurisdiction to hear the dispute; (2) there is no supplemental

subject-matter jurisdiction; and (3) the motions to intervene are untimely, having been

filed after the stipulation of dismissal was signed.  In addition, it is respectfully

recommended that the motion to compel the City to release the settlement funds be

denied because EEP has provided no evidence of a breach of the settlement agreement.

I.  Subject-Matter Jurisdiction

"[I]t remains a 'fundamental precept' that 'federal courts are courts of limited

jurisdiction' and '[t]he limits upon federal jurisdiction, whether imposed by the

Constitution or by Congress, must be neither disregarded nor evaded.'"  *United States ex*

*rel. Hanks v. United States*, 961 F.3d 131, 137 (2d Cir. 2020) (second alteration in

original) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).  As

such, courts "first must resolve . . . threshold questions concerning [their] subject matter

jurisdiction."  *F5 Cap. v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017).  "Federal courts have a

duty to inquire into their subject matter jurisdiction sua sponte, even when the parties

---

[7] In briefing the issue, Novo concedes this Court does not have jurisdiction over
the dispute, (Novo's Aug. 14 Br. at 1; Novo's Aug. 21 Br. at 1), effectively withdrawing its
motion for a fee determination.

do not contest the issue." *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 756 F.3d
151, 161 (2d Cir. 2014); *Fontana v. Republic of Argentina*, 962 F.3d 667, 672 (2d Cir.
2020) ("Although the parties . . . focused on the merits of Gleizer's [New York Judiciary
Law] § 475 claim, 'we proceed, as we must, first to determine issues of subject matter
jurisdiction.'" (quoting *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 137 (2d Cir.
2012)).

      The dispute regarding fees among Hamilton's attorneys can only be heard if
(A) the dispute is within the Court's ancillary jurisdiction, which survives dismissal; or
(B) there is a basis to reopen the case and there is supplemental jurisdiction over the
attorneys' state law claims.  Neither avenue is available.

   A. <u>Ancillary Jurisdiction.</u>

      "[T]he doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction
over some matters (otherwise beyond their competence) that are incidental to other
matters properly before them."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.
375, 378 (1994).  Such ancillary jurisdiction allows "'a federal court [to] consider
collateral issues after an action is no longer pending,' including motions for costs,
attorney's fees, contempt sanctions, and Rule 11 sanctions because they are 'not a
judgment on the merits of an action.'"  *Schlaifer Nance & Co. v. Estate of Warhol*, 194
F.3d 323, 333 (2d Cir. 1999) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,
395–96 (1990)).  And such jurisdiction may be exercised post-dismissal.  *See, e.g.*,
*Kaplan v. Reed Smith LLP*, 919 F.3d 154, 157–58 (2d Cir. 2019) (per curiam) (holding
district court "had ancillary jurisdiction over [a] motion to stay" a state proceeding
implicating the district court's prior order regarding class counsel's fees, which was filed
post-judgment, as a function of "its power to effectuate its decrees").

Ancillary jurisdiction should not be confused with supplemental jurisdiction, which is codified in 28 U.S.C. § 1367. Cases discussing supplemental jurisdiction sometimes refer to ancillary jurisdiction, but that is a vestige of cases decided prior to the enactment of Section 1367. Such references are properly understood as dealing with supplemental jurisdiction (also referred to as "pendent" jurisdiction). 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3523.2 (3d ed. 2020). The ancillary jurisdiction that is available to a federal court post-dismissal is distinct: ancillary jurisdiction is not "supplemental jurisdiction over *claims* asserted in federal court but . . . jurisdiction over related *proceedings* that are technically separate from the initial case that invoked federal subject matter jurisdiction. This form of jurisdiction developed in case law as 'ancillary' or 'ancillary enforcement' jurisdiction." *Id.* The modern supplemental jurisdiction codified under Section 1367 "does not apply to this form of [ancillary] jurisdiction." *Id.* (footnote omitted); *see Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 351 (E.D.N.Y. 2014) ("Ancillary jurisdiction is, of course, a well-recognized exception to a district court's limited subject matter jurisdiction.").

"Ancillary jurisdiction, however, is a relatively limited source of jurisdiction." *Keepseagle v. Vilsack*, No. 99-CV-3119, 2014 WL 11816917, at *3 (D.D.C. July 14, 2014) (citing *Kokkonen*, 511 U.S. at 379–80). In *Kokkonen*, the Supreme Court

> found that jurisdiction to maintain ancillary proceedings may be exercised "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 128 (2d Cir. 2007) (alteration in original) (quoting *Kokkonen*, 511 U.S. at 379–80).

"The most common exercise of ancillary jurisdiction is, probably, to resolve fee disputes between a party and its attorney arising in litigation in which the attorney represented the party." *Stein v. KPMG, LLP*, 486 F.3d 753, 760 (2d Cir. 2007); *see also Kaplan*, 919 F.3d at 157 ("Where a district court has original jurisdiction over a civil action, 'it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees.'" (quoting *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d Cir. 2003)); *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 65 (2d Cir. 1991) ("As a general rule, . . . a federal court's ancillary jurisdiction to resolve fee disputes 'extends to disputes that arise after the initial litigation is no longer before the court.'" (quoting *In re Rosenman Colin Freund Lewis & Cohen*, 600 F. Supp. 527, 531 (S.D.N.Y. 1984)).

But only certain fee disputes are "factually interdependent" with the claims over which the Court had original jurisdiction or necessary "to manage its proceedings, vindicate its authority, and effectuate its decrees." *See Kokkonen*, 511 U.S. at 379–80. Cases involving the exercise of ancillary jurisdiction for a fee dispute usually involve at least one party to the litigation, *i.e.* the dispute is between a party and his or her attorney about the fees to be paid. *See, e.g.*, *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988) (holding district court did not abuse its discretion in exercising ancillary jurisdiction over fee dispute between defense counsel and defendant); *Austrian & German Bank*, 317 F.3d at 96–97, 100 (holding district court

had "ancillary jurisdiction to consider the fee forfeiture petition" of a class action

plaintiff seeking to block attorney's fee distribution to class counsel).  That is because

> [w]hen a court undertakes to resolve claims arising from a relationship
> between a party to an action and the party's attorney in that action and
> involving the attorney's conduct of that litigation, the parties to the ancillary
> proceeding are already before the court as a litigant and officer of the court;
> the relevant facts are generally more accessible to that court than to
> another; and the ability of the court to conduct and dispose of the
> underlying litigation may turn on, or at least be greatly facilitated by,
> resolution of the issues raised in the ancillary proceeding.

*Stein*, 486 F.3d at 760.  In contrast,

> when a non-party to the primary proceeding is sought to be joined as a
> defendant in the ancillary proceeding, the need for the ancillary proceeding
> and the efficiencies provided by it must be both sufficiently great to
> outweigh the prejudice to the non-party and to be consistent with the
> limited jurisdiction of federal courts.

*Id.* at 760–61.

"[T]he assertion of ancillary jurisdiction over matters that are otherwise outside

the jurisdiction conferred by the Constitution and the Congress can be justified only by

compelling needs arising in the exercise of the jurisdiction that is conferred."  *Id.* at 761;

*cf. Austrian & German Bank*, 317 F.3d at 98 n.9 ("We do not suggest . . . that ancillary

jurisdiction is available for every claim against an attorney who has practiced in a

federal court.").

> [S]everal non-exhaustive factors can weigh in favor of exercising ancillary
> jurisdiction.  These include:  (1) familiarity with the subject matter of the
> suit, especially with the amount and quality of work performed by the
> attorneys; (2) a court's responsibility to protect officers of the court in such
> matters as fee disputes; (3) the convenience of the parties; and (4) judicial
> economy.

*Levitt v. Brooks*, 669 F.3d 100, 104 (2d Cir. 2012) (per curiam).  Such "requisite

compelling circumstances will be *rare*, as the need for such a proceeding generally will

be far less pressing than in cases involving parties already before the court."  *Stein*, 486

F.3d at 761 (emphasis added).  And attorneys are not parties to the cases they litigate, *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977) (per curiam) ("The instant dispute involves two attorneys, neither of whom was a 'party' to the primary litigation[.]"), so a dispute *among* attorneys exclusively is necessarily a dispute among non-parties.

Where fee disputes involving non-parties have fallen within ancillary jurisdiction, courts have retained some explicit power to determine fees; for example, "cases [where] the court may be supervising the distribution of a settlement fund," *Chesley*, 927 F.2d at 65 (citing *Grimes*, 565 F.2d at 843–44; *In re Kamerman*, 278 F.2d 411 (2d Cir. 1960)). In others, there has been some other explicit basis for the Court's hearing of a fee dispute among attorneys, like a Local Rule.  *See, e.g.*, *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84 (2d Cir. 2010) (affirming district court's apportionment of fees under Local Civil Rule 83.2, which governs dismissal and fees in cases on behalf of infants or incompetents that settle).  In such instances, "the fee issue [is] so closely related to the underlying litigation." *Austrian & German Bank*, 317 F.3d at 98 n.9.

In *Grimes* itself, for example, the Second Circuit affirmed the District Court's exercise of ancillary jurisdiction over a "dispute involv[ing] two attorneys, neither of whom was a 'party' to the primary litigation," regarding the distribution of funds from a court-approved settlement because the funds were deposited in the court's registry and the court had agreed to supervise the distribution of the funds; "distribution of the Grimes settlement funds and [the court's] determination of appropriate disbursements was clearly ancillary to its approval of the settlement in the case." 565 F.2d at 843–44. But in the absence of retention of authority to decide fee allocation or oversight over

settlement distributions, courts have declined to find ancillary jurisdiction. *E.g.*, *Ryther v. KARE 11*, 976 F. Supp. 853, 856–57 (D. Minn. 1997) ("[T]he court did not retain jurisdiction over any fee dispute. Such dispute did not even arise until after the Supreme Court denied certiorari, which brought the case to completion. No funds remain within the possession or control of the court that are to be distributed upon resolution of the attorney fee dispute. In fact, no matter relating to [the plaintiff's] original ADEA claim, the source of the court's original federal question jurisdiction, was pending before any federal court when [the law firm] brought this motion."). Consistent with this approach, courts have held that ancillary jurisdiction does not extend to post-dismissal fee litigation that is exclusively a dispute among attorneys for one side. *See In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 911 F.3d 666, 672 (3d Cir. 2018); *Taylor v. Kelsey*, 666 F.2d 53, 54 (4th Cir. 1981) (per curiam); *Popovich v. Sony Music Ent., Inc.*, No. 02-CV-359, 2009 WL 10722754, at *2 (N.D. Ohio Mar. 30, 2009) ("[C]ourts have declined ancillary jurisdiction over disputes between attorneys regarding the division of fees.") (collecting cases); *Foster v. Bd. of Trs. of Butler Cnty. Cmty. Coll.*, 771 F. Supp. 1118, 1121 (D. Kan. 1991) ("Other than in the settlement of class actions, courts have declined to exercise ancillary jurisdiction over disputes between attorneys as to the proper division of fees earned in the underlying litigation.") (collecting cases).

For example, in *In re Community Bank of North Virginia Mortgage Lending Practices Litigation*, the Third Circuit reversed the District Court's decision to exercise ancillary jurisdiction over a fee dispute following a class action settlement. 911 F.3d at 672–73. A former plaintiffs' attorney, who had left the firm representing plaintiffs mid-litigation, sued to recover fees based on an agreement among counsel; the District Court

exercised ancillary jurisdiction to resolve the dispute. *Id.* at 668–70. The Circuit found such an exercise inappropriate:

> [a] federal court should decline to exercise ancillary jurisdiction over a fee dispute between two attorneys where the court has no control over the funds and the fee-splitting dispute has no impact on the timing or substance of the litigants' relief in the underlying case over which the federal court has jurisdiction.

*Id.* at 672. It reasoned that because the District Court had not retained jurisdiction "over disputes arising from the allocation of fees among counsel" and had no control over the settlement funds, any state law breach of contract claim between and among counsel was "factually distinct from the federal claims" and, as such, "ancillary jurisdiction was not needed for the Court to resolve matters properly before it." *Id.* at 668.

Similarly, in *Taylor v. Kelsey*, the Court of Appeals for the Fourth Circuit affirmed the District Court's denial of a motion to intervene brought by a lawyer to litigate a fee arrangement between him and his former co-counsel. 666 F.2d at 54. The underlying case was dismissed by the time the motion was decided. *Id.* at 54 & n.1. In denying the petition to collect attorney's fees, the District Court concluded

> there [wa]s no connection between the underlying action and the instant fee controversy which would justify an assumption of ancillary jurisdiction. The subject matter of the contractual dispute between the two attorneys ha[d] no relation whatever to that of the concluded [underlying] action; the Court d[id] not have possession or control of the funds against which Taylor ha[d] asserted a lien; and none of the parties to the underlying action ha[d] any interest in the outcome of this controversy. . . . The fact that the [underlying] action proceeded to settlement in this Court g[ave] it no special expertise bearing on the merits of the fee dispute. There [wa]s simply no reason why this contract dispute involving [state] law, between . . . attorneys [of the state], cannot or should not be decided in . . . state court.

*Adams v. Allied Chem. Corp.*, 503 F. Supp. 253, 255 (E.D. Va. 1980), *aff'd sub. nom. Taylor v. Kelsey*, 666 F.2d 53 (4th Cir. 1981). Although the lawyer had asserted an

attorney lien, the Fourth Circuit affirmed that there was "no basis for ancillary jurisdiction"; "the controversy arose purely from a private contract dispute between two" lawyers. *Taylor*, 666 F.2d at 54.

As in *Community Bank* and *Taylor*, this case falls outside the bounds of the Court's ancillary jurisdiction. The fee dispute is solely between attorneys: EEP on one hand and Novo and Brettschneider on the other. Hamilton is not involved. None of these lawyers or firms was a party to the underlying lawsuit; EEP is the only lawyer who was counsel to Hamilton at the end of the case. Novo and Brettschneider have not been counsel for Hamilton for some time: Brettschneider was discharged in April 2019, and Novo was never counsel of record in this Court, having failed to file a notice of appearance through an attorney admitted in the EDNY. And each attorney involved in the present fee dispute—EEP and Brettschneider and Novo—is now represented by their own separate counsel who entered new appearances after the case was closed. (Notice of Appearance by Joseph R. Corozzo, Jr. on behalf of Brettschneider dated Jan. 15, 2020 ("Corozzo Notice"), Dkt. No. 178; Notice of Appearance by John Richard Supple, Jr. on behalf of Novo dated Jan. 22, 2020 ("Supple Notice"), Dkt. No. 181; Notice of Appearance by Michael S. Ross on behalf of EEP dated Jan. 28, 2020 ("Ross Notice"), Dkt. No. 182; Notice of Appearance by Eugene Alexander Gormakh on behalf of EEP dated Jan. 31, 2020 ("Gormakh Notice"), Dkt. No. 184; Notice of Appearance by Dana Brett Briganti on behalf of Novo dated Feb. 6, 2020 ("Briganti Notice"), Dkt. No. 185).

The present dispute is also tangential to the resolution of the litigation over which the Court had original jurisdiction and is completely unrelated to the underlying § 1983 action. The dispute requires the Court to first determine whether Brettschneider's felony conviction and Novofastovsky's purported professionalism violations divested

17

them of rights under New York state law to settlement proceeds. The Court had no occasion to adjudicate these issues previously. When the Court knew Novofastovsky had sought to appear on behalf of Hamilton without ever being admitted to this District, (*see* Min. Entry dated Dec. 16, 2015), the Court was unaware of the arrangement between Novo and Hamilton and among co-counsel. Despite Novofastovsky's transgressions before the Court, (*see* Order dated Feb. 12, 2016; Scheduling Order dated Dec. 6, 2016, Dkt. No. 56), Novofastovsky had no occasion to appear after Novo was substituted out from the case on December 22, 2017, on consent, (*see* Notice of Consent to Change Att'y dated Dec. 22, 2017, Dkt. No. 76 at 1); Novo did not assert any lien against future settlement proceeds at this time either. And after Brettschneider was indicted, Brettschneider did not withdraw from the case, but simply stopped participating publicly and then was discharged altogether without any indication to the Court—only after the case was settled and closed did he assert an entitlement to fees. None of the issues to be decided by Hamilton's § 1983 case involved either the alleged violations of Novofastovsky's professional responsibility obligations or Brettschneider felony conviction. To the extent that counsel's entitlement to fees turns on the meaning of the various retainer agreements signed by Hamilton and counsel—as at least EEP and Novo assert, (EEP's Mot. at 2; Novo's Br. at 5)—those agreements were not before this Court as part of the underlying litigation and were, again, filed after the case was closed. (*See* Retainer Agreements, attached as Exs. to Letter dated July 16, 2020, Dkt. No. 198).

This fee dispute, therefore, does "not arise as a matter of necessity from anything which occurred in the" underlying civil rights action that the Court saw through to the eve of trial and settlement. *Taylor*, 666 F.2d at 54. And there is no compelling reason to look past the exclusively non-party status of the attorneys. *See Stein*, 486 F.3d at

761–62 ("[T]he requisite compelling circumstances will be rare, as the need for such a proceeding generally will be far less pressing than in cases involving parties already before the court.").

Furthermore, this case was dismissed with prejudice after all parties signed a stipulation of dismissal. The stipulation contained a narrow exception for the retention of jurisdiction—the enforcement of the settlement agreement. (The agreement itself was also never filed with the Court). The present dispute over fees does not fit within this narrow retention of jurisdiction and this "decision not to retain jurisdiction over attorney fee disputes" is "sufficient" to conclude ancillary jurisdiction is lacking. *See Cmty. Bank*, 911 F.3d at 672 ("[T]he District Court did not retain jurisdiction over disputes arising from the allocation of fees *among counsel*. The allocation of the fee award . . . occurred pursuant to a confidential agreement among counsel and the allocation was not the subject of a ruling by . . . the Court." (emphasis added)); *see, e.g.*, *Keepseagle*, 2014 WL 11816917, at *3–4 ("To the extent Mr. LaBatte can establish jurisdiction, it must arise . . . where exercising jurisdiction is necessary to effectuate the Court's Order entering the settlement agreement. '[D]istrict courts enjoy no free-ranging "ancillary" jurisdiction to enforce consent decrees, but are instead constrained by the terms of the decree and related order.' Mr. LaBatte must therefore demonstrate that the Agreement provides for jurisdiction over his claim. He fails to do so." (second alteration in original) (footnote omitted) (quoting *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002)). The parties cannot bootstrap jurisdiction by arguing that because Defendants have not paid settlement proceeds, the Court now has authority to oversee the fee distribution or acts as a settlement administrator. The parties fail to provide any citation to the unfiled settlement agreement that would suggest that the Court is to play

such a role under that agreement. *See Kokkonen*, 511 U.S. at 381–82 (holding that district court does not have ancillary jurisdiction to hear disputes over settlement agreement not entered as order of the court).

Each of the cases Brettschneider cites to argue that this Court has ancillary jurisdiction is inapposite. (*See* Brettschneider's Aug. 14 Br. at 2–4). He cites cases involving disputes between former counsel and the plaintiff or defendant in the underlying case. *See, e.g.*, *Cluett*, 863 F.2d at 256–57 (affirming district court's pre-trial exercise of ancillary jurisdiction over a fee dispute between counsel and a party to the underlying suit); *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09-CV-9687, 2014 WL 462823, at *1 (S.D.N.Y. Feb. 5, 2014) (resolving a post-settlement motion to fix a charging lien by former counsel that had been substituted out where the dispute was between the firm and its former client, and the court had previously issued an order holding that the firm had a charging lien over any recovery and "that the amount of the charging lien would be fixed at a later date by way of motion to be made by [the firm] on notice to all interested parties" (quotations omitted)). The fee dispute here is not between Brettschneider—a lawyer no longer in the case—and Hamilton (the party), but with the other lawyers for Hamilton.[8]

EEP's cases fare no better. First, EEP's reliance on *Louima v. City of New York* is misplaced. (EEP's Aug. 20 Resp. at 1–2). In *Louima*, the court had ancillary jurisdiction over a claim to attorneys' fees in a settlement, but (1) the court had not

_____

[8] The remaining cases cited by Brettschneider are far afield. The question in *In re Shirley Duke Associates*, was one of bankruptcy court jurisdiction. 611 F.2d 15, 18 (2d Cir. 1979). And in *Chesley v. Union Carbide Corp.* the Second Circuit held that "[ancillary] jurisdiction may not be exercised, directly or indirectly, with respect to [a] settlement fund on deposit in India under the supervision of the Supreme Court of India." 927 F.2d at 67.

dismissed the case in its entirety before hearing the fee dispute; (2) the court appointed

a trustee to administer the settlement fund, including the attorney's fees portion,

pursuant to the parties' settlement agreement; and (3) the court found that federal law

provided an independent basis for subject matter jurisdiction. No. 98-CV-5083, 2004

WL 2359943, at *6, *55–56, *88 n. 117 (E.D.N.Y. Oct. 5, 2004), *aff'd sub nom. Roper-*

*Simpson v. Scheck*, 163 F. App'x 70 (2d Cir. 2006); *see also* Stip. & Order of Settlement

and Dismissal, *Louima v. City of New York*, No. 98-CV-5083 (E.D.N.Y. July 23, 2001),

Dkt. No. 210. This case is materially distinct in each respect: (1) this Court has signed a

stipulation dismissing all parties in the case; (2) the Court has not retained any

jurisdiction over the settlement distribution or administration, and indeed, the

settlement agreement is not even filed with the Court; and (3) a federal statute—such as

§ 1988[9]—is not present to anchor the Court's jurisdiction over attorney's fees. EEP also

cites to *Grimes* and its progeny to contend that the Court has ancillary jurisdiction. (*See*

EEP's Aug. 14 Br. at 2–3; EEP's Aug. 20 Br. at 3). *Grimes*, however, is factually distinct

---

[9] In a § 1983 action, "the court, in its discretion, may allow the prevailing party
. . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *see Barua v.
Barua*, No. 14-CV-5107, 2015 WL 4925028, at *1 n.1 (E.D.N.Y. Aug. 18, 2015) ("Section
1988 is not an independent basis for cause of action, but rather allows courts to award
attorney's fees to the prevailing party in a Section 1983 case."). Here, there is no dispute
as to whether any *party* is as a prevailing party and is entitled to attorney's fees;
Hamilton seeks no relief under § 1988. Hamilton's attorneys were never parties and
could have no rights under § 1988. *See Soliman v. Ebasco Servs. Inc.*, 822 F.2d 320,
322 (2d Cir. 1987) ("The Supreme Court has held that the words 'prevailing party' found
in § 1988 of the Civil Rights Act refer to plaintiff's entitlement to those fees, not the
plaintiff's lawyer."); *Sanchez-Ramirez v. Masters Food Serv. Inc.*, No. 14-CV-9970, 2017
WL 3600423, at *3 (S.D.N.Y. Aug. 18, 2017) ("[T]he attorney is not a party and
attorney's fees obtained by statutory authority belong to the client, not counsel."). Thus,
§ 1988 cannot confer jurisdiction here.

from EEP's position in this case—the Court here is not overseeing the distribution of any settlement funds. *See* 565 F.2d at 842–44.[10]

Brettschneider and EEP also insist that because Judge Amon presided over both this case and Brettschneider's criminal case, the court must exercise jurisdiction over the fee dispute. (*See* EEP's Aug. 14 Br. at 3; Brettschneider's Aug. 20 Resp. at 2; EEP's Aug. 20 Resp. at 3). Not so. For one thing, no case or principle suggests that the amalgamation of a judge's knowledge across multiple cases is sufficient to confer ancillary jurisdiction over any dispute between the dueling parties. For another, the criminal conduct EEP that Brettschneider committed, and that supposedly divests him of any fee entitlement, may not be the same conduct for which he was convicted. (*See* Brettschneider's Aug. 20 Resp. at 1 ("Brettschneider denies EEP's allegation . . . , an alleged criminal act for which [he] was never charged nor disciplined."). The criminal conduct is also only a small part of the inquiry—the Court would still have to determine the scope and meaning of the retainer agreements, whether Novo committed violations of the Rules of Professional Conduct, and whether such violations destroy its rights to any fee recovery. For all this supposed familiarity the Court has with the dispute

---

[10] EEP's other cases are likewise inapposite. The court in *Borg v. 86th & 3rd Owner, LLC*, No. 08-CV-5913, 2012 WL 234383, at *6 (S.D.N.Y. Jan. 24, 2012), concluded it had jurisdiction over a dispute among attorneys by summarily relying on *Wagner & Wagner, LLP*, a case in which the Second Circuit emphasized district courts have "broad authority to determine the reasonableness of attorney's fees" in infant compromise proceedings pursuant to the Local Rules. *See* 596 F.3d at 89. *See also, e.g.*, *Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, No. 09-CV-3105, 2014 U.S. Dist. LEXIS 131241, at *2 (E.D.N.Y. Aug. 14, 2014) (holding court had post-dismissal ancillary jurisdiction and inherent authority to supervise fee arrangements in deciding motion by plaintiff herself to review a fee agreement between herself and her former attorney). And the citation to a single filing describing an apportionment of fees, without a discussion of jurisdiction or whether the main case was dismissed, in an otherwise sealed case, cannot possibly assist in this analysis. (*See* EEP's Aug. 20 Resp. at 2 (citing Order, *Hinds v. County of Westchester*, No. 11-CV-7265 (S.D.N.Y. Nov. 12, 2019)).

between the lawyers, they insist that the Court hold an evidentiary hearing and hear additional evidence. (*See* Brettschneider's Mot. to Intervene at 1 ("[W]e further request that the Court hold a hearing on this matter."); Novo's Br. at 1 n.2 ("Accordingly, whatever *quantum meruit* fees are awarded to Mr. Brettschneider should be offset . . . , which can be detailed at a hearing."); EEP's Feb. 7 Br. at 1 ("[W]e respectfully submit that this matter should be set for a hearing. Our discussion of the relevant facts below is summary in nature and will be amplified at the hearing."); Novo's Mot. for Leave at 1 ("Without further submissions or a hearing on the important threshold question of whether or not Novo (or other counsel) was discharged 'for cause,' we believe the record will be incomplete."); Brettschneider's Aug. 20 Br. at 1 ("Mr. Brettschneider respectfully submits that these factual disputes should be resolved by a hearing before this Court.")). Mere familiarity with certain facts is not enough the confer jurisdiction to hear to a fee dispute only among attorneys.

Therefore, the Court lacks ancillary jurisdiction to exercise and resolve the fee dispute between EEP, Brettschneider, and Novo. *See, e.g.*, *Maliarakis v. N.Y.C. Dep't of Educ.*, No. 14-CV-6088, 2019 WL 2269857, at *2–3 (S.D.N.Y. May 28, 2019) (holding court could not exercise ancillary jurisdiction over motion to recover attorney's fees by attorney who claimed he assisted in trial preparations in settled case).

B. Supplemental Jurisdiction

In the absence of ancillary jurisdiction, the only other potential basis for the Court to hear the fee dispute is supplemental jurisdiction.

> [I]n any civil action of which the district court[] ha[s] original jurisdiction, [it] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

28 U.S.C. § 1367(a).

The Court had federal question jurisdiction over the underlying claims brought by Hamilton, which were based on 42 U.S.C. §§ 1983 and 1985, (Compl. dated Aug. 5, 2015, Dkt. No. 1 ¶¶ 15–16), pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The fee dispute itself is not based on federal law, and no federal cause of action is referenced.  All agree that the basis for a fee award to Brettschneider is *quantum meruit*, a state common law claim.  (*See* Brettschneider's Pet. ¶ 36 ("[I]t is undisputed that Mr. Brettschneider is entitled to compensation on a *quantum meruit* basis[.]"); EEP's Feb. 7 Br. at 3 ("Even assuming the accuracy of Mr. Brettschneider's description of the work performed by him in connection with the criminal matter, none of that work factors into a *quantum meruit* calculation in connection with his entitlement to a legal fee in *this* civil rights action."); Novo's Br. at 1 n.2 ("[W]hatever *quantum meruit* fees are awarded to Mr. Brettschneider should be offset by the sum of payments made to him by Novo, which can be detailed at a hearing.")).  As to Novo, it and EEP also agree that any fee award to Novo is based either in *quantum meruit* or contract.  (*See* Novo's Br. at 2 ("Where the fee dispute is between incoming and outgoing attorneys for a plaintiff in a contingency fee action, [t]he discharged attorney may elect to receive . . . compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case." (alterations in original) (quotations omitted)); EEP's Reply to Novo at 2 ("[A]ssuming that the Court does not find a complete fee forfeiture appropriate, if this

Court were to undertake a *quantum meruit* inquiry into Novo's entitlement to a legal fee, the result would be the same[.]")).

Nor are the lawyers, putative parties to the claims, diverse.[11]  Therefore, the only basis to exercise jurisdiction over these claims would be supplemental jurisdiction deriving from the underlying lawsuit's federal question jurisdiction.  *See, e.g.*, *Am. High-Income Tr. v. AlliedSignal*, 329 F. Supp. 2d 534, 550 (S.D.N.Y. 2004) ("[F]ederal claims remain[] in this action . . . . Because the parties in this action are not completely diverse, the only basis for subject matter jurisdiction of the remaining state law claims . . . would be 28 U.S.C. section 1367.  Under section 1367, district courts have supplemental jurisdiction[.]").

"Federal courts may exercise supplemental jurisdiction 'to hear fee disputes between litigants and their attorneys when the dispute relates to the main action.'" *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (quoting *Cluett*, 863 F.2d at 256).  "For a district court to exercise supplemental jurisdiction over a fee dispute, the dispute must form part of the same 'case or controversy' as a dispute over which the district court has original jurisdiction."  *Shukla v. Sharma*, 586 F. App'x 752, 753 (2d Cir. 2014).  "That standard is satisfied when the two disputes 'derive from a common nucleus of operative fact.'"  *Id.* (quoting *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 335 (2d Cir. 2006)); *see also* 13D Wright & Miller § 3567.1.

"In determining whether two disputes arise from a 'common nucleus of operative fact,' [courts] have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts

---

[11] No attorney argues the Court has diversity jurisdiction, and the filings on the docket indicate they are all domiciled of New York.

underlying the state claim before the court.'" *Achtman*, 464 F.3d at 335 (alterations in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)). "Whatever the ultimate reach of this phrase," "[i]t is absolutely clear that the common nucleus concept encompasses claims that arise from the same 'transaction or occurrence' as the jurisdiction-invoking claim[.]" 13D Wright & Miller § 3567.1. But

> in practice, § 1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection. This standard is broad and fact-specific, and should be applied with a pragmatic appreciation of the efficiency promoted by supplemental jurisdiction. . . . On the other hand, of course, the standard is not without limit. For example, a mere causal relationship between the two claims may not suffice. Likewise, the fact that claims arise from an employment relationship will not necessarily mean that they are sufficiently related to support supplemental jurisdiction.

*Id.* (footnotes omitted). Such supplemental jurisdiction does not exist in this case.

This case was dismissed with prejudice by stipulation signed by all parties. (*See* Stip. of Dismissal at 2). "Generally, . . . a plaintiff's filing in the district court of a stipulation of dismissal signed by all parties pursuant to Rule 41(a)(1)[A](ii) divests the court of its jurisdiction over a case, irrespective of whether the Court approves the stipulation." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139 (2d Cir. 2004) (collecting cases); Fed. R. Civ. P. 41(a)(1)(A)(ii) ("Subject to [certain Rules] and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."); *see also Guarnero-Ruiz v. 36-03 Food, LLC*, No. 17-CV-3178, 2017 WL 7049543, at *9 (E.D.N.Y. Dec. 11, 2017) (report and recommendation) ("[A] properly stipulated dismissal under Rule 41(a)(1)[(A)](ii) is self-executing and does not require judicial approval." (second alteration in original) (quotations omitted)). And because this case was dismissed with prejudice, there is no pending case over which the Court has original jurisdiction: that

alone forecloses any exercise of supplemental jurisdiction.  *See, e.g.*, *GMAC Com.*

*Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 213 F.R.D. 150, 150 (S.D.N.Y. 2003) (holding

that, "in light of the dismissal" effectuated by the "parties' stipulation of dismissal

pursuant to" Rule 41(a)(1)(A)(ii), "there is no 'case or controversy' pending"); *Cooper v.*

*IBM Pers. Pension Plan*, No. 99-CV-829, 2007 WL 9777844, at *2 (S.D. Ill. Mar. 20,

2007) ("In some instances, of course, the Court may exercise . . . 'supplemental'

jurisdiction over fee disputes in actions pending before it.  This action has been

dismissed, however, precluding the exercise of supplemental jurisdiction." (citation

omitted)).

Even if the stipulation of dismissal were not a barrier, the fee dispute is not a part

of the same case and controversy as—*i.e.* it does not share a common nucleus of

operative fact with—the underlying § 1983 action.

Although the Second Circuit has "held, in an 'unbroken line of cases,' that a fee

dispute" shares a common nucleus of operative fact with the underlying action, such

disputes are "between a party and its attorneys."  *Shukla*, 586 F. App'x at 753–54

(quoting *Achtman*, 464 F.3d at 335).  These precedents do not involve a dispute solely

*among a party's attorneys* that do not involve a party.  *See, e.g., Alderman*, 169 F.3d at

101 ("After repeated attempts to obtain his fee [from his client], [the attorney] contacted

the district court pursuant to General Rule 37.2 of the Eastern District of New York,

requesting that the court enforce the [retainer] Agreement."); *Shukla*, 586 F. App'x at

753 (explaining that the "appeal exclusively concerns the fee dispute between

defendants-appellants and Chittur," who had withdrawn "as counsel for defendants-

appellants on the basis of their failure to pay outstanding fees following a jury trial");

*Achtman*, 464 F.3d at 335–36 (citing fee dispute cases in finding supplemental

jurisdiction over malpractice claims between class members and former counsel); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448, 453 (2d Cir. 1998) (holding that district court had supplemental jurisdiction to resolve charging lien asserted by former counsel against plaintiff).

Hamilton at this point was dismissed by virtue of the stipulation of settlement. (Stip. of Dismissal at 1–2). His only involvement is as a witness, having submitted an affidavit in support of Brettschneider, well after the initial briefing was submitted. (*See generally* Hamilton Aff.). And the affidavit was in support of counsel who had no involvement in the settlement of his case and goes into facts that were not before the Court at any previous time. Hamilton is not, in other words, a real party in interest, and the fee dispute is not between a lawyer and the party to the case.[12] That Hamilton does not assert his own real interests and there is no claim asserted again him takes this case out of the case or controversy over which the Court had original jurisdiction.

Although Brettschneider and Novo seek a portion of the settlement proceeds, that is insufficient to make their claims part of the case that was previously before the Court. The Court's retention of jurisdiction over the settlement agreement was narrow: solely "for the purpose of enforcing the terms of the settlement agreement reached between and among the parties and set forth in the Stipulation of Settlement executed by the parties in this matter." (Stip. & Order of Dismissal dated Nov. 19, 2019, Dkt. No. 176 ¶ 2). Without being privy to the terms of the settlement agreement—which was never filed with the Court—the Court has no basis to conclude that the agreement says

---

[12] EEP states it is still Hamilton's counsel (EEP's Mot. at 1 ("I represent plaintiff in the above-referenced matter."), but Hamilton asserts otherwise, (Hamilton Aff. ¶ 5 ("I never discharged Scott Brettschneider for cause, as my *former* attorneys [EEP] have alleged. This is incorrect." (emphasis added)).

anything about attorney's fees or that enforcement of the agreement would affect anyone other than Hamilton himself and the Defendants, as opposed to the lawyers.

And as stated above, no law firm or attorney to the dispute was a party to the underlying suit and each has its own counsel that entered new appearances after the case was closed. (Corozzo Notice; Supple Notice; Ross Notice; Gormakh Notice; Briganti Notice). As non-party attorneys, there are no claims asserted by them against a party or against them by a party over which the Court had original jurisdiction; in other words, no one has filed a new claim against Hamilton or any Defendant or vice versa.

Therefore, the Court does not have supplemental jurisdiction over the state law attorney's fees claims. *See, e.g.*, *Sims v. Schultz*, No. 03-CV-381, 2008 WL 11514966, at *3 (N.D. Ill. July 7, 2008) ("[T]he dispute in this case is between two sets of lawyers, one of whom is no longer in a lawyer-client relationship with the plaintiff, and concerns fees paid as part of a settlement agreement over which the court had no supervisory or enforcement role. . . . With such an attenuated relationship to the underlying case, . . . [i]t simply does not arise out of a 'common nucleus of operative fact' with the underlying First Amendment claims of the plaintiffs. Therefore, the court concludes that it cannot

assert supplemental jurisdiction over the dispute and it therefore lacks subject matter jurisdiction to rule on the petition.").[13]

Nonetheless, even if the fee dispute were considered as part of the original case or controversy, the Court should decline, pursuant to § 1367(c), to exercise such supplemental jurisdiction. A district court "may decline to exercise supplemental jurisdiction over a claim" that shares a common nucleus of operative fact with a claim over which the court has original jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

---

[13] As he did with ancillary jurisdiction, Brettschneider cites only cases involving supplemental jurisdiction exercised over a dispute between counsel and client. (*See* Brettschneider's Aug. 14 Br. at 2–4) (citing *Jin Zhao v. State Univ. of N.Y.*, No. 04-CV-210, 2011 WL 3625133, at *3 (E.D.N.Y. Apr. 19, 2011) (finding court had supplemental jurisdiction to hear a fee dispute between former plaintiff's counsel and plaintiff post-settlement), *report and recommendation adopted*, 2011 WL 3610717 (E.D.N.Y. Aug. 15, 2011), *aff'd sub nom. Jin Zhao v. Warnock*, 551 F. App'x 18 (2d Cir. 2014); *Schonberger v. Serchuk*, No. 89-CV-7094, 1993 WL 299279, at *2 (S.D.N.Y. Aug. 4, 1993) (same); *Rosenman Colin*, 600 F. Supp. at 531 (finding court had supplemental jurisdiction to hear a fee dispute between former defense counsel and defendant post-dismissal)). This is not such a case.

*Basin v. D'Alto* does not compel a different conclusion. (*See* EEP's Aug. 20 Resp. at 2). The *Basin* Court found it had supplemental jurisdiction over "a fee dispute between substituted counsel and outgoing counsel" because the "dispute share[d] the same nucleus of operative fact with the underlying action"; it did not analyze the issue further, including what import dismissal had on the case. No. 14-CV-5771, 2017 U.S. Dist. LEXIS 27365, at *8 (E.D.N.Y. Feb. 24, 2017) (report and recommendation). The attorneys settled the fee dispute in *Basin* before the issue was finally decided. *See* Order, No. 14-CV-5771 (E.D.N.Y. Mar. 21, 2020) (finding report and recommendation moot in light of settlement of fee dispute).

28 U.S.C. § 1367(c).  "[T]he discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)."  *Itar-Tass Russian News Agency*, 140 F.3d at 448.  "The court must 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction' over the pendent state law claims.'"  *Carpenter v. Corr. Officer "John DOE" of the Nassau Cnty. Sheriff's Dep't*, No. 15-CV-6685, 2016 WL 1448648, at *3 (E.D.N.Y. Apr. 12, 2016) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"When § 1367(c)(3) applies," *i.e.* when all original jurisdiction claims have been dismissed, "the district court must still meaningfully balance the supplemental jurisdiction factors": "judicial economy, convenience, fairness, and comity," which, "in the usual case . . . counsel against exercising supplemental jurisdiction."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).  "[T]he usual rule" is "that when 'all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* at 81 (alteration in original) (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7).

For example, in *TC Power Ltd. v. Guardian Industries Corp.*, in declining to exercise supplemental jurisdiction, the District Court held "judicial economy and comity [were] better served by allowing a [state] court to make the determinations of [state] law required to resolve" an attorney's petition for fees arising from a settlement reached in the main breach of contract action, which had been dismissed with prejudice.  969 F. Supp. 2d 839, 842 (E.D. Mich. 2013).  Notably, "the parties [we]re in dispute over several key issues pertaining to [the petitioning attorney's] theories."  *Id.*  These

included questions about "whether [the firm] ever effectuated a charging lien; whether [it] [wa]s a third-party beneficiary of the Settlement Agreement dispute; and whether [it] ha[d] standing to raise its claims." *Id.* "[T]hese issues [we]re simply too tenuous as they involve[d] legal and factual determinations that are separate and distinct from those in the underlying claims." *Id.* Further, "judicial economy weigh[ed] against the exercise of jurisdiction":

> While the Court [wa]s familiar with the dismissed breach of contract action between Plaintiff and Defendants, the Court [wa]s as familiar (or unfamiliar) as a state court would be in regard to the facts and legal issues vital to the charging lien/third-party beneficiary theories. And, as noted above, [the parties] disagree[d] over a number of these issues . . . . Determination of these issues would involve fact-finding and conclusions of law separate and distinct from the underlying action, which would turn [the attorney's] Motion into a case within a case.

*Id.*

Judicial economy and convenience similarly dictate against extending this litigation for resolution through examination of evidence, testimony, and legal argument. To resolve the fee dispute, the Court would have to determine factual and legal questions previously unaddressed, including Brettschneider's ability to recover fees for representation terminated by a felony conviction, and Novofastovsky's alleged professional responsibility breaches. While the Court is familiar with the underlying case, it was not privy to the various attorney-attorney and attorney-client machinations or contracts, and these issues would need be explored in-depth through new hearings. Indeed, the parties seek an evidentiary hearing and ask the Court to permit witness testimony. *See supra* pp. 23–24; *e.g.*, *Disp. Resol. Mgmt., Inc. v. Greenberg Traurig, LLP*, No. 03-CV-3501, 2005 WL 551030, at *1 (S.D.N.Y. Mar. 9, 2005) ("The parties to the litigation reached a settlement of the underlying action immediately prior to trial,

and all claims in the action have been dismissed with prejudice. [One of plaintiffs' law firms] now seeks enforcement of its charging lien against plaintiffs, based on a contingency fee arrangement it had allegedly entered into with plaintiffs. In its discretion pursuant to 28 U.S.C. § 1367(c)(3), the Court dismisses [the firm]'s petition on the grounds that the exercise of supplemental jurisdiction in these circumstances does not further the interests of 'judicial economy, convenience, fairness and comity.'").

No party or putative party would be prejudiced be the Court declining to exercise any supplemental jurisdiction—the parties' claims are ones that may be raised in state court. *See, e.g.*, *Disp. Resol. Mgmt.*, 2005 WL 551030, *2 ("There is no reason to believe that [former plaintiffs' counsel]'s state law contract claim [against plaintiffs] cannot be expeditiously and effectively adjudicated in another forum."); *Pharmacy Value Mgmt. Sols., Inc. v. Hartman*, No. 17-CV-132, 2019 WL 5653774, at *1, *4 (M.D. Fla. Oct. 31, 2019) ("[A]ll claims over which the Court had original jurisdiction . . . have been dismissed with prejudice. Consequently, the Court is within its discretion to 'decline to exercise supplemental jurisdiction over' Attorney Wasylik's claim to the Disputed Funds. The Court so declines. The parties' rights and obligations with respect to their current fee dispute can be adequately protected and determined in a separate state court proceeding." (citations omitted)).

The factors, therefore, weigh against exercising supplemental jurisdiction. *See, e.g.*, *TC Power Ltd.*, 969 F. Supp. 2d at 842.

II. <u>The Motions to Intervene</u>

If subject-matter jurisdiction was not a barrier, the Court could still not resolve the fee dispute. The fee dispute is between non-parties who must be now join the case; but there is no adequate procedural mechanism to permit such intervention.[14]

First, EEP and Novo did not file motions to intervene. Their new counsel simply filed papers on the docket; but doing so does not make them a party to the case. (Novo, having never made an authorized appearance on the docket through a lawyer admitted to the District, cannot even claim that it can file documents as counsel to Hamilton). The Court cannot adjudicate the fee dispute involving non-parties. And now, having failed to serve a motion stating "the grounds for intervention and . . . accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), they are not in the case. *See, e.g.*, *Martins v. County of Nassau*, No. 15-CV-5120, 2017 WL 1458770, at *3 (E.D.N.Y. Apr. 24, 2017) ("It is true, as the Plaintiff suggests, that after successfully obtaining dismissal of the original complaint, Heuschneider is no longer a party to this action with the concomitant authority to participate in motion practice."); *see also Erdman Techs. Corp. v. US Sprint Commc'ns Co.*, No. 91-CV-7602, 1997 WL 401669, at *2 (S.D.N.Y. July 16, 1997) ("Even if the action had been pending at the time the motion to intervene was filed, the Court would have denied the motion on the merits because Bartel failed to satisfy the requirements for intervention under Rule 24 of the Federal Rules of Civil Procedure. . . . [H]e failed to

---

[14] Rule 60 provides for the opportunity for relief post-dismissal. *See* Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ."). But no party or attorney has moved for the Court to reconsider the stipulation dismissing the case that it then so-ordered.

submit a motion [to intervene] stating the grounds for intervention 'accompanied by a pleading setting forth the claim or defense for which intervention is sought.' Fed. R. Civ. P. 24(c). This deficiency alone would have been sufficient to deny the motion.").

If Novo and EEP's papers were considered as motions to intervene, their motions and Brettschneider's motion are untimely and should be denied.[15] Rule 24 provides a method for a non-party to intervene into a case:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

> To be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

*Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). For a motion for intervention by permission pursuant to Rule 24(b), a court "considers substantially the same factors" as for an intervention as of right. *Harris-Clemons v. Charly Trademarks Ltd.*, 751 F. App'x 83, 85 (2d Cir. 2018) (quoting *"R" Best Produce*, 467 F.3d at 240).

As to the first factor, timeliness, "[t]he determination of timeliness is in large part an equitable one, to be made based upon the totality of the circumstances." *Hnot v.*

---

[15] Brettschneider filed a motion to intervene under Rule 24, and he moves to intervene by right or, in the alternative, by permission. (Brettschneider's Mot. to Intervene at 2–5).

*Willis Grp. Holdings, Ltd.*, 234 F. App'x 13, 14 (2d Cir. 2007) (citing *Catanzano ex rel.*

*Catanzano v. Wing,* 103 F.3d 223, 234 (2d Cir.1996)).

> In making this discretionary determination, the district court is required to consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."

*Id.* (quoting *In re Bank of N.Y. Derivative Litig.,* 320 F.3d 291, 300 (2d Cir.2003)).

Generally, "[i]ntervention is a procedural means for entering an *existing* federal action."

*Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160

(2d Cir. 2012) (emphasis added). "The Second Circuit has cautioned against allowing

intervention in a matter that has been otherwise resolved." *Penn-Star Ins. Co. v. Maint.*

*Asset Mgmt. Inc.*, No. 17-CV-5047, 2019 WL 4667714, at *5 (E.D.N.Y. Sept. 25, 2019)

(collecting cases) (collecting cases where Second Circuit affirmed denials of post-

settlement and judgment intervention), *aff'd sub nom. Penn-Star Ins. Co. v.*

*McElhatton*, -- F. App'x --, No. 19-CV-3519, 2020 WL 3526395 (2d Cir. June 30, 2020).

Allowing for intervention where judgement has been entered "would make the

achievement of a final remedy nearly impossible. In the interest of finality, there must

come a time, once all affected parties' opportunities to protect their interests have

passed, when the remedy, if otherwise lawful, must be allowed to proceed." *United*

*States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d. Cir. 1986). Thus, "post-judgment

intervention . . . is generally disfavored because it usually creates delay and prejudice to

existing parties and undermines the orderly administration of justice." *Id.*; 7C Wright &

Miller § 1916 ("There is considerable reluctance on the part of the courts to allow

intervention after the action has gone to judgment[.]"); *Ritchie v. Gano*, 754 F. Supp. 2d

605, 608 (S.D.N.Y. 2010) ("A voluntary dismissal with prejudice is tantamount to a judgment on the merits." (quotations omitted)).

The motions to intervene were untimely and post-judgment intervention is unwarranted.

*First*, this case was resolved via settlement and final judgment was entered. The attempts to intervene by Hamilton's prior counsel have forced Hamilton to wait for his settlement proceeds (though the City has provided no legitimate basis for not paying him) in a case that was filed five years ago. Permitting intervention now would potentially further delay payment by the Defendants. *See Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir. 1988) ("[I]f Appellants were permitted to intervene at this late date, there is no question that the settlement concluded by Farmland and the State would be jeopardized. . . . The harm Appellants face absent leave to intervene . . . does not, in our view, tip the balance in their favor, especially in the context of post-judgment intervention." (footnote omitted)); *see also Yonkers Bd. Of Educ.*, 801 F.2d at 596.

*Second*, the attorneys did not act with dispatch in raising the fee dispute. The case was settled in November 2019, yet the first indication that Brettschneider or Novo wished to dispute the fee allocation was in January 2020.[16] This "delay is an important

---

[16] Brettschneider acknowledges that his motion to intervene is post-dismissal: "[t]he fact that the case has already been settled does not change the fact that the motion to intervene is timely," (Brettschneider's Mot. to Intervene at 3), and cites *Eastern Potato Dealers, Inc. v. TNC Packing Corp.*, No. 08-CV-6280, 2011 WL 2669632 (W.D.N.Y. July 7, 2011). As to timeliness, the court in *Eastern Potato* stated only that the intervention motions before it "were sufficiently timely, in light of the procedural history of this action," which it described as "unusually complicated." 2011 WL 2669632, at *1, *11. Brettschneider does not explain why *Eastern Potato* supports his position.

factor for timeliness and [an attorney's] failure to act promptly weighs against it in the timeliness calculus." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182–83 (2d Cir. 2001).

*Third*, the issues from which the fee dispute arises that these attorneys wish to litigate are years old. Novo was substituted out as counsel two-and-a-half years ago, (*see* Notice of Consent to Change Att'y dated Dec. 22, 2017, Dkt. No. 76 at 1), and Brettschneider was first indicted nearly as long ago, *see* Indictment, *Brettschneider*, No. 18-CR-123 (E.D.N.Y. Mar. 13, 2018), Dkt. No. 1. At best, by Brettschneider's own admission, he was discharged as counsel on April 3, 2019. (Brettschneider's Aug. 14 Br. at 2).

The circumstances in *Butler, Fitzgerald & Potter v. Sequa Corp.* are similar to the case here; the Second Circuit affirmed the District Court's denial of a law firm's year-too-late motion to intervene as untimely. 250 F.3d at 182–83. The law firm had been dismissed as counsel by its client on the midst of trial; the firm had a charging lien in favor of any recovery of its now-former client. *Id.* at 174. The Second Circuit found that the law firm should have realized its lien was in jeopardy—the basis for the motion to intervene—when its client first alleged the firm provided inadequate representation, not a year later when it actually filed its motion. *Id.* at 182.

No withdrawal motion was filed by Brettschneider to provide the Court with notice an intention any charging lien, a requirement when an attorney withdraws pursuant to Local Rule 1.4 ("An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or

displacement and the posture of the case, including . . . whether or not the attorney is asserting a retaining or charging lien."). When a motion to substitute Novo out as counsel was filed, Novo never asserted a charging lien. (*See* Notice of Consent to Change Att'y dated Dec. 22, 2017, Dkt. No. 76 at 1). The attorneys were on notice of the need to protect their own interests and any purported rights well before this case settled and was dismissed in November 2019, but did not act promptly. Therefore, the Court recommends that Brettschneider's motion and any motion to intervene by Novo or EEP be denied as untimely. *See, e.g.*, *Butler* 250 F.3d at 182–83.

*     *     *     *

In conclusion, it is respectfully recommended all motions and requests for relief be denied for lack of subject-matter jurisdiction. To the extent, the Court must reach the merits, the motions should be denied because Novo and EEP are not parties—and have not filed motions to intervene—and in any event, any motion to intervene is untimely.

III.  <u>Release of the Settlement Funds</u>

EEP also moved to compel the City to release the settlement funds to EEP for Hamilton; the City is apparently holding the funds because of Brettschneider's refusal to sign a lien release form. (*See* EEP's Mot. for Attorney Fees dated Jan. 13, 2020, Dkt. No. 177 at 2). The Court recommends this motion be denied without prejudice.

The Court does not have the settlement agreement; no portion of the agreement is cited or quoted as a basis to compel the City to release the funds. The City has not responded to the motion. To the extent EEP wishes to enforce compliance with the settlement agreement, it must demonstrate a breach of the agreement by a party to the agreement.

That being said, if the City is holding funds without a basis in the settlement agreement, the Court would not hesitate to recommend compulsion of the release of the funds. It is difficult—particularly given the City's silence—for the Court to see any legitimate basis for not paying the settlement funds to Hamilton. Even if it believed it could not pay Hamilton because his attorneys were involved in a dispute with each other over the attorney's fee share (a somewhat dubious proposition since the settlement is with Hamilton and not his attorneys), it is not at all obvious why Hamilton cannot be paid his share of the settlement.

<u>CONCLUSION</u>

For the reasons above, it is respectfully recommended that:

1. EEP's motion for an order resolving the fee dispute pursuant to the New York Judiciary Law be denied without prejudice for lack of subject-matter jurisdiction and in the alternative, failure to intervene or intervene timely, (EEP's Mot. for Attorney Fees dated Jan. 13, 2020, Dkt. No. 177);

2. Brettschneider's petition pursuant to the New York Judiciary Law be denied without prejudice for lack of subject-matter jurisdiction and in the alternative, the motion to intervene be denied, (Mot. to Intervene and Resp. to Pl.'s Letter Mot. dated Jan. 17, 2020, Dkt. No. 179 at 1; Pet. Under Judiciary Law § 475 to Determine and Enforce Attorney's Lien dated Jan. 17, 2020, attached as Ex. 1 to Brettschneider's Mot. to Intervene, Dkt. No. 179);

3. Novo's letter request for a determination of its fees included in its response brief be denied without prejudice for lack of subject-matter jurisdiction and in the alternative, failure to intervene or intervene timely, (Novo's Resp. to Brettschneider's Mot. to Intervene dated Feb. 7, 2020, Dkt. No. 188 at 5); and

4. EEP's motion to compel the City to release the settlement funds be denied without prejudice, (EEP's Mot. for Attorney Fees dated Jan. 13, 2020, Dkt. No. 177).

Furthermore, in light of the Report and Recommendation, Brettschneider's motion to amend and file the affidavit of Hamilton is granted, (Brettschneider's Mot. to Suppl. dated July 15, 2020, Dkt. No. 196); EEP's motion to strike Brettschneider's motion and Hamilton's affidavit is denied, (Mot. to Strike dated July 16, 2020, Dkt. No.

199); and Novo's motion for leave to supplement its filings is denied as moot, (Letter Mot. for Leave to File Document dated July 21, 2020, Dkt. No. 200). All other pending motions are denied.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/ Sanket J. Bulsara* August 25, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York